UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SUNPOWER CORPORATION ET AL. )<br><br>Consolidated Plaintiffs )<br><br>v. )<br><br>UNITED STATES )<br><br>Defendant )<br><br>and )<br><br>SOLARWORLD AMERICAS, INC. )<br><br>Defendant-Intervenor. ) | Consol. Court No. 15-00067<br><br>Before: Hon. Donald C. Pogue,<br>Senior Judge<br><br>PUBLIC VERSION |

### SUNPOWER CORPORATION'S AFFIDAVIT IN SUPPORT OF SUNPOWER CORPORATION, SYSTEMS' STATUS AS IMPORTER OF RECORD DURING PERIOD OF INVESTIGATION

During a telephone conference on September 15, 2015, SunPower Corporation ("SunPower") was directed through its counsel, K&L Gates LLP, to submit an affidavit in support of its assertion that SunPower Corporation, Systems acted as the importer of record in connection with customs entries of Chinese-assembled crystalline silicon photovoltaic modules during the April 1, 2013 through September 30, 2013 period of investigation for the antidumping duty investigation giving rise to the above-captioned action. As detailed in the Affidavit set forth at **Appendix I** and in the accompanying numbered exhibits, SunPower Corporation, Systems properly was identified to U.S. Customs and Border Protection ("CBP") as the importer of record in connection with several entries made during the period of investigation and, therefore, is the

entity responsible for the payment of any duties, including any antidumping duties, taxes, or fees in connection with these importations.

Insofar as SunPower Corporation, Systems acted as the importer of record of subject merchandise during the relevant period of investigation, SunPower Corporation, Systems is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A). In addition, as acceded to by Defendant United States during the September 15, 2015 telephone conference, in that factual information was presented to the Department of Commerce ("Department") on behalf of SunPower Corporation, Systems in connection with SunPower's February 13, 2014 response to the Department's Quantity and Value Questionnaire, SunPower Corporation, Systems is a "party to the proceeding" within the meaning of 19 C.F.R. § 351.102(b)(36). Indeed, it is our understanding that Defendant United States, during the September 15, 2015 telephone conference, agreed that SunPower Corporation, Systems is a "party to the proceeding" based on its participation. Accordingly, even though SunPower Corporation, Systems did not make a formal entry of appearance in connection with the underlying antidumping duty investigation, SunPower Corporation, Systems has the requisite standing to participate in this appeal and is entitled to injunctive relief in connection with any of its entries affected by antidumping duty deposit requirements.

In that neither SunPower, nor SunPower Corporation, Systems submitted case briefs in connection with the underlying antidumping duty investigation, the scope of this appeal is limited to issues raised by other parties during the course of the Department's proceedings. As detailed in SunPower's Complaint, the issues being raised on appeal by SunPower and SunPower Corporation, Systems relate solely to the Department's scope determination in connection with the underlying investigation. These issues were fully briefed by other parties to this consolidated

appeal and neither SunPower, nor SunPower Corporation, Systems, has any intention of raising

issues beyond those previously briefed and have stated as much in the attached Affidavit.

Respectfully submitted,

Daniel J. Gerkin
Jerome J. Zaucha
K&L Gates LLP
1601 K Street, N.W.
Washington, DC
Tel.: (202) 778-9168
Fax: (202) 778-9100
*Counsel to SunPower Corporation*

September 18, 2015

## APPENDIX I

## AFFIDAVIT IN SUPPORT OF SUNPOWER CORPORATION, SYSTEMS' STATUS AS IMPORTER OF RECORD DURING PERIOD OF INVESTIGATION

### SunPower Corporation

1.      SunPower Corporation ("SunPower") is an entity organized under Delaware law having its principal place of business at 77 Rio Robles, San Jose, CA 95134.

2.      SunPower's Importer Number, which is required to effect customs entries, is 94-300896900, which also is its federal Tax Identification Number.  It is this number that is provided in Field 23 (Importer No.) of the entry summary on CBP Form 7501, which is required to be filed in connection with each entry, that was submitted to the Department in connection with SunPower's March 31, 2014 supplement to its entry of appearance in the underlying antidumping duty investigation, which is attached as **Exhibit 1**, and as Appendix A.1 to SunPower's March 31, 2014 Separate Rate Application.  This same number also appears in submissions made to the U.S. Securities and Exchange Commission, such as SunPower's Annual Report on Form 10-K for Fiscal Year 2014, which was filed on February 24, 2015 (the cover page for this submission is attached as **Exhibit 2**).

### SunPower Corporation, Systems

3.      SunPower Corporation, Systems also is an entity organized under Delaware law, but has its principal place of business at 1414 Harbour Way South, Richmond, CA 94804.  As depicted on the organizational chart attached as **Exhibit 3**, SunPower Corporation, Systems is an indirect, wholly owned subsidiary of SunPower.

4.      SunPower Corporation, Systems' Importer Number, which is required to effect customs entries, is 20-824896200, which also is its Federal Tax Identification Number.  It is this number that is provided in Field 23 (Importer No.) of the entry summaries on CBP Form 7501,

which are required to be filed in connection with each entry, that were submitted to the Department as Appendices A.2 - A.4 in connection with SunPower's March 31, 2014 Separate Rate Application in the underlying antidumping duty investigation.  The entry summaries on CBP Form 7501, as well as the accompanying bills of lading, commercial invoices, and packing lists for the following three SunPower Corporation, Systems' entries, which were made during the April 1, 2013 through September 30, 2013 period of investigation for the antidumping duty investigation giving rise to the above-captioned action, are attached as **Exhibits 4.1 - 4.3**: (i) Entry No. 201-9399143-6 (June 18, 2013); (ii) Entry No. 201-9399165-9 (July 19, 2013); and (iii) Entry No. 201-9399161-8 (July 29, 2013).  This same number also appears in connection with identifying SunPower Corporation, Systems on page 18 of Exhibit 10.11 to SunPower's Quarterly Report on Form 10-Q, which was filed with the U.S. Securities and Exchange Commission on August 13, 2010.  The cover page, as well as Exhibit 10.11, are attached as **Exhibit 5**.  This number also appears in connection with identifying SunPower Corporation, Systems on the 2015 Foreign Profit Corporation Annual Report filed with the Florida Secretary of State on March 20, 2015, which is attached as **Exhibit 6**.

  5. As noted above, the federal Tax Identification Number for SunPower Corporation, Systems appears in Field 23 of the entry summaries on CBP Form 7501 appended to SunPower's March 31, 2014 Separate Rate Application, which are attached as **Exhibits 4.1 - 4.3**.  SunPower Corporation, Systems understands that CBP utilizes this number for purposes of identifying the importer of record, which deposits duties, taxes, and fees in connection with the entry, and ensuring that the importer of record is billed for increased or additional duties, taxes, fees, and interest or appropriately receives refunds of excessive duties, taxes, or fees.  Indeed, pursuant to 19 C.F.R. § 24.5, CBP requires the filing of CBP Form 5106 (Notification of

Importer's Number) prior to any entries being made by an importer, a blank copy of which is attached as **Exhibit 7**, so that it receives accurate federal Tax Identification Number information. We were unable to locate a copy of the CBP Form 5106 prepared and executed by SunPower Corporation, Systems and submitted to CBP prior to making the 2013 entries attached as **Exhibits 4.1 - 4.3**, but the SunPower Corporation, Systems surety bond in effect during 2013, which references SunPower Corporation, Systems' federal Tax Identification Number, is attached as **Exhibit 8**.  However, a more current CBP Form 5106, which was included in a new bond application for SunPower Corporation, Systems, is attached as **Exhibit 9**.  Like the CBP Form 5106, the former bond and recently executed bond both reference SunPower Corporation, Systems' federal Tax Identification Number.  The recently executed bond is attached as **Exhibit 10**.  (Also please find attached as **Exhibit 11** and **Exhibit 12**, respectively, the electronic CBP Form 5106 and surety bond relating to SunPower, which imports merchandise under its own federal Tax Identification Number.)

      6.     Like many, if not most, importers, SunPower Corporation, Systems entered into an arrangement with the licensed customhouse broker to effectuate the 2013 entries attached as **Exhibits 4.1 - 4.3** whereby the broker, Agility Logistics Corporation ("Agility"), filed the entry documents and paid any customs duties, taxes, or fees to CBP on behalf of SunPower Corporation, Systems and then separately invoiced SunPower Corporation, Systems for the amounts paid.  The invoices issued by Agility to SunPower Corporation, Systems in connection with each of the entries attached as **Exhibits 4.1 - 4.3** are attached as **Exhibits 13.1 - 13.3**.  The invoices reference the relevant entry numbers and the amounts invoiced correlate to the "Total Other Fees" section of Field 36 (Total Entered Value) on each respective entry summary.

7.     In addition to identifying SunPower Corporation, Systems as the importer of

record by its federal Tax Identification Number in Field 23 of the entry summaries on CBP Form

7501 attached as **Exhibits 4.1 - 4.3**, the entry summaries state "SAME" in Field 22 (Consignee

No.), meaning that the federal Tax Identification Number for the consignee is the same as that

for the importer of record.  Indeed, the instructions for completing CBP Form 7501, which are

attached as **Exhibit 14**, specifically direct that when "the consignee number is the same as the

importer of record number, the word 'SAME' may be used in lieu of repeating the importer of

record number."  SunPower Corporation, Systems properly was identified as the consignee on

the bills of lading included among the documents attached as **Exhibits 4.1 - 4.3**.  In addition, the

entry summaries leave Field 24 (Reference No.) blank.  According to CBP's instructions, Field

24 should include "the IRS EIN, SSN, or CBP assigned number of the individual or firm to

whom refunds, bills, or notices of extension or suspension of liquidation are to be sent (*if other*

*than the importer of record* and only when a CBP Form 4811 is on file." (emphasis supplied).

By leaving Field 24 blank, it was clear to CBP that the SunPower Corporation, Systems, as both

the importer of record and consignee, was the party to whom refunds or bills were to be sent.

8.     Although SunPower Corporation, Systems clearly was identified by its federal

Tax Identification Number on the relevant entry summaries as the importer of record and the

consignee and was identified by name as the consignee on the relevant bills of lading

accompanying the entry summary, Field 26 (Importer of Record Name and Address) of the entry

summary erroneously referred to "SunPower Corporation USA," but with the correct physical

address for SunPower Corporation, Systems.  As we explained during the September 15, 2015

telephone conference, there is no entity within the SunPower organizational structure having the

name "SunPower Corporation USA."  We suspect that the broker inadvertently may have

referred to SunPower Corporation, Systems in this fashion because the relevant commercial invoices, which also are included among the documents attached as **Exhibits 4.1 - 4.3**, erroneously refer to "SunPower Corporation" as the consignee, although the SunPower Corporation, Systems' address again correctly is referenced.  Despite the incorrect name reference, as detailed above CBP and SunPower Corporation, Systems' broker were notified and fully aware that SunPower Corporation, Systems was the importer of record.

9.    As further support for the suggestion that the broker may simply have erred in connection with completing Field 26 of the relevant entry summaries, please find attached as **Exhibit 15** SunPower's March 31, 2014 supplemental entry of appearance in connection with the underlying countervailing duty investigation, to which a 2012 SunPower Corporation, Systems' entry was attached.  Similar to the 2013 entries appended to SunPower's March 31, 2014 Separate Rate Application, the commercial invoice relating to this entry, Entry No. 322-0768689-4 (Sept. 9, 2012), incorrectly referred to "SunPower Corporation," although SunPower Corporation, Systems' address is correctly referenced.  Nevertheless, consistent with the use of its federal Tax Identification Number, SunPower Corporation, Systems' broker correctly identified SunPower Corporation, Systems in Field 26 of the entry summary.

10.    In light of the above, it is clear that, notwithstanding the incorrect reference to "SunPower Corporation USA" in Field 26 of the relevant entry summaries, SunPower Corporation, Systems has been identified to CBP as being, and CBP considers SunPower Corporation, Systems to be, responsible for the payment of customs duties, including any antidumping duties, taxes, and fees for the entries as the importer of record.

11.    In that SunPower Corporation, Systems definitively has established its status as both an "interested party" and a "party to the proceeding," SunPower Corporation, Systems has

the requisite standing to participate in the pending appeal, Consol. Court No. 15-00067, and is entitled to injunctive relief in connection with any of its entries affected by antidumping duty deposit requirements.  However, as neither SunPower, nor SunPower Corporation, Systems, submitted case briefs in connection with the underlying investigation, the issues to be raised by SunPower and SunPower Corporation, Systems will be limited to issues raised by other of the consolidated plaintiffs in connection with the underlying investigation.

# EXHIBIT 1

# CONFIDENTIAL EXHIBIT

# EXHIBIT 2

**EDGAR**Online

# SUNPOWER CORP

## FORM 10-K
(Annual Report)

## Filed 02/24/15 for the Period Ending 12/28/14

| | |
|---|---|
| Address | 77 RIO ROBLES |
| | SAN JOSE, CA 95134 |
| Telephone | 408-240-5500 |
| CIK | 0000867773 |
| Symbol | SPWR |
| SIC Code | 3674 - Semiconductors and Related Devices |
| Industry | Semiconductors |
| Sector | Technology |
| Fiscal Year | 12/30 |

Powered By **EDGAR**Online

http://www.edgar-online.com

© Copyright 2015, EDGAR Online, Inc. All Rights Reserved.

Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# FORM 10-K

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
        **For the fiscal year ended December 28, 2014**

                                                    **OR**

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission file number 001-34166



## SunPower Corporation
(Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **94-3008969** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |

**77 Rio Robles, San Jose, California 95134**
(Address of Principal Executive Offices and Zip Code)
**(408) 240-5500**
(Registrant's Telephone Number, Including Area Code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock $0.001 par value | Nasdaq Global Select Market |

Securities registered pursuant to Section 12(g) of the Act:

**None**
**(Title of Class)**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 of Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Sections 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| | | | |
|---|---|---|---|
| Large accelerated filer ☒ | Accelerated filer ☐ | Non-accelerated filer ☐ | Smaller reporting company ☐ |
| | | (Do not check if a smaller reporting company) | |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐   No ☒

The aggregate market value of the voting stock held by non-affiliates of the registrant on June 29, 2014 was $2,123 million . Such aggregate market value was computed by reference to the closing price of the common stock as reported on the Nasdaq Global Select Market on June 27, 2014. For purposes of determining this amount only, the registrant has defined affiliates as including Total Energies Nouvelles Activités USA, formerly known as Total Gas & Power USA, SAS and the executive officers and directors of registrant on June 27, 2014.

The total number of outstanding shares of the registrant's common stock as of February 17, 2015 was 131,480,382 .

**DOCUMENTS INCORPORATED BY REFERENCE**

Parts of the registrant's definitive proxy statement for the registrant's 2015 annual meeting of stockholders are incorporated by reference in Items 10, 11, 12, 13, and 14 of Part III of this Annual Report on Form 10-K.

1

# EXHIBIT 3

# CONFIDENTIAL EXHIBIT

# EXHIBIT 4.1

# CONFIDENTIAL EXHIBIT

# EXHIBIT 4.2

# CONFIDENTIAL EXHIBIT

# EXHIBIT 4.3

# CONFIDENTIAL EXHIBIT

# EXHIBIT 5

# SUNPOWER CORP

## FORM 10-Q
### (Quarterly Report)

## Filed 08/13/10 for the Period Ending 07/04/10

| | |
|---|---|
| Address | 3939 NORTH FIRST STREET |
| | SAN JOSE, CA 95134 |
| Telephone | 408-240-5500 |
| CIK | 0000867773 |
| Symbol | SPWRA |
| SIC Code | 3674 - Semiconductors and Related Devices |
| Industry | Semiconductors |
| Sector | Technology |

http://www.edgar-online.com
© Copyright 2010, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-Q

☒   QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended July 4, 2010

OR

☐   TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number 001-34166

# SunPower Corporation
(Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **94-3008969** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |

**3939 North First Street, San Jose, California 95134**
(Address of Principal Executive Offices and Zip Code)

**(408) 240-5500**
(Registrant's Telephone Number, Including Area Code)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Sections 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large Accelerated Filer ☒        Accelerated Filer ☐        Non-accelerated filer ☐        Smaller reporting company ☐
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   Yes ☐   No ☒

The total number of outstanding shares of the registrant's class A common stock as of August 6, 2010 was 55,663,828.
The total number of outstanding shares of the registrant's class B common stock as of August 6, 2010 was 42,033,287.

EX-10.11 4 ex10_11.htm EXHIBIT 10.11

Exhibit 10.11

### SECURITY AGREEMENT

SECURITY AGREEMENT, dated as of April 12, 2010 (as it may be amended, supplemented or otherwise modified from time to time, this "Agreement"), is made by and among SunPower Corporation, a Delaware corporation, SunPower North America, LLC, a Delaware limited liability company, and SunPower Corporation, Systems, a Delaware corporation (collectively, the "Debtors", and each, a "Debtor"), each having its chief executive office at 3939 North First Street, San Jose, California 95134, in favor of Deutsche Bank AG New York Branch, as agent (in such capacity, and together with its successors in such capacity, the "Administrative Agent") for the benefit of the Secured Parties (as defined in the Facility Agreement referred to below).

R E C I T A L S :

A.     The Debtors, the Subsidiary Applicants (as defined in the Facility Agreement) parties thereto from time to time, the Banks (as defined in the Facility Agreement) parties thereto from time to time, and the Administrative Agent, have entered into the Letter of Credit Facility Agreement, dated as of April 12, 2010 (as the same may be amended, supplemented or otherwise modified from time to time, the "Facility Agreement"). Subject to the terms and conditions of the Facility Agreement, the Secured Parties have agreed to provide a letter of credit facility to the Debtors.

B.     The Secured Parties are willing to provide a letter of credit facility to the Debtors, but only upon the conditions, among others, that the Debtors shall have executed and delivered to the Administrative Agent, for the benefit of the Secured Parties, this Agreement and shall have granted to the Administrative Agent, for the benefit of the Secured Parties, a security interest in the Collateral to secure the Obligations as herein provided, and the Debtors have agreed to do so.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.     Defined Terms. Unless the context otherwise requires, capitalized terms used in this Agreement without definition shall have the respective meanings provided therefor in the Facility Agreement. Furthermore, capitalized terms used herein that are not defined in this Agreement or in the Facility Agreement shall have the respective meanings provided therefor in the New York UCC. The rules of construction specified in Section 1.03 of the Facility Agreement shall also apply to this Agreement. The following terms shall have the following meanings:

"Collateral" shall mean, with respect to any Debtor, all (a) Accounts and Inventory of such Debtor and (b) Contract Rights, Supporting Obligations, General Intangibles, and Records to the extent relating to or supporting such Accounts or Inventory of such Debtor or any Proceeds or products of either thereof, now owned or at any time hereafter acquired by such Debtor or in which such Debtor now has or at any time in the future may acquire any right, title or interest, in each case wheresoever located, and, to the extent not otherwise included, all

Proceeds and products of any of the foregoing; provided, however, that receivables in respect of rebates from U.S. Governmental Authorities sold pursuant to the Tech Credit Agreement, shall not constitute "Collateral".

"Contract Rights" shall mean, with respect to any Debtor, all rights of such Debtor under contracts and agreements (including those giving rise to an Account) to which such Debtor is a party or by which it or its assets are bound ("Contracts"), as the same may be amended, supplemented, extended or replaced, including (a) all rights of such Debtor to receive money or other property thereunder or in connection therewith, (b) all rights to damages for default or other violation, and (c) all rights to make waivers, releases, modifications, and amendments thereto and to exercise remedies thereunder.

"General Intangible" shall have the meaning provided therefor in the New York UCC and shall include all Payment Intangibles.

"New York UCC" shall mean the Uniform Commercial Code in effect in the State of New York on the date hereof.

"Obligations" means, with respect to any Debtor, all obligations, liabilities, and Indebtedness of every nature of such Debtor from time to time owing to the Administrative Agent or any Bank, under or in connection with the Facility Agreement or any other Loan Document, in each case whether primary, secondary, direct, indirect, contingent (including the undrawn amount of each LOC), fixed or otherwise, including the obligation to provide cash collateral pursuant to any Loan Document and including interest accruing at the rate provided in the applicable Loan Document on or after the commencement of any bankruptcy or insolvency proceeding, whether or not allowed or allowable.

"UCC" shall mean the Uniform Commercial Code as in effect from time to time in any applicable jurisdiction.

2.     Grant of Security Interest. As collateral security for the prompt and complete payment and performance when due of all of its present and future Obligations, each Debtor hereby grants, assigns, conveys, mortgages, pledges, hypothecates and transfers to the Administrative Agent, for the benefit of the Secured Parties, a continuing lien on, and first priority perfected security interest in, all of such Debtor's right, title and interest in, to and under the Collateral.

3.     Rights of the Administrative Agent; Limitations on the Administrative Agent's Obligations.

(a)     Anything herein to the contrary notwithstanding, each Debtor shall remain liable under each Contract to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with and pursuant to the terms and provisions of each such Contract. The Administrative Agent shall not have any obligation or liability under any Contract by reason of or arising out of this Agreement or the receipt by the Administrative Agent of any payment relating to any Account pursuant hereto, nor shall the Administrative Agent be required or obligated in any manner to perform or fulfill any of the obligations of any of the Debtors under or pursuant to any Contract, or to make any payment, or

2

to make any inquiry as to the nature or the sufficiency of any payment received by it or the sufficiency of any performance by any party to any Contract, or to present or file any claim, or to take any action to collect or enforce any performance or the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times. If the Administrative Agent shall elect, in its sole discretion, to perform or fulfill any obligations of any of the Debtors under any Contract, then the Debtors shall not be released from and shall remain fully liable with respect to each such Contract.

(b)　At the Administrative Agent's request, each Debtor shall deliver to the Administrative Agent all original and other documents evidencing and relating to the performance of labor or services which created the Accounts, including all original orders, invoices and shipping receipts and duplicate copies of credit memoranda.

(c)　The Administrative Agent may, at any time after the occurrence and during the continuance of an Event of Default, after first notifying the applicable Debtors of its intention to do so, notify account debtors and parties to Contracts that the Accounts and General Intangibles have been assigned to the Administrative Agent and that payments shall be made directly to a designated special account or directly to the Administrative Agent. Upon the request of the Administrative Agent at any time after the occurrence and during the continuation of an Event of Default, each Debtor will so notify such account debtors and such parties. The Administrative Agent may at any time in its own name communicate with account debtors and parties to Contracts in order to verify with them to the Administrative Agent's satisfaction the existence, amount and terms of any Accounts or General Intangibles.

(d)　The Administrative Agent shall have the right, upon reasonable notice to the Debtors, to make or cause the Debtors to make, and the Debtors shall make, in the name of the Debtors and to an address controlled by the Administrative Agent, test verifications of the Collateral in any reasonable manner and through any reasonable medium that the Administrative Agent considers advisable, and the Debtors agree to furnish all such assistance and information as the Administrative Agent may reasonably require. Any out-of-pocket costs and expenses incurred by the Administrative Agent or any Secured Party in connection with any such test verification shall be borne by the Debtors. The Debtors, at their own expense, will furnish, or will cause independent public accountants satisfactory to the Administrative Agent to furnish, to the Administrative Agent, at any time and from time to time at reasonable intervals, promptly upon request, the following reports: (i) reconciliation of all Collateral, (ii) aging of all Collateral, (iii) trial balances, and (iv) test verifications of such Collateral as the Administrative Agent may request.

4.　　Representations, Warranties and Covenants – General. Each Debtor hereby represents and warrants to and covenants and agrees with the Administrative Agent, from and after the date of this Agreement and until all of its Obligations are indefeasibly satisfied in full in cash, that:

(a)　Good Title, Etc. Except for the security interest granted to the Administrative Agent pursuant to this Agreement, such Debtor is the sole owner of each item of Collateral in which it purports to grant a security interest hereunder, having good title thereto, free and clear of any and all Liens or rights of others, except Permitted Encumbrances. No

3

amounts payable under or in connection with any of the Accounts are evidenced by promissory notes, letters of credit or other instruments which are required to be delivered to the Administrative Agent in accordance with Section 5(b) hereof and have not been so delivered. All Accounts of such Debtor have been originated by such Debtor and all Inventory of such Debtor has been acquired by such Debtor in the ordinary course of its business.

(b)　<u>No Other Lien</u>. Except as disclosed in the Facility Agreement, no security agreement, control agreement, financing statement, initial financing statement, continuation statement, bailee acknowledgment agreement or equivalent security or lien instrument covering all or any part of the Collateral exists or is on file or of record in any public office or will hereafter be created or filed or recorded in any public office, except in favor of the Administrative Agent as secured party under the Loan Documents. Such Debtor has not previously granted a security interest in any of its property or assets of the types constituting Collateral hereunder to any Person, except as set forth on <u>Schedule A</u> hereto, and will not hereafter grant a security interest in any of its property or assets of the types constituting Collateral, except in favor of the Administrative Agent as secured party under the Loan Documents.

(c)　<u>Perfection</u>. This Agreement creates a valid and continuing lien on, and security interest in, all of the Collateral. Upon appropriate financing statements having been filed in the offices listed on <u>Schedule B</u> hereto, this Agreement creates a duly perfected, valid and continuing lien on and security interest in all of the Collateral with respect to which a security interest may be perfected solely by filing pursuant to the UCC in favor of the Administrative Agent, prior to all other Liens and rights of others, and is enforceable as such as against creditors of and, subject to the provisions of Section 9-320 of the UCC in effect in any applicable jurisdiction or any similar law generally affecting the rights of creditors and buyers of goods in the ordinary course of business, purchasers from such Debtor and as against any owner, lessor or mortgagee of real property where any of the Inventory is located and any purchaser of such real property. All action necessary or desirable to protect and perfect such security interest under the UCC in such Collateral has been duly taken, it being understood that the Debtors are not being required to make any filings or recordings to perfect any security interests in the U.S. Copyright Office or the Patent and Trademark Office or with respect to any vehicles or other equipment subject to any jurisdiction's certificate of title laws.

(d)　<u>Name(s) of the Debtors; Chief Executive Office, Etc</u>. The exact full legal name of such Debtor as it appears in its certificate of incorporation or certificate of formation, as applicable, is as set forth in the preamble hereto. Except as set forth on <u>Schedule C</u> hereto, such Debtor has had no other name since its organization, and such Debtor has not changed its identity or corporate or limited liability company structure (including by way of any merger, consolidation, acquisition or any change in the form, nature or jurisdiction of organization). Except as set forth on <u>Schedule C</u> hereto, neither such Debtor nor any of its divisions or business units has used any other names (including trade names, assumed names, or similar appellations) at any time during the past five (5) years. The federal tax identification number and any organizational identification number assigned by the state of incorporation or organization of such Debtor is as set forth on <u>Schedule C</u> hereto. The principal place of business and chief executive office of such Debtor, and the only place where such Debtor's records concerning the Accounts and General Intangibles are kept, is, and has been at all times during the prior four (4)

4

months, as set forth on Schedule D hereto. Such Debtor will not change such chief executive office or remove such records, except, in each case, to a location within the continental United States of America, provided that such Debtor shall have given at least thirty (30) days' prior written notice to the Administrative Agent thereof and shall have taken such action, at such Debtor's expense, as the Administrative Agent may deem necessary or desirable under the UCC to maintain the security interest of the Administrative Agent in the Collateral at all times fully perfected and in full force and effect. Such Debtor will not change its name, identity or structure in any manner which might make any financing statement filed in favor of the Administrative Agent as secured party misleading or otherwise ineffective unless such Debtor shall have given the Administrative Agent at least thirty (30) days' prior written notice thereof and shall have taken such action, at such Debtor's expense, as the Administrative Agent may deem necessary or desirable to maintain the security interest of the Administrative Agent in the Collateral at all times fully perfected and in full force and effect. The Debtors will not reincorporate or reorganize itself under the laws of any jurisdiction other than the jurisdiction in which it is incorporated or organized as of the date hereof as set forth on Schedule D hereto unless such Debtor provides written notice to the Administrative Agent at least thirty (30) days prior to such reincorporation or reorganization and delivers to the Administrative Agent appropriate lien searches and financing statements in that new jurisdiction sufficient to confirm to the Administrative Agent's reasonable satisfaction its continuing security interest in the Collateral as to which a security interest may be perfected by the filing of a financing statement; provided, that the foregoing shall not be deemed to permit any action otherwise prohibited by the Facility Agreement.

       (e)    Further Documentation. At any time and from time to time, upon the written request of the Administrative Agent, and at the sole cost and expense of such Debtor, such Debtor will promptly and duly execute, acknowledge and/or deliver any and all such further agreements, applications, certificates, documents and other papers and take such further actions as may be necessary or as the Administrative Agent may reasonably deem necessary in obtaining the full benefits of this Agreement and of the rights and powers herein granted, including, the filing of any financing statement or any initial financing statement or continuation statements under the UCC in effect in any United States jurisdiction with respect to the liens and security interests granted hereby. Such Debtor will furnish to the Administrative Agent from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Administrative Agent may reasonably request, all in reasonable detail. Such Debtor also hereby irrevocably authorizes the Administrative Agent, at any time and from time to time, to file in any filing office in any UCC jurisdiction, any initial financing statements and amendments thereto, and any such financing statement or amendment may (i) indicate the Collateral (A) as being of an equal or lesser scope or with greater detail or (B) in substantially the form of Schedule E, and (ii) provide any other information required by Part 5 of Article 9 of the UCC, for the sufficiency or filing office acceptance of any financing statement or amendment, including, whether such Debtor is an organization, the type of organization and any organizational identification number issued to such Debtor. Such Debtor agrees to furnish any such information to the Administrative Agent promptly upon the Administrative Agent's request. Such Debtor also ratifies its authorization for the Administrative Agent to have filed in any UCC jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

5

(f)    Maintenance of Records. Such Debtor will keep and maintain at its own cost and expense satisfactory and complete records of the Collateral, including a record of any payments received or credits granted with respect to the Collateral and all other dealings with the Collateral. Such Debtor will mark its books and records pertaining to the Collateral to evidence this Agreement and the security interests granted hereby. For the Administrative Agent's further security, each Debtor agrees that the Administrative Agent shall have a special property interest in all of the Debtor's Records pertaining to the Collateral and each Debtor shall, on demand of the Administrative Agent, deliver and turn over copies of any such Records to the Administrative Agent or to its representatives at any time after the occurrence and during the continuance of an Event of Default.

(g)    Compliance with Laws, Etc. Such Debtor is in compliance with all statutes, rules, regulations, orders, decrees and lawful directions of any Governmental Authority applicable to the Collateral or any part thereof or to the operation of such Debtor's business (including, the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.* and all rules and regulations promulgated thereunder), except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect; provided, however, that such Debtor may contest any statute, rule, regulation, order, decree or direction in any reasonable manner which shall not, in the opinion of the Administrative Agent, adversely affect the Administrative Agent's rights or the priority of its security interest in the Collateral if such Debtor shall maintain on its books and records proper reserves with respect thereto in accordance with GAAP. To the best of its knowledge, such Debtor is not currently the subject of any investigation by any Governmental Authority.

(h)    Payment of Obligations. Such Debtor will pay promptly, when due, all taxes, assessments and governmental charges or levies in accordance with the Facility Agreement.

(i)    Limitation on Liens on and Dispositions of Collateral. Such Debtor will not sell, transfer, license, lease or otherwise dispose of any portion of the Collateral, or attempt, offer or contract to do so, except in the ordinary course of business or as permitted by the Facility Agreement (including, but not limited to, sales of receivables pursuant to the Tech Credit Agreement).

(j)    Maintenance of Insurance. Such Debtor will maintain with financially sound and reputable companies, insurance policies (i) insuring its Inventory against loss by fire, explosion, theft and such other casualties as are usually insured against by companies engaged in the same or similar businesses and (ii) insuring such Debtor and the Administrative Agent, for the benefit of the Secured Parties, against liability for personal injury and property damage, such policies to be in such form and in such amounts and coverages as may be satisfactory to the Administrative Agent, with losses payable to the Administrative Agent as loss payee under standard non-contributory "mortgagee", "lender" or "secured party" clauses. Such Debtor shall deliver to the Administrative Agent, as often as the Administrative Agent may reasonably request, a report of a reputable insurance agent with respect to the insurance. All insurance shall (A) in the case of property insurance, contain a breach of warranty clause in favor of the Administrative Agent, and (B) be satisfactory in all respects to the Administrative Agent. Such Debtor will provide to the Secured Parties at least thirty (30) days prior written notice of any

6

cancellation or non-renewal of (together with a description of any actual or proposed replacement policy(ies)), or material adverse change to, any insurance policy described in this paragraph. So long as no Default has occurred and is continuing or would occur after giving effect thereto, any cash proceeds of the insurance described in clause (i) of this paragraph received by the Administrative Agent as a result of any casualty to any Inventory shall, at the option of such Debtor, either be applied by the Administrative Agent to the obligations of such Debtor or be remitted to such Debtor for the purpose of replacing the Inventory involved, and such Debtor shall apply such proceeds solely for such purpose.

       (k)     Notices. Such Debtor will promptly advise the Administrative Agent, in writing and in reasonable detail, (i) of any Lien asserted by notice to such Debtor or adverse claim made against any of the Collateral, (ii) of any material change in the composition of the Collateral, and (iii) of the occurrence of any other event which might have a material adverse effect on the aggregate value, enforceability or collectibility of the Collateral or on the security interests created hereunder.

       (l)     Right of Inspection. The Administrative Agent and each Secured Party shall at all times have inspection rights in accordance with the Facility Agreement.

       (m)     Information True. All information with respect to the Collateral set forth in any schedule, certificate or other writing at any time heretofore or hereafter furnished by such Debtor to the Administrative Agent or any Secured Party, and all other written information heretofore or hereafter furnished by such Debtor to the Administrative Agent or any Secured Party, is and will be true and correct in all material respects as of the date furnished.

       5.     Representations, Warranties and Covenants – Particular Collateral. Each Debtor hereby represents and warrants to and covenants and agrees with the Administrative Agent, without prejudice to the provisions of Section 4 of this Agreement, from and after the date of this Agreement and until the Obligations are indefeasibly satisfied in full in cash, that:

       (a)     Accounts. The amount represented by such Debtor to the Administrative Agent or any Secured Party from time to time as owing by each account debtor or by all of its account debtors in respect of the Accounts of such Debtor will at such time be substantially the correct amount actually and unconditionally owing by such account debtors thereunder. Each Account is a bona fide, valid and legally enforceable obligation of the parties thereto to the account debtor in respect thereof. The right, title and interest of such Debtor in any Account is not subject to any material defense, offset, counterclaim or claim, nor have any of the foregoing been asserted or alleged against any Debtor or any Account.

       (b)     Certain Inventory. If any Inventory of the Debtors shall at any time be in the possession or control of any warehouseman or other bailee, such person shall authenticate a record acknowledging that it holds possession of such Inventory for the benefit of the Administrative Agent as secured party, and agreeing to act on the Administrative Agent's instructions without the further consent of the Debtors. The Debtors agree to promptly deliver to the Administrative Agent all Documents covering any Inventory of the Debtors. If any such Document is not in bearer form it shall be endorsed to the order of the Administrative Agent before it is delivered to the Administrative Agent.

7

(c)   Inventory.  None of the Inventory is, or has during the prior four (4) months been, located at any place other than the locations specified in Schedule F hereto.  Such Debtor will not permit or suffer any of the Inventory to be located at any place other than the locations specified in such Schedule F (except for items of Inventory in transit in the ordinary course of business of such Debtor and items of Inventory sent out on approval in the ordinary course of business of such Debtor) unless such place is within the continental United States of America, the Administrative Agent shall have received sixty (60) days' prior written notice thereof and such Debtor shall have taken such actions, at such Debtor's expense, as the Administrative Agent may deem necessary or desirable to maintain its security interest in such Inventory at all times following such change of location fully perfected, first priority and in full force and effect.

(d)   Limitations on Modifications of Contracts, No Waivers, Extensions.  Such Debtor will not, without the written consent of the Administrative Agent, (i) except in the ordinary course of business, amend, modify, terminate or waive any provision of any Contract in any manner which might materially adversely affect the value of the Account related thereto as Collateral, or (ii) except in the ordinary course of business, fail to exercise promptly and diligently each and every material right which it may have under each Contract.  After the occurrence and during the continuance of an Event of Default, such Debtor will not, without the Administrative Agent's prior written consent or in the ordinary course of business, (i) grant any extension of the time of payment of any of the Accounts, (ii) compromise, compound or settle the same for less than the full amount thereof, (iii) release, wholly or partly, any Person liable for the payment thereof, (iv) allow any credit or discount whatsoever thereon other than trade discounts granted in the normal course of business, or (v) fail to deliver promptly to the Administrative Agent a copy of each material demand, notice or document received by it relating in any way to any Account or Contract in respect thereof.

6.   The Administrative Agent's Appointment as Attorney-In-Fact.

(a)   Each Debtor hereby irrevocably constitutes and appoints the Administrative Agent and any officer or agent (including a receiver) thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Debtor and in the name of such Debtor or in its own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives the Administrative Agent the power and right, on behalf of such Debtor, without notice to or assent by such Debtor, to do the following:

(i)   to pay or discharge taxes or Liens levied or placed on or threatened against the Collateral, to effect any repairs or any insurance called for by the terms of this Agreement and to pay all or any part of the premiums therefor and the costs thereof;

(ii)   to ask, demand, collect, receive and give acquittances and receipts for any and all monies due and to become due under or arising out of any Account or General Intangible and, in the name of such Debtor or its own name or otherwise, to take possession of and endorse and collect any checks, drafts, notes, acceptances or other documents

8

or instruments for the payment of monies due under or arising out of any Account or General Intangible and to file any claim or to take any other action or proceed in any court of law or equity or otherwise as deemed appropriate by the Administrative Agent for the purpose of collecting any and all such monies due under or arising out of any Account or General Intangible whenever payable;

(iii) (A) to direct any party liable for any payment under or arising out of any Account or General Intangible to make payment of any and all monies due and to become due thereunder directly to the Administrative Agent or as the Administrative Agent shall direct, (B) to receive, open and dispose of all mail addressed to such Debtor and to notify postal authorities or delivery services to change the address for delivery thereof to such address as may be designated by the Administrative Agent, and (C) to receive payment of and receipt for any and all monies, claims and other amounts due and to become due at any time in respect of or arising out of any Collateral;

(iv) (A) to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications and notices in connection with accounts and other documents relating to the Collateral, (B) to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any part thereof and to enforce any other right in respect of any Collateral, (C) to defend any suit, action or proceeding brought against such Debtor with respect to any Collateral, (D) to settle, compromise or adjust any suit, action or proceeding described above and, in connection therewith, to give such discharges or releases as the Administrative Agent may deem appropriate, and (E) generally to do, at the Administrative Agent's option and such Debtor's cost and expense, at any time or from time to time, all acts and things which the Administrative Agent deems necessary to protect, preserve or realize upon the Collateral and the Administrative Agent's security interest therein, in order to effect the intent of this Agreement, all as fully and effectively as such Debtor might do; and

(v) to execute, acknowledge, deliver and record or file all documents or instruments which may be necessary or desirable to preserve and perfect the Administrative Agent's security interest in any Collateral including any financing statement or amendment to or continuation thereof, and any amendment to the Schedules attached hereto.

Such Debtor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

(b) The powers conferred on the Administrative Agent hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Administrative Agent shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to any Debtor for any act or failure to act.

(c) Each Debtor also authorizes the Administrative Agent, at any time and from time to time, to execute, in connection with any sale or sales provided for in Section 8(b) of this Agreement, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

9

7.     <u>Performance by the Administrative Agent of the Debtors' Obligations</u>.  If any Debtor fails to perform or comply with any of its agreements contained herein and the Administrative Agent, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, or if the Administrative Agent shall take action pursuant to Section 6 of this Agreement, the costs and expenses of the Administrative Agent incurred in connection therewith, together with interest thereon at the applicable interest rate provided for in the Facility Agreement, shall be payable by such Debtor to the Administrative Agent on demand and shall constitute Obligations of such Debtor secured hereby.

8.     <u>Certain Remedies; Rights Upon Default</u>.

(a)    If an Event of Default shall occur and be continuing, upon the request of the Administrative Agent, each Debtor shall deposit with the Administrative Agent, promptly when collected, all Proceeds, whether consisting of checks, notes, drafts, bills of exchange, money orders or other items, received in payment of any Collateral or on account of any Contract and in precisely the form received, except for such Debtor's endorsement when required, in a special bank account maintained by the Administrative Agent, subject to withdrawal only by the Administrative Agent as hereinafter provided, and until so turned over, such Proceeds shall be deemed to be held in trust by such Debtor for and as the Administrative Agent's property and shall not be commingled with such Debtor's other funds.  Such Proceeds, when deposited, shall continue to be collateral security for all of the Obligations and shall not constitute payment thereof until applied as hereinafter provided.  In no event shall any checks, drafts or other items which are deposited into such special account pursuant hereto constitute final payment unless and until such items have been collected.  Any and all such Proceeds so received by the Administrative Agent (whether from such Debtor or otherwise) shall be applied in whole or in part by the Administrative Agent against all or any part of such Debtor's Obligations, in such order as the Administrative Agent may in its sole discretion elect.  Any balance of such Proceeds held by the Administrative Agent and remaining after payment in full of all of such Obligations shall be paid over to whomsoever may be lawfully entitled to receive the same.

(b)    If an Event of Default shall occur and be continuing, then, in addition to all other remedies granted to it in this Agreement or in any other instrument or agreement securing, evidencing or relating to the Obligations, the Administrative Agent may exercise all rights and remedies of a secured party under the UCC and under any other applicable law.  Without limiting the generality of the foregoing, each Debtor expressly agrees that in any such event the Administrative Agent, without demand of performance or other demand, advertisement or notice of any kind (except the notice specified below of the time and place of a public sale or the time after a private sale) to or upon such Debtor or any other Person (all and each of which demands, advertisements and/or notices are hereby expressly waived to the fullest extent permitted by applicable law), may forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase or sell or otherwise dispose of and deliver such Collateral (or contract to do so), or any part thereof, in one or more parcels at public or private sale or sales, at any exchange or broker's board or at any of the Administrative Agent's offices or elsewhere at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk.  The

10

Administrative Agent or any Secured Party shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales to purchase the whole or any part of such Collateral so sold, free of any right or equity of redemption in the Debtors which right or equity of redemption is hereby waived and released to the maximum extent permitted by applicable law. In connection with any sale or other disposition of all or any part of the Collateral, the Administrative Agent may comply with any applicable state or federal law requirements and/or disclaim warranties of title, possession, quiet enjoyment or the like without affecting the commercial reasonableness of such sale or other disposition. Each Debtor further agrees, at the Administrative Agent's request, to assemble the Collateral and to make it available to the Administrative Agent at such places as the Administrative Agent shall reasonably select, whether at such Debtor's premises or elsewhere. The Administrative Agent shall apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all costs and expenses of every kind incurred in connection with the foregoing or incidental to the care, safekeeping or otherwise of any or all of the Collateral or in any way relating to the rights of the Administrative Agent hereunder, including reasonable attorneys' fees and legal expenses, to the payment in whole or in part of the applicable Debtor's Obligations, in such order as the Administrative Agent may in its sole discretion elect, the Debtors remaining liable for any deficiency remaining unpaid after such application, and only after so applying such net proceeds and after the payment by the Administrative Agent of any other amount required by any provision of law, including Section 9-615(a)(3) of the UCC, need the Administrative Agent account for the surplus, if any, to the applicable Debtor. To the extent permitted by applicable law, each Debtor waives all claims, damages and demands against the Administrative Agent and the Secured Party arising out of the repossession, retention or sale of the Collateral and neither the Administrative Agent nor any Secured Party shall under any circumstances be liable for any punitive, consequential, or other special damages. The Administrative Agent shall have, with respect to the Collateral, in addition to any other rights and remedies that may be available to it at law or in equity or pursuant to this Agreement or any other Loan Document or any other contract or agreement, all rights and remedies of a secured party under any applicable law, and it is expressly agreed that if the Administrative Agent should proceed to dispose of or utilize the Collateral, or any part thereof, in accordance with the provisions of said law, ten (10) days' prior written notice by the Administrative Agent to the applicable Debtor shall be deemed to be reasonable notice under any such provision requiring such notice (provided that no prior notice shall be required for Collateral that threatens to decline rapidly in value or that is of a type customarily sold on a recognized market).

(c)   Each Debtor also agrees to pay all costs and expenses of the Administrative Agent and the Secured Parties, including attorneys' fees and disbursements, incurred with respect to the collection of any of the Obligations and the enforcement of any of its rights hereunder.

(d)   Except as otherwise specifically provided herein, each Debtor hereby waives presentment, demand, protest or any notice (to the extent permitted by applicable law) of any kind in connection with this Agreement or any Collateral.

(e)   The Administrative Agent shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other

11

assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, each Debtor hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Administrative Agent's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, such Debtor hereby irrevocably waives the benefits of all such laws.

9.   Limitation on the Administrative Agent's Duty in Respect of Collateral. Beyond the safe custody thereof, the Administrative Agent shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or nominee of it or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto. Each Debtor shall indemnify, reimburse and save and hold harmless the Administrative Agent and the Secured Parties and their respective officers, directors, shareholders, agents, successors and assigns from and against any and all claims, demands, causes of action, suits or judgments, whether or not the Administrative Agent or any Secured Party is named as a party, and any and all costs and expenses in connection with any thereof (including fees and expenses of legal counsel), for or on account of injury to or death of any person (including employees and agents of the Debtor), loss of or damage to property (including the Collateral) and any other liability which may result from or arise in any manner out of this Agreement or the ownership, control, management, use or operation of the Collateral, including any breach by any Debtor of any representation, warranty, covenant or agreement contained herein or any act done by the Administrative Agent or any Secured Party in reliance upon any of the foregoing or in connection with any such action or proceeding relating to any Collateral, except where any such liability arises solely out of or as the result of the actual possession or control of the relevant Collateral by the Administrative Agent or its agents or assigns and except where any such liability arises out of the Administrative Agent's willful misconduct or gross negligence. The indemnity contained in this Section 9 shall continue in full force and effect notwithstanding the full payment of the Obligations.

10.   Security Interest Absolute. The pledges and security interest created hereby shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of the Facility Agreement, any other Loan Document, any agreement with respect to any of the Obligations or any other agreement or instrument relating to any of the foregoing, (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any department from the Facility Agreement, any other Loan Document or any other agreement or instrument, (c) any exchange, release or non-perfection of any Lien on other collateral, or any release or amendment or waiver of or consent under or departure from any guarantee, securing or guaranteeing all or any of the Obligations, or (d) any other circumstance (other than termination of the security interest as provided in Section 11) that might otherwise constitute a defense available to, or a discharge of, any Debtor or guarantor in respect of the Obligations or this Agreement.

12

11.     <u>Continuing Security Interest</u>. This Agreement shall create a continuing security interest in the Collateral and shall remain in full force and effect notwithstanding that from time to time no Obligations may be outstanding. This Agreement shall terminate upon the later to occur of all of the following: (a) the express written termination of the Facility Agreement in accordance with its terms (accompanied by a release of any claims asserted by any party entitled to indemnification thereunder), (b) the termination or expiration without any pending drawing of each LOC, and (c) the final payment or satisfaction in full in cash of the Obligations.

12.     <u>No Offset</u>. No offset or claim that any Debtor now has or may have in the future against the Administrative Agent or any Secured Party shall relieve such Debtor from paying any amounts due hereunder or from performing any other obligations contained herein.

13.     <u>Notices</u>. All notices, demands, requests and other communications provided for or permitted under this Agreement shall be in writing and sent to the parties hereto in accordance with the provisions of Section 9.02 of the Facility Agreement.

14.     <u>Severability</u>. Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

15.     <u>No Waiver; Cumulative Remedies</u>. No failure on the part of any Secured Party or the Administrative Agent to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

16.     <u>Successors and Assigns</u>. This Agreement and all obligations of the Debtors hereunder shall be binding upon the successors and assigns of the Debtors and shall, together with the rights and remedies of the Administrative Agent hereunder, inure to the benefit of the Administrative Agent and the Secured Parties and their respective successors and assigns; <u>provided</u> that the Debtors may not transfer or assign its rights and obligations hereunder (and any such assignment on transfer shall be void).

17.     <u>Indemnification</u>. Each Debtor shall indemnify and hold harmless the Administrative Agent and each Secured Party for any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursement of any kind and nature whatsoever that may be imposed on, incurred by or asserted against the Administrative Agent or such Secured Party in any way relating to or arising out of this Agreement or the transactions contemplated hereby or the enforcement of any of the terms hereof; <u>provided</u> that the Debtors shall not be liable for any of the foregoing to the extent they arise from the gross negligence or willful misconduct of the Administrative Agent or such Secured Party. The agreements in this Section shall survive the termination of this Agreement. Each Debtor further agrees to pay, and to indemnify, save and hold harmless the Administrative Agent and each Secured Party and their respective successors and assigns from, any and all liabilities with respect to, or resulting from any delay in paying, any and all excise, sales or other taxes which

13

may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

18. <u>Governing Law</u>. **This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.**

19. <u>Jurisdiction; Waiver of Right to Jury Trial; Other Waivers.</u>

(a) Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York state court or federal court of the United States of America sitting in the Borough of Manhattan in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or any of the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such New York state court or, to the extent permitted by law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) EACH PARTY HERETO IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE).

(c) Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any of the other Loan Documents to which it is a party in any New York state or federal court. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court sitting in the Borough of Manhattan in New York City.

20. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement (or any related agreement, including any amendment hereto or waiver hereunder) by facsimile or e-mail (in a pdf or similar file) shall be effective as delivery of an original executed counterpart of this Agreement (or such related agreement).

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

14

IN WITNESS WHEREOF, each of the Debtors has caused this Security Agreement to be duly executed and delivered as of the day and year first above written.

SUNPOWER CORPORATION

By:    /s/ Dennis V. Arriola
      Name: Dennis V. Arriola
      Title:   Senior Vice President and Chief Financial Officer

SUNPOWER CORPORATION, SYSTEMS

By:    /s/ Dennis V. Arriola
      Name: Dennis V. Arriola
      Title:   Senior Vice President and Chief Financial Officer

SUNPOWER NORTH AMERICA, LLC

By:    /s/ Dennis V. Arriola
      Name: Dennis V. Arriola
      Title:   Chief Financial Officer

ACCEPTED AND AGREED:

DEUTSCHE BANK AG NEW
YORK BRANCH, as Administrative Agent

By:    /s/ Anthony F. Calabrese
      Name: Anthony F. Calabrese
      Title: Director

By:    /s/ Katrina Krallitsch

      Name: Katrina Krallitsch
      Title:   Assistant Vice President

Signature Page to Security Agreement

Schedule A to Security
Agreement dated as of
April 12, 2010 made by
Debtors in favor of Administrative Agent

Prior Security Interests

1.  Security interest in equipment evidenced by UCC-1 No. 72900396 filed in Delaware in connection with indebtedness of the Company under the Company's Master Agreement with Cisco Systems Capital Corporation and any schedules appurtenant thereto.

2.  Security interest in equipment evidenced by UCC-1s No. 81644762, 81644770, and 93228381 filed in Delaware filed in connection with indebtedness of the Company in connection with leasing arrangements with US Bancorp.

3.  Security interest in equipment evidenced by UCC-1 No. 82389649 filed in Delaware in connection with indebtedness of the Company in connection with a leasing arrangement with Well Fargo Bank, N.A.

4.  Security interest in accounts of the Company evidenced by UCC-1s No. 61861277 and 61861301 filed in Delaware in connection with the Company's factoring agreement with Technology Credit Corporation.

5.  Security interest in certain pledged shares of a subsidiary of the Company evidenced by UCC-1 No. 93867451 filed in Delaware in connection with a Pledge Agreement between the Company and Wells Fargo Bank Northwest, N.A., as Collateral Agent.

***

Schedule B to Security
Agreement dated as of
April 12, 2010 made by
Debtors in favor of Administrative Agent

Offices and Jurisdictions for Filing of Financing Statements

| Name of Debtor | Jurisdiction of Organization | Filing Office |
|---|---|---|
| SunPower Corporation | Delaware | Delaware Secretary of State |
| SunPower Corporation, Systems | Delaware | Delaware Secretary of State |
| SunPower North America, LLC | Delaware | Delaware Secretary of State |
|  |  |  |

Schedule C to Security
Agreement dated as of
April 12, 2010 made by
Debtors in favor of Administrative Agent

Names; Changes in Corporate Structure; Trade Names; Tax ID No.; Organizational ID No.

| Legal Name of Debtor | Prior Names of Debtor or its Divisions | Prior Corporate Structure of Debtor | Federal Tax Identification Number | Organizational Identification Number |
|---|---|---|---|---|
| SunPower Corporation | SPR Acquisition Corporation | - | 94-3008969 | 3808702 (Delaware) |
| SunPower Corporation, Systems | PowerLight Corporation | - | 20-8248962 | 4280403 (Delaware) |
| SunPower North America, LLC | SunPower North America, Inc. | Corporation | 20-4600194 | 3991321 (Delaware) |
| | | | | |

Schedule D to Security
Agreement dated as of
April 12, 2010 made by
Debtors in favor of Administrative Agent

Location of Principal Place of
Business and Chief Executive
Office and of Records Concerning
Accounts and General Intangibles; Mailing Address

| Name of Debtor | Principal Place of Business | Chief Executive Office | Location of Records | State of Incorporation/Organization |
|---|---|---|---|---|
| SunPower Corporation | 3939 North First Street San Jose, CA 95134 | 3939 North First Street San Jose, CA 95134 | 3939 North First Street San Jose, CA 95134 | Delaware |
| SunPower Corporation, Systems | 1414 Harbour Way South Richmond, CA 94804 | 1414 Harbour Way South Richmond, CA 94804 | 3939 North First Street San Jose, CA 95134 | Delaware |
| SunPower North America, LLC | 3939 North First Street San Jose, CA 95134 | 3939 North First Street San Jose, CA 95134 | 3939 North First Street San Jose, CA 95134 | Delaware |
| | | | | |

Schedule E to Security
Agreement dated as of
April 12, 2010 made by
Debtors in favor of Administrative Agent

Collateral Description

See Attached.

\*\*\*

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (font and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| OR | 1a. ORGANIZATION'S NAME SUNPOWER CORPORATION | | | |
|---|---|---|---|---|
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 3939 NORTH FIRST STREET | | CITY SAN JOSE | STATE CA | POSTAL CODE 95134 | COUNTRY USA |
| 1d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION DELAWARE | 1g. ORGANIZATION ID#, if any 3808702   ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| OR | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATION ID#, if any   ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE or ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

OR3a. ORGANIZATION'S NAME
DEUTSCHE BANK AG NEW YORK BRANCH, AS ADMINISTRATIVE AGENT

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 225 FRANKLIN STREET, 24TH FLOOR | BOSTON | MA | 02110 | USA |

4. This FINANCING STATEMENT covers the following collateral:
   See Schedule A attached hereto and made a part hereof.

5. ALTERNATIVE DESIGNATION [if applicable]:
LESSEE/LESSOR  CONSIGNEE/CONSIGNOR  BAILEE/BAILOR  SELLER/BUYOR  AG. LIEN  NON-UCC FILING

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors Debtor 1 Debtor 2 |
|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
SOS DELAWARE                (052529-0177) (MEA/PMR/CF) doc. # 811383

**FILING OFFICE COPY –** NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## SCHEDULE A TO UCC FINANCING STATEMENT

DEBTOR:            SUNPOWER CORPORATION

                                  3939 NORTH FIRST STREET

                                  SAN JOSE, CA 95134


SECURED PARTY:       DEUTSCHE BANK AG NEW YORK BRANCH, AS ADMINISTRATIVE AGENT
                                  225 FRANKLIN STREET, 24TH FLOOR
                                  BOSTON, MA 02110

This financing statement covers the following types or items of property, in each case whether now owned or hereafter acquired and whether now existing or hereafter arising and regardless of where located:

All of the Debtor's right, title and interest in and to:

      (A)        (i) all Accounts and Inventory of the Debtor and (ii) Contract Rights, Supporting Obligations, General Intangibles, and Records to the extent relating to or supporting such Accounts or Inventory of the Debtor or any Proceeds or products of either thereof, in each case wheresoever located, and, to the extent not otherwise included, all Proceeds and products of any of the foregoing; provided, however, that receivables in respect of rebates from U.S. Governmental Authorities sold pursuant to the Tech Credit Agreement, shall not constitute collateral hereunder; and

      (B)        (i)     the Collateral Account and all funds, cash, checks, drafts, certificates, instruments, Permitted Investments, financial assets, and other assets deposited or held in or credited to the Collateral Account, and all security entitlements from time to time credited thereto or reflected therein, (ii) all interest, dividends, distributions, cash, instruments and other property received, receivable or otherwise payable or distributed in respect of, or in exchange for, any of the foregoing, (iii) all certificates and instruments representing or evidencing any of the foregoing, and (iv) all proceeds of any of the foregoing.

**Definitions**.

Capitalized terms used herein have the meanings specified below.

"Account" shall have the meaning provided therefor in the New York UCC.

"Administrative Agent" means Deutsche Bank AG New York Branch, in its capacity as administrative agent for the Banks under the LC Facility Agreement.

"Bank" has the meaning given thereto in the LC Facility Agreement.

"Cash Collateral Agreement" means the Cash Collateral Agreement dated April 12, 2010 among the Debtor, the Administrative Agent and the Intermediary, as amended, supplemented or otherwise modified from time to time.

"Collateral Account" means one or more collateral accounts established by the Administrative Agent with the Intermediary, including, without limitation, "SunPower, DB Admin Agent Collat

2

Acct", Account Number S55321.1, (including any and all subaccounts thereof, segregated accounts thereunder and successor, replacement or substitute accounts therefor maintained by the Intermediary for the Agent), pursuant to the Cash Collateral Agreement.

"Contract Rights" shall mean all rights of the Debtor under contracts and agreements (including those giving rise to an Account) to which the Debtor is a party or by which it or its assets are bound, as the same may be amended, supplemented, extended or replaced, including (a) all rights of the Debtor to receive money or other property thereunder or in connection therewith, (b) all rights to damages for default or other violation, and (c) all rights to make waivers, releases, modifications, and amendments thereto and to exercise remedies thereunder.

"Debtor" means SunPower Corporation, a Delaware corporation.

"General Intangible" shall have the meaning provided therefor in the New York UCC and shall include all Payment Intangibles.

"Governmental Authority" means the government of the United States of America, any other nation or any political subdivision of any thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"Intermediary" means Deutsche Bank Trust Company Americas, in its capacity as depositary bank and as securities intermediary.

"Inventory" shall have the meaning provided therefor in the New York UCC.

"Issuing Bank" has the meaning given thereto in the LC Facility Agreement.

"LC Facility Agreement" means the Letter of Credit Facility Agreement, dated as of April 12, 2010 the Debtor, the Subsidiary Guarantors, the Subsidiary Applicants parties thereto from time to time, the Banks parties thereto from time to time, and Deutsche Bank AG New York Branch, as Issuing Bank and as Administrative Agent.

"New York UCC" shall mean the Uniform Commercial Code in effect in the State of New York on April 12, 2010.

"Payment Intangible" shall have the meaning provided therefor in the New York UCC.

"Permitted Investments" shall mean, (i) cash denominated in legal currency of the United States of America, or (ii) investments in money market funds that (a) comply with the criteria set forth in Securities and Exchange Commission Rule 2a-7 under the Investment Company Act of 1940, as amended, (b) are rated not less than AAAm by S&P and Aaa by Moody's, (c) have portfolio assets of at least $5,000,000,000 and (d) invest only in securities or other obligations denominated in legal currency of the United States of America.

"Proceeds" shall have the meaning provided therefor in the New York UCC.

"Record" shall have the meaning provided therefor in the New York UCC.

"Subsidiary Applicant" has the meaning given thereto in the LC Facility Agreement.

3

"Subsidiary Guarantor" has the meaning given thereto in the LC Facility Agreement.

"Supporting Obligation" shall have the meaning provided therefor in the New York UCC.

"Tech Credit Agreement" means that certain Purchase Agreement dated May 15, 2006 (as amended on October 19, 2006, October 13, 2008, and December 29, 2008), by and between the Debtor and Technology Credit Corporation.

*********

4

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (font and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR 1a. ORGANIZATION'S NAME SUNPOWER CORPORATION, SYSTEMS | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 3939 NORTH FIRST STREET | CITY SAN JOSE | | STATE CA | POSTAL CODE 95134 | COUNTRY USA |
| 1d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION DELAWARE | 1g. ORGANIZATION ID#, if any 4280403 NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATION ID#, if any NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE or ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | DEUTSCHE BANK AG NEW YORK BRANCH, AS ADMINISTRATIVE AGENT | | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 225 FRANKLIN STREET, 24TH FLOOR | BOSTON | MA | 02110 | USA |

4. This FINANCING STATEMENT covers the following collateral:
   See Schedule A attached hereto and made a part hereof.

5. ALTERNATIVE DESIGNATION [if applicable]:
LESSEE/LESSOR   CONSIGNEE/CONSIGNOR   BAILEE/BAILOR   SELLER/BUYOR   AG. LIEN   NON-UCC FILING

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum      [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]      [optional] | All Debtors   Debtor 1   Debtor 2 |
|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
SOS DELAWARE      (052529-0177)   (MEA/PMR/CF)   doc. # 811385

**FILING OFFICE COPY** – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## SCHEDULE A TO UCC FINANCING STATEMENT

DEBTOR: SUNPOWER CORPORATION, SYSTEMS
     3939 NORTH FIRST STREET
     SAN JOSE, CA 95134

SECURED PARTY: DEUTSCHE BANK AG NEW YORK BRANCH, AS ADMINISTRATIVE AGENT
     225 FRANKLIN STREET, 24TH FLOOR
     BOSTON, MA 02110

   This financing statement covers the following types or items of property, in each case whether now owned or hereafter acquired and whether now existing or hereafter arising and regardless of whether located:

   All of the Debtor's right, title and interest in and to: (i) all Accounts and Inventory of the Debtor and (ii) Contract Rights, Supporting Obligations, General Intangibles, and Records to the extent relating to or supporting such Accounts or Inventory of the Debtor or any Proceeds or products of either thereof, in each case wheresoever located, and, to the extent not otherwise included, all Proceeds and products of any of the foregoing; provided, however, that receivables in respect of rebates from U.S. Governmental Authorities sold pursuant to the Tech Credit Agreement, shall not constitute collateral hereunder.

## Definitions.

Capitalized terms used herein have the meanings specified below.

   "Account" shall have the meaning provided therefor in the New York UCC.

   "Contract Rights" shall mean all rights of the Debtor under contracts and agreements (including those giving rise to an Account) to which the Debtor is a party or by which it or its assets are bound, as the same may be amended, supplemented, extended or replaced, including (a) all rights of the Debtor to receive money or other property thereunder or in connection therewith, (b) all rights to damages for default or other violation, and (c) all rights to make waivers, releases, modifications, and amendments thereto and to exercise remedies thereunder.

"Debtor" means SunPower Corporation, Systems, a Delaware corporation.

   "General Intangible" shall have the meaning provided therefor in the New York UCC and shall include all Payment Intangibles.

   "Governmental Authority" means the government of the United States of America, any other nation or any political subdivision of any thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

   "Inventory" shall have the meaning provided therefor in the New York UCC.

"New York UCC" shall mean the Uniform Commercial Code in effect in the State of New York on April 12, 2010.

"Payment Intangible" shall have the meaning provided therefor in the New York UCC.

"Proceeds" shall have the meaning provided therefor in the New York UCC.

"Record" shall have the meaning provided therefor in the New York UCC.

"Supporting Obligation" shall have the meaning provided therefor in the New York UCC.

"Tech Credit Agreement" means that certain Purchase Agreement dated May 15, 2006 (as amended on October 19, 2006, October 13, 2008, and December 29, 2008), by and between SunPower Corporation and Technology Credit Corporation.

*********

2

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (font and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| OR | 1a. ORGANIZATION'S NAME<br>SUNPOWER NORTH AMERICA, LLC | | | |
|---|---|---|---|---|
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS<br>3939 NORTH FIRST STREET | | CITY<br>SAN JOSE | STATE CA   POSTAL CODE<br>95134 | COUNTRY<br>USA |
| 1d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION<br>limited liability company | 1f. JURISDICTION OF ORGANIZATION<br>DELAWARE | 1g. ORGANIZATION ID#, if any<br>3991321                   NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| OR | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE   POSTAL CODE | COUNTRY |
| 2d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATION ID#, if any                   NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE or ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

OR 3a. ORGANIZATION'S NAME
DEUTSCHE BANK AG NEW YORK BRANCH, AS ADMINISTRATIVE AGENT

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 225 FRANKLIN STREET, 24TH FLOOR | BOSTON | MA | 02110 | USA |

4. This FINANCING STATEMENT covers the following collateral:
   See Schedule A attached hereto and made a part hereof.

5. ALTERNATIVE DESIGNATION [if applicable]:
LESSEE/LESSOR   CONSIGNEE/CONSIGNOR   BAILEE/BAILOR   SELLER/BUYOR   AG. LIEN   NON-UCC FILING

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum        [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]        [optional] | All Debtors Debtor 1 Debtor 2 |
|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
SOS DELAWARE        (052529-0177)    (MEA/PMR/CF)    doc. # 811384

**FILING OFFICE COPY** – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## SCHEDULE A TO UCC FINANCING STATEMENT

DEBTOR:                 SUNPOWER NORTH AMERICA, LLC
                        3939 NORTH FIRST STREET
                        SAN JOSE, CA 95134


SECURED PARTY:          DEUTSCHE BANK AG NEW YORK BRANCH, AS ADMINISTRATIVE AGENT
                        225 FRANKLIN STREET, 24TH FLOOR
                        BOSTON, MA 02110

This financing statement covers the following types or items of property, in each case whether now owned or hereafte acquired and whether now existing or hereafter arising and regardless of whether located:

All of the Debtor's right, title and interest in and to: (i) all Accounts and Inventory of the Debtor and (ii) Contract Rights Supporting Obligations, General Intangibles, and Records to the extent relating to or supporting such Accounts or Inventory of the Debtor or any Proceeds or products of either thereof, in each case wheresoever located, and, to the extent not otherwise included, al Proceeds and products of any of the foregoing; provided, however, that receivables in respect of rebates from U.S. Governmenta Authorities sold pursuant to the Tech Credit Agreement, shall not constitute collateral hereunder.

**Definitions.**

Capitalized terms used herein have the meanings specified below.

"Account" shall have the meaning provided therefor in the New York UCC.

"Contract Rights" shall mean all rights of the Debtor under contracts and agreements (including those giving rise to an Account) to which the Debtor is a party or by which it or its assets are bound, as the same may be amended, supplemented, extended or replaced, including (a) all rights of the Debtor to receive money or other property thereunder or in connection therewith, (b) all rights to damages for default or other violation, and (c) all rights to make waivers, releases, modifications, and amendments thereto and to exercise remedies thereunder.

"Debtor" means SunPower North America, LLC, a Delaware limited liability company.

"General Intangible" shall have the meaning provided therefor in the New York UCC and shall include all Payment Intangibles.

"Governmental Authority" means the government of the United States of America, any other nation or any political subdivision of any thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"Inventory" shall have the meaning provided therefor in the New York UCC.

"New York UCC" shall mean the Uniform Commercial Code in effect in the State of New York on April 12, 2010.

"Payment Intangible" shall have the meaning provided therefor in the New York UCC.

"Proceeds" shall have the meaning provided therefor in the New York UCC.

"Record" shall have the meaning provided therefor in the New York UCC.

"Supporting Obligation" shall have the meaning provided therefor in the New York UCC.

"Tech Credit Agreement" means that certain Purchase Agreement dated May 15, 2006 (as amended on October 19, 2006, October 13, 2008, and December 29, 2008), by and between SunPower Corporation and Technology Credit Corporation.

*********

2

Schedule F to Security
Agreement dated as of
April 12, 2010 made by
Debtors in favor of Administrative Agent

Location of Inventory

| Name of Debtor | Location of Inventory |
|---|---|
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | 3939 North First Street<br>San Jose, CA 95134 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | CVAR<br>c/o NAL Worldwide Warehouse<br>44400 Osgood Road<br>Fremont, CA 94539 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>c/o McCollister's Transportation<br>45125 Industrial Drive<br>Fremont, CA 94538 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>10672 Jasmine Street<br>Fontana, CA 92337 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>c/o McCollister's Transportation<br>1800 Route 130<br>North Burlington, NJ 08016 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>c/o NAL Worldwide Warehouse<br>6B Fitzgerald Avenue<br>Monroe, NJ 08831 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | McCollister's Transportation Group Inc.<br>4440 E. Elwood Street, Suite 103<br>Phoenix, AZ 85040 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>c/o McCollister's Transportation<br>403 South Airport Boulevard<br>Aurora, CO 80017 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>c/o McCollister's Transportation<br>1320 Progress Industrial Boulevard, Suite 500<br>Lawrenceville, GA 30043 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | DSR Logistics - OAHU<br>94-144 Leoole Street<br>Waipahu, HI 96797 |
| SunPower Corporation<br>SunPower Corporation, Systems | O&M<br>1414 Harbour Way South |

| | |
|---|---|
| SunPower North America, LLC | Richmond, CA 94804 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | 900-1959 Upper Water Street<br>Halifax, CN B3J 2X2 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | AMJ Campbell Van Lines<br>176 Hillmount Road<br>Markham, CN L6C 1Z9 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | VAR<br>580 Division Street<br>Elizabeth, NJ 07201-2003 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | Stagecoach Cartage & Distribution LP<br>7167 Chino Drive<br>El Paso, TX 79915 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | NAL/Stagecoach Cartage & Distribution LP<br>5850 Welch Avenue<br>El Paso, TX 79915 |
| SunPower Corporation<br>SunPower Corporation, Systems<br>SunPower North America, LLC | NAL/Stagecoach Cartage & Distribution LP<br>300 N Revere<br>El Paso, TX 79915 |

2

# EXHIBIT 6

## 2015  FOREIGN PROFIT CORPORATION ANNUAL REPORT

DOCUMENT# F07000000254

**Entity Name:** SUNPOWER CORPORATION, SYSTEMS

**FILED**
**Mar 20, 2015**
**Secretary of State**
**CC7888568734**

**Current Principal Place of Business:**

1414 HARBOUR WAY SOUTH
RICHMOND,  CA  94804

**Current Mailing Address:**

C/O SUNPOWER CORP; ATTN CORP SECRETARY
77 RIO ROBLES
SAN JOSE,  CA  95134  US

**FEI Number:** 20-8248962                                     **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                    Date

**Officer/Director Detail :**

| | | | | |
|---|---|---|---|---|
| Title | PRESIDENT, DIRECTOR | | Title | D |
| Name | WENGER, HOWARD | | Name | BOYNTON, CHARLES D |
| Address | 77 RIO ROBLES | | Address | 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE CA 95134 | | City-State-Zip: | SAN JOSE CA 95134 |
| Title | ASST. SECRETARY | | Title | TREASURER |
| Name | JAAP, CHRISTOPHER | | Name | KETTENMEYER, LAURENT |
| Address | 77 RIO ROBLES | | Address | 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE CA 95134 | | City-State-Zip: | SAN JOSE CA 95134 |
| Title | COO | | Title | ASST. SECRETARY |
| Name | NEESE, MARTY | | Name | ZELKIND, DAVID J |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES | | Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE CA 95134 | | City-State-Zip: | SAN JOSE CA 95134 |
| Title | SECRETARY | | Title | SENIOR VP |
| Name | MAHAFFEY, KENNETH | | Name | BRANDERIZ, ERIC |
| Address | 1414 HARBOUR WAY SOUTH | | Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | RICHMOND CA 94804 | | City-State-Zip: | SAN JOSE CA 95134 |

**Continues on page 2**

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under
oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears
above, or on an attachment with all other like empowered.

SIGNATURE: KENNETH MAHAFFEY                          SECRETARY                  03/20/2015

Electronic Signature of Signing Officer/Director Detail                                            Date

**Officer/Director Detail Continued :**

| | |
|---|---|
| Title | VP |
| Name | OSWALD, TERRY |
| Address | 1414 HARBOUR WAY SOUTH |
| City-State-Zip: | RICHMOND  CA  94804 |

| | |
|---|---|
| Title | VP |
| Name | DEBONO, MARTIN |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | VP |
| Name | RICHARDS, DOUGLAS J. |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | ASST. SECRETARY |
| Name | BODENSTEINER, LISA |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | ASST. SECRETARY |
| Name | KENTOR, BYRON |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | VP |
| Name | KELLY, BILL |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | VP |
| Name | NGUYEN, NAM |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | VP |
| Name | MCILHENNY, DAVID |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | ASST. SECRETARY |
| Name | WIEDMANN, LINDSEY |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

| | |
|---|---|
| Title | ASST. TREASURER |
| Name | CORREA, NAKUL |
| Address | C/O SUNPOWER CORP; ATTN CORP SECRETARY 77 RIO ROBLES |
| City-State-Zip: | SAN JOSE  CA  95134 |

# EXHIBIT 7

Approved OMB NO. 1651-0064
Exp. 03-31-2014

See back of form for Paperwork Reduction Act Notice.

## DEPARTMENT OF HOMELAND SECURITY
## U.S. Customs and Border Protection

### IMPORTER ID INPUT RECORD
19 CFR 24.5

**1. TYPE OF ACTION** *(Mark all applicable)*

☐ Notification of importer's number

☐ Change of name*

☐ Change of address*

☐ Check here if you also want your address updated in the Fines, Penalties, and Forfeitures Office

*NOTE--If a continuous bond is on file, a rider must accompany this change document.

**2. IMPORTER NUMBER** *(Fill in one format):--*

| 2A. I.R.S. Number | 2B. Social Security Number |
|---|---|
| | |

2C. ☐ Check here if requesting a CBP-assigned number and indicate reason(s). *(Check all that apply.)*   ☐ I have no IRS No.   ☐ I have no Social Security No.   ☐ I have not applied for either number.   ☐ I am not a U.S. resident

2D. CBP-Assigned Number

**3. Importer Name**

**4. DIV/AKA/DBA**
☐ DIV  ☐ AKA  ☐ DBA

**5. DIV/AKA/DBA Name**

**6. Type**

☐ Corporation  ☐ Partnership  ☐ Sole Proprietorship  ☐ Individual  ☐ U.S. Government  ☐ State/Local Governments  ☐ Foreign Governments

**7. Importer Mailing Address** *(2 32-character lines maximum)*

| 8. City | 9. State Code | 10. ZIP |
|---|---|---|

**11. Country ISO Code** *(Non-U.S. Only)*

**12. Importer Physical Location Address** *(2 32-character lines maximum, see instructions)*

| 13. City | 14. State Code | 15. ZIP |
|---|---|---|

**16. Country ISO Code** *(Non-U.S. Only)*

**17a.** Has importer ever been assigned a CBP Importer Number using the same name as in Block 3?

☐ No  ☐ Yes *(List number(s) and/or name(s) in Block 17c.)*

**17b.** Has importer ever been assigned a CBP Importer Number using a name different from that in Block 3?

☐ No  ☐ Yes *(List number(s) and/or name(s) in Block 17c.)*

**17c.** If "Yes" to 17a and/or 17b, list number(s) and/or name(s)

| I CERTIFY: That the information presented herein is correct; that if my Social Security Number is used it is because I have no IRS Employer Number, that if my CBP assigned number is used it is because I have neither a Social Security Number nor an IRS Employer Number, that if none of these numbers is used, it is because I have none, and my signature constitutes a request for assignment of a number by CBP. | 18. Printed or Typed Name and Title | 19. Telephone No. Including Area Code |
|---|---|---|
| | 20. Signature  X | 21. Date |

**22. Broker Use Only**

CBP Form 5106 (05/13)

**PAPERWORK REDUCTION ACT STATEMENT:** An agency may not conduct or sponsor an information collection and a person is not required to respond to this information unless it displays a current valid OMB control number and an expiration date. The control number for this collection is 1651-0064. The estimated average time to complete this application is 15 minutes. If you have any comments regarding the burden estimate you can write to U.S. Customs and Border Protection, Office of Regulations and Rulings, 799 9th Street, NW., Washington DC 20229.

**PRIVACY ACT STATEMENT:** Pursuant to the requirements of Public Law 93-579 (Privacy Act of 1974, notice is hereby given that 19 CFR 24.5 authorizes the disclosure of Social Security numbers (SSN) on the CBP Form 5106. The principal purpose for disclosure of the Social Security number is to assure maintenance of records that have a high degree of usefulness in regulatory investigations or proceedings. The information collected may be provided to those officers and employees of the CBP and any constituent unit of the Department of the Homeland Security who have a need for the records in the performance of their duties. The records may be referred to any department or agency of the federal government upon the request of the head of such department or agency. The authority to collect the SSN is 31 CFR 103.25. The SSN will be used to identify the individuals conducting business with the CBP.

**BLOCK 1 - TYPE OF ACTION**
*Notification of Importer's Number - Check this box if you are a first time importer, using an importer number for the first time, or if you have not engaged in CBP business within the last year.*

*Change of Name - Check this box if this importer number is on file but there is a change in the name on file.*

*Change of Address - Check this box if this importer number is on file but there is a change of the address on file.*

**BLOCK 2 - IMPORTER**

2A   *-IRS Number - Complete this block if you are assigned an Internal Revenue Service employer identification number.*

2B   *-Social Security Number - Complete this block if no Internal Revenue Service employer identification number has been assigned. The Social Security number should belong to the principal or owner of the company or the individual who represents the importer of record.*

2C   *-Requesting a CBP Assigned Number - Complete this block if no Internal Revenue Service employer identification number has been assigned, or no Social Security number has been assigned. If this box is checked, all corresponding boxes in 2C must also be marked. PLEASE NOTE. A CBP Assigned Number is for CBP use **only** and does not replace a Social Security number or Internal Revenue Service employer identification number. In general, a CBP Assigned Number will only be issued to foreign businesses or individuals, provided no IRS or Social Security number exists for the applicant. If Block 2C is completed, this form must be submitted in duplicate. CBP will issue an Assigned Number and return a copy of the completed form with the Assigned Number to the requester. This identification number will be used for all future CBP transactions when an importer number is required. If an Internal Revenue Service employer identification number and/or a Social Security number are obtained after an importer number has been assigned by CBP, the importer will continue to use the assigned number unless otherwise instructed.*

2D   *-CBP Assigned Number - Complete this block if you are assigned a CBP Assigned Number but there is an Action change (Block 1).*

**BLOCK 3 - IMPORTER NAME**
If the name is an individual, input the last name first, first name, and middle initial. Business names should be input first name first.

**BLOCK 4 - DIV/AKA/DBA**
Complete this block if an importer is a division of another company (DIV), is also known under another name (AKA), or conducts business under another name (DBA).

**BLOCK 5 - DIV/AKA/DBA NAME**
Complete this block only if Block 4 is used.

**BLOCK 6 - TYPE OF COMPANY**
Check applicable box. *Please Note:* Place an *X* after U.S. Gov't **only** for a U.S. federal government department, agency, bureau or office. All federal agencies are assigned I.R.S. numbers which should be used for any CBP transactions by that agency.

**BLOCK 7 - IMPORTER MAILING ADDRESS**
This block must always be completed. It may or may not be the importer's business address. Insert a post office box number, or a street number representing the first line of the importer's mailing address (up to 32 characters). For a U.S. or Canadian mailing address, additional mailing address information may be inserted (up to 32 characters). If a P.O. box number is given for the mailing address, a second address (physical location) must be provided in Block 12.

**BLOCK 8 - CITY**
Insert the city name of the importees mailing address.

**BLOCK 9 - STATE**
For a U.S. mailing address, insert a valid 2-position alphabetic U.S. state postal code (see list below). For a Canadian mailing address, insert a 2-character alphabetic code representing the province of the importer's mailing address (see list below).

**BLOCK 10 - ZIP CODE**
For a U.S. mailing address, insert a 5 or 9 digit numeric ZIP code as established by the U.S. Postal Service. For a Canadian mailing address, insert a Canadian postal routing code. For a Mexican mailing address, leave blank. For all other foreign mailing addresses, a postal routing code may be inserted.

**BLOCK 11 -COUNTRY ISO CODE**
For a U.S. mailing address, leave blank. For any foreign mailing address, including Canada and Mexico, insert a 2 character alphabetic International Standards Organization (ISO) code representing the country. Please Note: Valid ISO codes may be found in Annex B of the Harmonized Tariff Schedule of the United States; Customs Directive 099 5610-002, "Standard Guidelines for the Input of Names and Addresses into ACS Files"; or CBP Form 7501 Instructions".

**BLOCK 12 - SECOND IMPORTER ADDRESS**
If the importer's place of business is the same as the mailing address, leave blank. If different from the mailing address, insert the importer's business address in this space. A second address representing the importer's place of business is to be provided if the mailing address is a post office box or drawer.

**BLOCK 13 - CITY**
Insert the city name for the importer's business address.

**BLOCK 14 - STATE**
For a U.S. address, insert a 2 character alphabetic U.S. state postal code (see list below). For a Canadian address, insert a 2 character alphabetic code representing the province of the importer's business address (see list below).

**BLOCK 15 - ZIP CODE**
For a U.S. business address, insert a 5 or 9 digit numeric ZIP code as established by the U.S. Postal Service. For a Canadian address, insert a Canadian postal routing code. For a Mexican address, leave blank. For all other foreign addresses, postal routing code may be inserted.

**BLOCK 16 - COUNTRY ISO CODE**
For a U.S. address, leave blank. For any foreign address, including Canada and Mexico, insert a 2 character alphabetic ISO code representing the country.

**BLOCK 17 - PREVIOUSLY ASSIGNED CUSTOMS IMPORTER NUMBER**
Indicate whether or not importer has previously been assigned a CBP Importer Number under the same name or a different name. If "Yes" to either question, list name(s) and/or number(s) in Block 17c.

### OFFICIAL UNITED STATES POSTAL SERVICE TWO-LETTER STATE AND POSSESSION ABBREVIATIONS

| | | | |
|---|---|---|---|
| AL | Alabama | MT | Montana |
| AK | Alaska | NE | Nebraska |
| AZ | Arizona | NV | Nevada |
| AR | Arkansas | NH | New Hampshire |
| AS | American Samoa | NJ | New Jersey |
| CA | California | NM | New Mexico |
| CO | Colorado | NY | New York |
| CT | Connecticut | NC | North Carolina |
| DE | Delaware | ND | North Dakota |
| DC | Distric of Columbia | MP | Northern Mariana Islands |
| FM | Federated States of Micronesia | OH | Ohio |
| FL | Florida | OK | Oklahoma |
| GA | Georgia | OR | Oregon |
| GU | Guam | PW | Palau |
| HI | Hawaii | PA | Pennsylvania |
| ID | Idaho | PR | Puerto Rico |
| IL | Illinios | RI | Rhode Island |
| IN | Indiana | SC | South Carolina |
| IA | Iowa | SD | South Dakota |
| KS | Kansas | TN | Tennessee |
| KY | Kentucky | TX | Texas |
| LA | Louisiana | UT | Utah |
| ME | Maine | VT | Vermont |
| MH | Marshall Islands | VA | Virginia |
| MD | Maryland | VI | Virgin Islands |
| MA | Massachusetts | WA | Washington |
| MI | Michigan | WV | West Virginia |
| MN | Minnesota | WI | Wisconsin |
| MS | Mississippi | WY | Wyoming |
| MO | Missouri | | |

### OFFICIAL TWO-LETTER CANADIAN PROVINCE CODES

| | | | |
|---|---|---|---|
| AB | Alberta | NS | Nova Scotia |
| BC | British Columbia | ON | Ontario |
| MB | Manitoba | PE | Prince Edward Island |
| NB | New Brunswick | QC | Quebec |
| NL | Newfoundland (Incl. Labrador) | SK | Saskatchewan |
| NT | Northwest Territories | YT | Yukon Territory |

# EXHIBIT 8

# CONFIDENTIAL EXHIBIT

# EXHIBIT 9

# CONFIDENTIAL EXHIBIT

# EXHIBIT 10

# CONFIDENTIAL EXHIBIT

# EXHIBIT 11

# CONFIDENTIAL EXHIBIT

# EXHIBIT 12

# CONFIDENTIAL EXHIBIT

# EXHIBIT 13.1

# CONFIDENTIAL EXHIBIT

# EXHIBIT 13.2

# CONFIDENTIAL EXHIBIT

# EXHIBIT 13.3

# CONFIDENTIAL EXHIBIT

# EXHIBIT 14

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

**CBP FORM 7501 INSTRUCTIONS**
(Updated July 24, 2012)

## BLOCK 1) ENTRY NUMBER

Record the 11 digit alphanumeric code.  The entry number is comprised of the three digit filer code, followed by the seven digit entry number, and completed with the one digit check digit.

Entry Filer Code represents the three-character alphanumeric filer code assigned to the filer or importer by CBP.

Entry Number represents the seven-digit number assigned by the filer.  The number may be assigned in any manner convenient, provided that the same number is not assigned to more than one CBP Form 7501.  Leading zeros must be shown.

Check digit is computed on the previous 10 characters.  The formula for calculating the check digit can be found in Appendix 1.

## BLOCK 2) ENTRY TYPE

Record the appropriate entry type code by selecting the two-digit code for the type of entry summary being filed.  The first digit of the code identifies the general category of the entry (i.e., consumption = 0, informal = 1, warehouse = 2).  The second digit further defines the specific processing type within the entry category.  The following codes shall be used:

| | |
|---|---|
| Consumption Entries | |
| Free and Dutiable | 01 |
| Quota/Visa | 02 |
| Antidumping/Countervailing Duty (AD/CVD) | 03 |
| Appraisement | 04 |
| Vessel Repair | 05 |
| Foreign Trade Zone Consumption | 06 |
| Quota/Visa and AD/CVD combinations | 07 |
| Duty Deferral | 08 |
| Informal Entries | |
| Free and Dutiable | 11 |
| Quota Other than textiles | 12 |
| Warehouse Entries | |
| Warehouse | 21 |
| Re-Warehouse | 22 |
| Temporary Importation Bond | 23 |

Trade Fair                                                    24
Permanent Exhibition                                          25
Foreign Trade Zone Admission                                  26
Warehouse Withdrawal
    For Consumption                                           31
    Quota/Visa                                                32
    AD/CVD                                                    34
    Quota/Visa and AD/CVD combinations                        38
Government Entries
    Defense Contract Management Command (DCMAO NY)
    Military Only (P99 filer)                                 51
    Any U.S. Federal Government agency
    (other than DCMAO NY)                                     52
Note: When the importer of record of emergency war
    materials is not a government agency, entry type codes
    01, 02, 03, etc., as appropriate, are to be used.
Transportation Entries
    Immediate Transportation                                  61
    Transportation and Exportation                            62
    Immediate Exportation                                     63

Automated Broker Interface (ABI) processing requires an ABI status indicator. This indicator must be recorded in the entry type code block. It is to be shown for those entry summaries with ABI status only, and must be shown in one of the following formats:

    ABI/S = ABI statement paid by check or cash
    ABI/A = ABI statement paid via Automated Clearinghouse (ACH)
    ABI/P = ABI statement paid on a periodic monthly basis
    ABI/N = ABI summary not paid on a statement

Note: Either a slash (/) or hyphen (-) may be used to separate ABI from the indicator (i.e., ABI/S or ABI-S).

A "LIVE" entry is when the entry summary documentation is filed at the time of entry with estimated duties. Warehouse withdrawals are always considered "LIVE" entries. When a "LIVE" entry/entry summary is presented, an additional indicator is required to be shown in the following formats:

    ABI/A/L = ABI statement paid via ACH for a "live" entry/entry summary
    ABI/N/L = ABI "live" entry/entry summary not paid on a statement
    "LIVE" or "L" = non-ABI "live" entry/entry summary

**BLOCK 3) SUMMARY DATE**

Record the month, day, and year (MM/DD/YYYY) on which the entry summary is filed with CBP. The record copy of the entry summary will be time stamped by the filer at the time of presentation of the entry summary. In the case of entry summaries submitted on an ABI statement, only the statement is required to be time stamped.

This block should not be printed or typed prior to presentation of the entry/entry summary. Use of this field is optional for ABI statement entries. The time stamp will serve as the entry summary date.

The filer will record the proper team number designation in the upper right portion of the form above this block (three-character team number code). For ABI entry summaries, the team number is supplied by CBP's automated system in the summary processing output message.

**BLOCK 4) SURETY NO.**

Record the three digit numeric code that identifies the surety company on the Customs Bond. This code can be found in block 7 of the CBP Form 301, or is available through CBP's automated system to ABI filers, via the importer bond query transaction. For U.S. Government importations and entry types not requiring surety, code 999 should appear in this block. When cash or Government securities are used in lieu of surety, use code 998.

**BLOCK 5) BOND TYPE**

Record the single digit numeric code as follows:

> 0 - U.S. Government or entry types not requiring a bond
> 8 - Continuous
> 9 - Single Transaction

Bond type "0" should be used in conjunction with surety code "999" for government entries secured by stipulation as provided for in 19 C.F.R. § 10.101(d).

Bond type "8" or "9," as appropriate, should be used in conjunction with surety code "998" when cash or government securities are deposited in lieu of surety.

Bond type "9" should be used in conjunction with surety code "999" when surety has been waived in accordance with 19 C.F.R. § 142.4 (c). A single entry bond should be attached to the entry summary package.

## BLOCK 6) PORT CODE

Record the U.S. port code utilizing the Schedule D, Customs District and Port Codes, listed in Annex C of the Harmonized Tariff Schedule (HTS). The port is where the merchandise was entered under an entry or released under an immediate delivery permit. Use the following format: DDPP (no spaces or hyphens).

## BLOCK 7) ENTRY DATE

Record the month, day, and year (MM/DD/YYYY) on which the goods are released, except for immediate delivery, quota goods, or where the filer requests another date prior to release (see 19 C.F.R. § 141.68). It is the responsibility of the filer to ensure that the entry date shown for entry/entry summaries is the date of presentation (i.e., the time stamp date). The entry date for a warehouse withdrawal is the date of withdrawal.

## BLOCK 8) IMPORTING CARRIER

For merchandise arriving in the U.S. by vessel, record the name of the vessel that transported the merchandise from the foreign port of lading to the first U.S. port of unlading. Do not record the vessel identifier code in lieu of the vessel name. Pursuant to General Statistical Note 1 (a) (ii) of the HTS, the reporting of the vessel flag is not required. For merchandise arriving in the U.S. by air, record the two digit IATA alpha code corresponding to the name of the airline which transported the merchandise from the last airport of foreign lading to the first U.S. airport of unlading.

If the carrier file does not contain a specific air carrier's code, write the designation "*C" for Canadian airlines, "*F" for other foreign airlines, and "*U" for U.S. airlines.

These designations should be used only for unknown charter and private aircraft. When a private aircraft is being entered under its own power (ferried), the designation "**" will be used.

For merchandise arriving in the U.S. by means of transportation other than vessel or air, leave blank.

Do not record the name of a domestic carrier transporting merchandise after initial lading in the U.S.

For merchandise arriving in the customs territory from a U.S. Foreign Trade Zone (FTZ), insert "FTZ" followed by the FTZ number. Use the following format: FTZ NNNN

## BLOCK 9) MODE OF TRANSPORT

Record the mode of transportation by which the imported merchandise entered the U.S. port of arrival from the last foreign country utilizing the following two digit numeric codes:

10 - Vessel, non-container (including all cargo at first U.S. port of unlading aboard a vessel regardless of later disposition; lightered, land bridge and LASH all included). If container status unknown, but goods did arrive by vessel, use this code.

11 - Vessel, container

12 - Border, Waterborne (used in cases where vessels are used exclusively to ferry automobiles, trucks, and/or rail cars, carrying passengers and baggage and/or cargo and merchandise, between the U.S. and a contiguous country).

20 - Rail, non-container

21 - Rail, container

30 - Truck, non-container

31 - Truck, container

32 - Auto

33 - Pedestrian

34 - Road, other

40 - Air, non-container

41 - Air, container

50 - Mail

60 - Passenger, hand-carried

70 - Fixed transport installation (includes pipelines, powerhouse, etc.)

For merchandise arriving in the customs territory from a U.S. FTZ, leave blank.

## BLOCK 10) COUNTRY OF ORIGIN

Record the country of origin utilizing the International Organization for Standardization (ISO) country code located in Annex B of the HTS.

The country of origin is the country of manufacture, production, or growth of any article. If the article consists of material produced, derived from, or processed in more than one foreign territory or country, or insular possession of the U.S., it shall be considered a product of that foreign territory or country, or insular possession, where it last underwent a substantial transformation. For reporting purposes only on the CBP Form 7501, whenever merchandise has been returned to the U.S. after undergoing repair, alteration, or assembly under HTS heading 9802, the country of origin should be shown as the country in which the repair, alteration, or assembly was performed.

When merchandise is invoiced in or exported from a country other than that in which it originated, the actual country of origin shall be specified rather than the country of invoice or exportation.

When an entry summary covers merchandise from more than one country of origin, record the word "MULTI" in this block. In column 27, directly below the line number, prefixed with the letter "O," indicate the ISO code corresponding to each line item.

Page 5

Where line items are segregated by invoice, indicate the ISO code corresponding to each invoice.

- **<u>Special Note for Goods of Canadian Origin</u>**

The ISO country code "CA" for Canada for goods of Canadian Origin will no longer be reported as a country of origin. As of May 15, 1997, the <u>Canadian Province codes</u> will replace the code "CA".

The following conditions in which the "CA" is acceptable, in addition to the Province Codes:

1. Withdrawals of goods from warehouses for consumption.

2. Entries of goods from Foreign Trade Zones into the Commerce of the U.S.

3. Informal entries.

4. Imports of Canadian origin arriving from countries other than Canada.

5. Cargo selectivity entries not certified from entry summary, i.e. full cargo selectivity entries provided with entry data only or border cargo selectivity entries.

6. Data elements intended specifically for other government agencies, e.g. FDA , DOT, and EPA which only allow "CA" to be used as the origin code.

Additional information related to reporting the correct ISO country code for goods of Canadian Origin can be found in CSMS#<u>97-000267</u> and <u>02-000071</u> .

**BLOCK 11) IMPORT DATE**

For merchandise arriving in the U.S. by vessel, record the month, day, and year (MM/DD/YYYY) on which the importing vessel transporting the merchandise from the foreign country arrived within the limits of the U.S. port with the intent to unlade.

For merchandise arriving in the U.S. other than by vessel, record the month, day, and year (MM/DD/YYYY) in which the merchandise arrived within the U.S. port limits.

For merchandise entering the customs territory for consumption from a U.S. FTZ, in compliance with 19 C.F.R. § 146.63, if the import date is not the date of removal from the zone, leave blank.

For merchandise moving from a U.S. FTZ to a bonded warehouse in the customs territory, in compliance with 19 C.F.R. § 146.64, report the month, day, and year (MM/DD/YYYY) of importation.

## BLOCK 12) BILL OF LADING (B/L) OR AIR WAYBILL (AWB) NUMBER

Record the number assigned on the manifest by the international carrier delivering the goods to the U.S.

Each B/L number for vessel or rail shipments must conform to a unique format comprised of 2 elements. The first element comprises the first four characters of the unique bill number, and is the Standard Carrier Alpha Code (SCAC) of the bill's issuer. The second element may be any length up to a maximum 12 characters and may be alpha and/or numeric.  Use the following format: ABCD1234567

If multiple bills are associated with an entry summary, list additional B/L or AWB numbers across the top of column 28 or on a separate attachment.

## BLOCK 13) MANUFACTURER ID (MID)

This block is provided to accommodate the manufacturer/shipper identification code. This code identifies the manufacture/shipper of the merchandise by a constructed code. The method for deriving the code can be found in Appendix 2.  For the purposes of this code, the manufacturer should be construed to refer to the invoicing party or parties (manufacturers or other direct suppliers).  The name and address of the invoicing party, whose invoice accompanies the CBP entry, should be used to construct the MID.  The manufacturer/shipper identification code is required for all entry summaries and entry/entry summaries, including informal entries, filed on the CBP Form 7501.

For textile shipments, the manufacturer should be construed to refer to the actual manufacturer in accordance with 19 CFR 102.23(a) and the Appendix to 19 CFR Part 102 – Textile and Apparel Manufacturer Identification.

Non-textile shipments may use the invoicing party or parties (manufacturers or other direct suppliers).

When an entry summary covers merchandise from more than one manufacturer, record the word "MULTI" in this block.  In column 28, indicate the MID Code corresponding to each line item. If there is more than one vendor for a particular HTS number, separate line items will be required for each MID.

## BLOCK 14) EXPORTING COUNTRY

Record the exporting country utilizing the ISO country code located in Annex B of the HTS.

The country of exportation is the country of which the merchandise was last part of the commerce and from which the merchandise was shipped to the U.S. without contingency of diversion.

When an entry summary covers merchandise from more than one country of export, record the word "MULTI" in this block.  In column 27, directly below the line number, prefixed with the letter "E," indicate the ISO code corresponding to each line item. Where line items are segregated by invoice, indicate the ISO code corresponding to each invoice.

For merchandise entering the customs territory from a U.S. FTZ, if multiple countries of export are involved, indicate the country of export with the greatest value.  In the case where the merchandise is U.S. goods returned and the filer opts to pay the duty and report only the Chapter 1 - 97 HTS number, report the country of invoice or exportation. Country of export U.S. will not be acceptable when country of origin is U.S.

## BLOCK 15) EXPORT DATE

For merchandise exported by vessel, record the month, day, and year (MM/DD/YYYY), on which the carrier departed the last port in the exporting country.

For merchandise exported by air, record the month, day, and year (MM/DD/YYYY), on which the aircraft departed the last airport in the exporting country.

For overland shipments from Canada or Mexico and shipments where the port of lading is located outside the exporting country (e.g., goods are exported from Switzerland but laden and shipped from Hamburg, Germany), record the month, day, and year (MM/DD/YYYY), that the goods crossed the border of the exporting country (Switzerland in this example).

For mail shipments, record the month, day, and year (MM/DD/YYYY) of export as noted on the Notice to Addressee, CBP Form 3509.

For goods entering the customs territory from a U.S. FTZ, leave blank.

When an entry summary covers merchandise with more than one date of export, record the word "MULTI" in this block.  In column 27, directly below the line number, indicate the date corresponding to each line item. Where line items are segregated by invoice, indicate the date corresponding to each invoice.

For textile merchandise, refer to additional requirements listed under VISA NUMBER/CERTIFICATE OF ELIGIBILITY/EXPORT CERTIFICATE in Column 33(d) instructions.

## BLOCK 16) IMMEDIATE TRANSPORTATION (IT) NUMBER

Record the IT number obtained from the CBP Form 7512, AWB number from the Transit Air Cargo Manifest (TACM), or Automated Manifest System (AMS) master in-bond (MIB) movement number.

When an entry summary covers merchandise with more than one IT, place additional IT numbers and associated IT dates across the top of column 28 or on a separate attachment.

If merchandise moves on an IT into a U.S. FTZ, the IT number need not be recorded on the CBP Form 7501 when the merchandise is removed from the zone.

## BLOCK 17) IT DATE

Record the month, day, and year (MM/DD/YYYY), obtained from the CBP Form 7512, TACM, or AMS MIB record.

When an entry summary covers merchandise with more than one IT, place additional IT numbers and associated IT dates across the top of column 28 or on a separate attachment.

Note: IT date cannot be prior to import date.

## BLOCK 18) MISSING DOCUMENTS

Record the appropriate document code number(s) to indicate documents not available at the time of filing the entry summary.  A maximum of two codes may be used.  The bond charge should be made on the entry summary only for those documents required to be filed with the entry summary.

The following codes shall be used:

> 01 - Commercial Invoice
> 10 - CBP FORM 5523 (19 C.F.R. § 141.89) (Optional for footwear)
> 16 - Corrected Commercial Invoice (19 C.F.R. § 141.89, et al)
> 17 - Other Agency Form (19 C.F.R. § Part 12)
> 19 - Scale weight
> 21 - Coffee Form O
> 22 - Chemical Analysis
> 23 - Outturn Report
> 26 - Packing List (19 C.F.R. § 141.86(e))
> 98 - Not Specified Above

99- If three or more documents are missing, record the code number for the first document and insert code "99" to indicate more than one additional document is missing.

If a document has been waived prior to entry summary filing or is not required at time of entry summary, it should not be recorded as a missing document.

Be aware that the following forms cannot be waived and filers shall be obligated to file the forms within the appropriate time limits:

14 – Lease Statements (19 C.F.R. § 10.108)
15 – Re Melting Certificate (19 C.F.R. § 54.6(a))
18 – Duty Free Entry Certificate (19 C.F.R. § 10.102; 9808.00.3000)
20 – End Use Certificate (19 C.F.R. § 10.138)

## BLOCK 19) FOREIGN PORT OF LADING

For merchandise arriving in the U.S. by vessel, record the five digit numeric code listed in the "Schedule K" (Classification of Foreign Ports by Geographic Trade Area and Country) for the foreign port at which the merchandise was actually laden on the vessel that carried the merchandise to the U.S.  The "Schedule K" may be retrieved at: http://www.iwr.usace.army.mil/ndc/wcsc/scheduleK/schedulek.htm

If the actual port name is not provided, use the code for "all other ports" for the country in which the merchandise was laden on the vessel that carried the merchandise to the U.S.

When an entry summary covers merchandise with more than one foreign port of lading, record the word "MULTI" in this block.  In column 27, directly below the line number, indicate the code corresponding to each line item.  When line items are segregated by invoice, indicate the code corresponding to each invoice.

When merchandise is transported by a mode of transportation other than vessel, leave blank.

For merchandise entering the customs territory from a U.S. FTZ, leave blank.

## BLOCK 20) U.S. PORT OF UNLADING

Record the U.S. port code where the merchandise was unladen from the importing vessel, aircraft or train.  Do not show the name of the port instead of the numeric code.

For merchandise arriving in the U.S. by means of transportation other than vessel, rail or air, leave blank.

For merchandise arriving in the customs territory from a U.S. FTZ, leave blank.

## BLOCK 21) LOCATION OF GOODS/General Order (GO) Number

Where the entry summary serves as entry/entry summary, record the pier or site where the goods are available for examination.  For air shipments, record the flight number. Where the Facilities Information and Resources Management (FIRMS) codes are available, they must be used in lieu of pier/site.

Where the entry summary is used for merchandise that has been placed in GO, record the number assigned by CBP in the following format: G.O. NNNNNNNNNNNN

Where the entry summary is used for merchandise placed in a bonded warehouse, record the name and the FIRMS code of the bonded warehouse where the goods will be delivered.

## BLOCK 22) CONSIGNEE NUMBER

Record the Internal Revenue Service (IRS) Employee Identification Number (EIN), Social Security Number (SSN), or CBP assigned number of the consignee.  This number must reflect a valid identification number filed with CBP via the CBP Form 5106 or its electronic equivalent. When the consignee number is the same as the importer of record number, the word "SAME" may be used in lieu of repeating the importer of record number.

Only the following formats shall be used:

> IRS EIN NN-NNNNNNN
> IRS EIN with suffix NN-NNNNNNNXX
> SSN NNN-NN-NNNN
> CBP assigned number YYDDPP-NNNNN

For consolidated shipments, enter zeros in this block in the IRS EIN format shown above (i.e., 00-0000000).  The reporting of zeros on the entry summary is limited to consolidated shipments and consolidated entry summaries.

## BLOCK 23) IMPORTER NUMBER

Record the IRS EIN, SSN, or CBP assigned number of the importer of record.  Proper format is listed under the instructions for Consignee Number.

## BLOCK 24) REFERENCE NUMBER

Record the IRS EIN, SSN, or CBP assigned number of the individual or firm to whom refunds, bills, or notices of extension or suspension of liquidation are to be sent (if other

than the importer of record and only when a CBP Form 4811 is on file). Proper format is listed under the instructions for Consignee Number. Do not use this block to record any other information.

## BLOCK 25) ULTIMATE CONSIGNEE NAME AND ADDRESS

At the time of Entry Summary, record the name and address of the individual or firm purchasing the merchandise or, if a consigned shipment, to whom the merchandise is consigned. If those parties are not known, indicate to whose premises the merchandise is being shipped. If this information is the same as the importer of record, leave blank.

Note: For express consignment shipments and land border shipments, at the time of Entry Summary, record the name and address of the individual or firm for whose account the merchandise is shipped. The account of party is the actual owner, who is holder of title to the goods.

In the space provided for indicating the state, report the ultimate state of destination of the imported merchandise, as known at the time of entry summary filing. If the contents of the shipment are destined to more than one state or if the entry summary represents a consolidated shipment, report the state of destination with the greatest aggregate value. If in either case, this information is unknown, the state of the ultimate consignee, or the state where the entry is filed, in that order, should be reported. However, before either of these alternatives is used, a good faith effort should be made by the entry filer to ascertain the state where the imported merchandise will be delivered. In all cases, the state code reported should be derived from the standard postal two-letter state or territory abbreviation.

On a warehouse withdrawal, the original warehouse entry number should be recorded at the bottom of this block.

## BLOCK 26) IMPORTER OF RECORD NAME AND ADDRESS

Record the name and address, including the standard postal two-letter state or territory abbreviation, of the importer of record. The importer of record is defined as the owner or purchaser of the goods, or when designated by the owner, purchaser, or consignee, a licensed customs broker. The importer of record is the individual or firm liable for payment of all duties and meeting all statutory and regulatory requirements incurred as a result of importation, as described in 19 C.F.R. § 141.1(b). The importer of record shown on the invoice should be the same party on the CBP Form 7501, unless the CBP form reflects a licensed customs broker.

**COLUMN 27) LINE NUMBER**

Record the appropriate line number, in sequence, beginning with the number 001.

A "line number" refers to a commodity from one country, covered by a line which includes a net quantity, entered value, HTS number, charges, rate of duty and tax. However, some line numbers may actually include more than one HTS number and value. For example, many items in Chapter 98 of the HTS require a dual HTS number. Articles assembled abroad with U.S. components require the HTS number 9802.00.80 along with the appropriate reporting number of the provision in Chapters 1 through 97.

Also, many items in Chapter 91 of the HTS require as many as four HTS numbers. Watches classifiable under subheading 9101.11.40, for example, require that the appropriate reporting number and duty rate be shown separately for the movement, case, strap, band or bracelet, and battery. A separate line item is also required for each commodity that is the subject of a Customs binding ruling. Proper format is listed under the instructions for HTS number.

Where a reporting number is preceded by an alpha character designating a special program (i.e., NAFTA = "CA" or "MX"; GSP = "A"), that indicator is to be placed in column 27, directly below the line number. The special program indicator (SPI) should be right justified on the same line and immediately preceding the HTS number to which it applies. If more than one HTS number is required for a line item, place the SPI on the same line as the HTS number upon which the rate of duty is based. If more than one SPI is used, the primary indicator that establishes the rate of duty is shown first, followed by a period and the secondary SPI immediately following.

If "MULTI" was recorded in block(s) 10, 14, 15, and/or 19, the appropriate codes or dates are to be shown in column 27 below the SPI. See specific instructions for those items with multiple elements.

**COLUMN 28) DESCRIPTION OF MERCHANDISE**

A description of the articles in sufficient detail to permit the classification thereof under the proper statistical reporting number in the HTS should be reported at the top of column 28. The standard definitions from the CBP HTS database are acceptable for this requirement.

For a warehouse withdrawal, all copies of the CBP Form 7501 must be clearly marked "WAREHOUSE WITHDRAWAL FOR CONSUMPTION" at the top of column 28, followed by the words "FINAL WITHDRAWAL" if applicable. Next will be the "Bonded Amount" (quantity in the warehouse account before the withdrawal), "Withdrawal" (quantity being withdrawn), and "Balance" (quantity remaining in warehouse after withdrawal), as required in 19 C.F.R. § 144.32(a).

Transfer of the right to withdraw the merchandise included on the CBP Form 7501 will be established by including the name, and hand-written or facsimile signature of the person primarily liable for payment of duties before the transfer is completed. This endorsement should be shown after the "Balance" in column 28. When there is deferred tax paid by electronic funds transfer (EFT), the following statement is required in this section:

> Electronic Funds Transfer (EFT)
> Tax Payment Deferred
> XXX Distillers, Inc.
> IRN: XX-XXXXXXX-XX
> ALC: ########
> EFT Payment Date: month/day

If the deferred tax will not be paid by EFT, the words "DEFERRED TAX" should show after the words "WAREHOUSE WITHDRAWAL FOR CONSUMPTION" at the top of this block.

## COLUMN 29)

Do not record the column heading letters, only the required data in the proper format.

## A.  HTS NUMBER

Record the appropriate full 10-digit HTS item number. This item number should be left justified. Decimals are to be used in the 10-digit number exactly as they appear in the HTS. Use the following format: 4012.11.4000

If more than one HTS number is required, follow the reporting instructions in the statistical head note in the appropriate HTS section or chapter.

Where an SPI is required for an HTS number, see Column 27 instructions.

For each item covered by a binding tariff classification ruling, report the ruling number (provided in the applicable ruling letter) directly below the HTS number of the appropriate line item. Precede the ruling number with the abbreviation "RLNG." For an item classified under the same tariff classification number but not specifically covered by the binding tariff classification ruling, provide a separate line item breakout for that item.

For those line items that require the reporting of more than one data element (i.e. category number and/or manufacturer identification number) in this same area, the hierarchy should be as follows:

> Category Number
> Manufacturer Identification Number

Page 14

Ruling Number

The correct format for reporting a ruling number or pre-approval indicator are listed below, respectively:

RLNG 654321
INDCTR 356780

For sets, which are classifiable in accordance with GRI 3(b) or 3(c) of the HTS, report in column 30 the HTS number from which the rate of duty for the set is derived. Precede this number with an SPI of "X."  Report with that part of the set so classified the total value, quantity and charges associated with the set, as well as all applicable duties, taxes, and fees, in the appropriate columns.  In addition, each article in the set (including the article designated with a prefix of "X") should be reported on a separate line as if it were separately classified.  Precede these HTS numbers with an SPI of "V." Report the quantity and value attributed to each article associated with the "V" SPI.

All other reporting requirements including, but not limited to, quota, visa, licensing, and other government agency requirements, should be reported along with the appropriate HTS number preceded with an SPI of "V." Both the "X" and "V" should be right justified in column 27, immediately preceding, and on the same line as the HTS number to which it applies.

## B.  AD/CVD CASE NUMBER

Directly below the HTS number, indicate the appropriate AD/CVD case number(s), as assigned by the Department of Commerce, International Trade Administration.  The following format shall be used:

A000-000-000 -or- A-000-000-000 (AD)
C000-000-000 -or- C-000-000-000 (CV)

Case numbers with a suffix of 000 (ex. A-000-000-000) should only be used when the manufacturer and/or exporter falls under the "All Other" or country wide provisions of the AD/CVD case.

The application of case numbers should follow this hierarchy under the following circumstances:

1.  The exporter has its own rate, use the case assigned to the exporter;
2.  The exporter does not have its own case, use the case assigned to the manufacturer/producer; OR the case assigned to the exporter/manufacturer combination; or
3.   Neither the exporter nor the manufacturer/producer nor the exporter/manufacturer combination has its own case, use the "all others" case with a suffix of 000.

Page 15

When bonding is permitted and used, record the phrase "Surety Code" and the surety number [e.g., (Surety Code #123)]. If cash or government securities are deposited in lieu of surety, record "Surety Code #998."

## C.  CATEGORY NUMBER

Directly below the HTS number record the textile category for each separate line, as applicable.  Use the following format: CAT NNN

## D.  OTHER FEES

Directly below the pertinent line information, on the same line as the applicable rate in column 33, identify any other fee, charge or exaction that applies.  Examples include the beef fee, honey fee, pork fee, cotton fee, harbor maintenance fee (HMF), sugar fee, and merchandise processing fee (MPF).  All fees, with the exception of the HMF, are to be reported at the line item level. The HMF may be shown either at the line item level or once at the bottom of column 29 on the first page of the summary.

## COLUMN 30)

Do not record the column heading letters, only the required data in the proper format.

## A.  GROSS WEIGHT

Report gross shipping weight in kilograms for merchandise imported by ALL modes of transportation.  The gross weight must be reported on the same line as the entered value.

In cases where more than one value is shown on a line item, record the gross weight on the same line as the first tariff number for the line item.  Gross weight information must be provided for each line item.  If the gross weight is not available for each line item, the approximate shipping weight shall be estimated and reported.  The total of the estimated weights should equal the actual gross shipping weight.  For multi-line summaries, the grand total gross weight need not be shown.

In the case of containerized cargo carried in lift vans, cargo vans, or similar substantial outer containers, the weight of such container should not be included in the gross weight of the merchandise.

## B. MANIFEST QUANTITY

Where the entry summary serves as entry/entry summary, indicate the manifest quantity reported on the B/L or AWB.
If multiple bills are associated with an entry/entry summary, indicate the manifest quantity reported on the B/L or AWB with the appropriate B/L or AWB number listed across the top of column 28.

## COLUMN 31) NET QUANTITY IN HTS UNITS

When a unit of measure is specified in the HTS for an HTS number, report the net quantity in the specified unit of measure, and show the unit of measure after the net quantity figure.  Record quantities in whole numbers for statistical purposes unless fractions of units are required for other CBP purposes.  Fractions must be expressed as decimals.

When an "X" appears in the column for units of quantity, no quantity is to be reported in column 31. (Gross weight must still be reported in Column 30.)

When two units of measure are shown for the same article, report the net quantity for both in the specified unit of measure.  The value of the article is to be reported with the first unit of measure unless a "V" follows the second which indicates the value of the article is to be reported with that unit of measure.

Example: Shipment consists of 50 dozen t-shirts, weighing 1 kg per dozen and valued at $10 per dozen.  Report as follows:

```
***************************************************************************
COLUMN 29              COLUMN 31              COLUMN 32
***************************************************************************
6205.20.2065           50 doz.                500
                       50 kgs.
***************************************************************************
```

## COLUMN 32)

Do not record the column heading letters, only the required data in the proper format.

## A. ENTERED VALUE

Record the U.S. dollar value as defined in 19 U.S.C. § 1401a for all merchandise.

Record the value for each line item on the same line as the HTS number.

If the value required for assessment of AD/CVD is different from the entered value, record in parentheses the amount in this column, on the same line as the AD/CVD case

number and rate.  If the reported value is not the transaction value it should later be reported under a Reconciliation Entry (Type 09), if approved for reconciliation, or other alternate means.

Report the value in whole dollars rounded off to the nearest whole dollar (if the total entered value for a line item is less than 50 cents report as "0"). Dollar signs are omitted.

Report the total entered value for all line items in block 35.

## B.  CHARGES (CHGS)

Record the aggregate cost in U.S. dollars of freight, insurance and all other charges, costs and expenses incurred while bringing the merchandise from alongside the carrier at the port of exportation in the country of exportation and placing it alongside the carrier at the first U.S. port of entry. Do not include U.S. import duties. In the case of overland shipments originating in Canada or Mexico, such costs shall include freight, insurance, and all other charges, costs and expenses incurred in bringing the merchandise from the point of origin (where the merchandise begins its journey to the United States) in Canada or Mexico to the first U.S. port of entry.

This value shall be shown in whole numbers for each HTS number. It is to be placed beneath the entered value and identified with the letter 'C' (e.g., C550). Dollar signs are omitted.

Charges are not required to be reported for merchandise entered by mode of transportation code 60 (passenger, hand-carried)."

## C.  RELATIONSHIP

Record whether the transaction was between related parties, as defined in 19 C.F.R. § 152.102(g), by placing a "Y" in the column for related and an "N" for not related (the words "related" and "not related" may be used in lieu of "Y" or "N").  "Y" or "N" may be recorded once, at the top of column 32, when applicable to the entire entry summary or may be recorded with each line item below entered value and charges.  "Y" or "N" must be recorded with each line item when the relationship differs for line items.

## COLUMN 33)

Do not record the column heading letters, only the required data in the proper format.

## A.  HTS RATE

Record the rate(s) of duty for the classified item as designated in the HTS: free, ad valorem, specific, or compound.

COLUMN 29          COLUMN 33
6201.19.1010       Free

6201.19.9060       2.8%

## B.  AD/CVD RATE

Record the AD/CVD rate(s) as designated by the Department of Commerce, International Trade Administration, directly opposite the respective AD/CVD case number(s) shown in column 29.

## C.  I.R.C. RATE

Record the tax rate(s) for the classified item as designated in the HTS, or record the CBP approved metric conversion tax rate.

If I.R. tax is deferred, precede I.R.C. rate with "DEF."  Show the amount in column 34 and in block 38 but do not include in the "Total" in block 40.

Deferred I.R. tax under 26 U.S.C. § 5232(a) should be identified as "IRS DEF 5232(a)," at the bottom of columns 33 and 34 on the first page of the CBP Form 7501.  The deferred I.R. tax amount should not be shown in column 34, block 38, or block 40.

## D.  VISA NUMBER/CERTIFICATE OF ELIGIBILITY/EXPORT CERTIFICATE

Record the letter "V" or "C" followed by the visa/certificate number associated with each line.  Visa/certificate numbers are generally nine alphanumeric characters in length.  The first character is numeric, the second and third character is alphabetic, and the fourth through the ninth character varies, depending on the trade agreement.

The first position of the visa/certificate represents either the year of export, the year for which the certificate is in effect (e.g. date of presentation), or a grouping such as those required for African Growth and Opportunity Act (AGOA) claims.  The second and third positions represent the ISO country of origin code.  The fourth through the ninth positions represent a unique number issued by the foreign government.

For specific information pertaining to formatting, refer to the Quota Book Transmittals (QBT) that are issued at the beginning of each quota period or to Textile Book Transmittals (TBT).  The TBT is issued when new trade legislation or free trade agreements are implemented.  These references can be found at http://www.cbp.gov/xp/cgov/import/textiles_and_quotas/

If merchandise is covered by more than one visa/certificate, then separate line items must be shown for each visa/certificate number.  All visa numbers and those certificates

required to be eligible for a reduced rate of duty associated with a tariff rate quota must be recorded in column 33. The above instructions do not apply to agriculture licenses issued by the U.S. Department of Agriculture.

When the country of origin differs from the country of export and the visa/certificate is issued based on the date of export, or the quota is based on the date of export, report the date of export from the country of origin in column 33. The date of exportation from the exporting country will continue to be reported in block 15.

## E. AGRICULTURE LICENSE NUMBER

For merchandise subject to agriculture licensing, report the license number in column 33 directly below the tariff rate for that line item.

The license number will be in a ten-character format, including hyphens and spaces. The two acceptable formats are as follows:

    (1) N-AA-NNN-N   or   (2) N-AB-NNN-N
       (1-cc-234-5)          (1-c -234-5)

The letters N and A represent numeric and alpha characters respectively. The letter B represents a blank space. For format 1, the first position is the license type. The third and fourth positions are the commodity type code. Positions six through eight represent the license serial number. The tenth position is the license year. Positions two, five and nine are hyphens. Format 2 is identical to the above except position four is blank.

## BLOCK 34) DUTY AND I.R. TAX

Record the estimated duty, AD/CVD, I.R. tax, and any other fees or charges calculated by applying the rate times the dutiable value or quantity. The amount shown in this column must be directly opposite the appropriate HTS rate(s), AD/CVD rate, I.R. rate and other fees or charges. This includes those instances where bonding is permitted for AD/CVD. Where bonding is accomplished, enclose the AD/CVD amounts in parentheses. Where I.R. tax is deferred under 26 U.S.C. § 5232(a), leave blank. (See instructions for column 33.) Dollar signs are omitted.

## OTHER FEE SUMMARY FOR BLOCK 39

For entries subject to payment of AD/CVD and/or any of the various fees, each applicable fee must be indicated in this area, and the individual amount of each fee must be shown on the corresponding line. AD/CVD amounts are to be included in the summary only when they are actually deposited. Bonded amounts should not be included. The Block 39 Summary must be on the first page if the entry summary consists of more than one page.

The applicable collection code must be indicated on the same line as the fee or other charge or exaction.  Report the fees in the format below:

| | |
|---|---|
| AD | 012 |
| CVD | 013 |
| Tea Fee | 038 |
| Misc. Interest | 044 |
| Beef Fee | 053 |
| Pork Fee | 054 |
| Honey Fee | 055 |
| Cotton Fee | 056 |
| Pecan Fee | 057 |
| Sugar Fee | 079 |
| Potato Fee | 090 |
| Mushroom Fee | 103 |
| Watermelon | 104 |
| Blueberry Fee | 106 |
| Avocado | 107 |
| Mango | 108 |
| Informal Entry MPF | 311 |
| Dutiable Mail Fee | 496 |
| Merchandise Processing Fee (MPF) | 499 |
| Manual Surcharge | 500 |
| Harbor Maintenance Fee (HMF) | 501 |

There is no de minimis collection for the MPF.  There is an established minimum and maximum due on each formal entry, release or withdrawal from warehouse for consumption.  Report the actual MPF due unless the perspective amount due is less than the established minimum (record the minimum), or exceeds the established maximum (record the maximum).

There is a de minimis on the HMF if it is the only payment due on the entry summary.  If such is the case, HMF of $3 or less will not be collected.  The grand total user fee in this block should be reported as the total fee amount of all line items, but the amount in block 39 should be reported as $0.

Goods originating under a Free Trade Agreement (FTA) may be exempt from MPF. To obtain this exemption, the importer must indicate the appropriate SPI for each HTS number in Column 27.

**BLOCK 35) TOTAL ENTERED VALUE**

Report the total entered value for all line items.  This information is required on all entry summaries.

**BLOCK 36) DECLARATION OF IMPORTER OF RECORD OR AUTHORIZED AGENT**

Select the appropriate boxes as it relates to your circumstances as an importer or agent.

**BLOCK 37) DUTY**

Record the total estimated duty paid (excluding AD/CVD).

**BLOCK 38) TAX**

Record the total estimated tax paid, including any amount deferred (except tax deferred under 26 U.S.C. § 5232(a)).

**BLOCK 39) OTHER**

Record the total estimated AD/CVD or other fees, charges or exactions paid. Do not show AD/CVD amounts that were bonded.  The amounts shown in block 39 of the summary should reflect the amounts actually being paid.

**BLOCK 40) TOTAL**

Record the sum of blocks 37, 38, and 39.  Do not include any I.R. deferred tax shown in column 34 and block 38.  Do not include any AD/CVD that has been bonded.

If no duty, tax, or other charges apply to the transaction, record "0" in this block.

HMF is required to be paid on all warehouse entry summaries (type 21), but is not due on re-warehouse (type 22) entries.

**BLOCK 41) DECLARANT NAME, TITLE, SIGNATURE AND DATE**

Record the name, job title, and signature of the owner, purchaser, or agent who signs the declaration.  Record the month, day, and year (MM/DD/YYYY), when the declaration is signed.

When the entry summary consists of more than one page, the signature of the declarant, title, and date must be recorded on the first page.

Certification is the electronic equivalent of a signature for data transmitted through ABI. This electronic (facsimile) signature must be transmitted as part of the entry summary data.

## BLOCK 42) BROKER/FILER INFORMATION

This block is reserved for a broker or filer name, address and phone number.

## BLOCK 43) BROKER/IMPORTER FILE NO.

This block is reserved for a broker or importer internal file or reference number.

## PREPARATION OF ENTRY DOCUMENTS

The filer must submit entry documents for both entry summaries and entry/entry summaries in an ordered manner.  To ensure uniformity in this matter, entry documents are to be arranged in the following order:

> Check
> Statistical copy (Non-ABI only)
> Collection copy (non-statement)
> Certification
> Record Copy
> CBP Form 3461 or Alt.
> Single entry bond, when applicable
> Invoice
> Packing List
> Other Agency Documents

All documents should be stapled together in the upper left-hand corner by the filer of the entry summary or entry/entry summary.

A minimum of two copies of a warehouse withdrawal for consumption, CBP Form 7501, will be presented (importer's copy and permit copy).   If not paying via ACH, a cashier's copy is also required.  Non-ABI submissions must include a fourth copy for statistical purposes. If deferred tax is involved, at least one extra copy of the CBP Form 7501 must be included.

## SUMMARY OF ENTERED VALUE/CURRENCY CONVERSION

The summary of entered value and currency conversion (if appropriate) may be shown on a worksheet attached to the entry summary or across column 28.  On a multi-page entry summary, show the summary of entered values on the last page following the last line item.

If a filer prepares line items by invoice (i.e., group line items by invoice), the summary may be prepared with values for each invoice in lieu of a grand summation at the end of the entry summary.

## INFORMAL ENTRY

Informal entries may be made on the CBP Form 7501. The following blocks are to be completed for informal entries where applicable: [1, 2, 6, 8, 10, 11, 12, 14, 16, 17, 23, 26, 27, 28, 29A, 30A, 30B, 31, 32A, 33A, 33C, 34, 35, 36, 37, 38, 39, 40, and 41]. For ABI transmissions, blocks 9,15, and, 20 are also required.

When goods are released on a CBP Form 3461 and subsequently followed up by an informal entry summary (CBP Form 7501), the entry date (date of release) must be shown in block 7 on the CBP Form 7501.

Block 21, Location of Goods, will be filled in only if merchandise has been placed in a general order warehouse.

No statistical copy of the CBP Form 7501 is required for an informal entry summary.

## APPRAISEMENT ENTRY

When the CBP Form 7501 is used as an appraisement entry as, defined in 19 C.F.R. § 143.11, the following declaration requesting appraisement under 19 U.S.C. §1498(a)(10), should be added to the body of the CBP Form 7501 or attached on top as follows:

I hereby request appraisement under 19 U.S.C. §1498(a)(10). I declare, to the best of my knowledge and belief, that this entry and the documents presented therewith set forth all the information in my possession, or in the possession of the owner of the merchandise described herein, as to the cost of such merchandise; that I am unable to obtain any further information as to the value of the said merchandise or to determine its value for the purpose of making formal entry thereof; that the information contained in this entry and in the accompanying documents is true and correct; and that the person(s) named above is the owner of the same merchandise.

Signature
Title

To the Port Director: The merchandise described above has been examined and the contents and values are noted above.

CBP Officer
Date

Page 24

## DELIMITERS FOR LINE ITEMS

A solid line, broken line, or a blank line to facilitate the processing of the entry summary must separate each line item on the CBP Form 7501 and continuation sheet.

## ADDITIONAL DATA ELEMENTS

Filers of the CBP Form 7501 may, on their own initiative, provide additional or clarifying information on the form provided such additional information does not interfere with the reporting of those required data elements.  Such additional or clarifying information may be placed in any location on the form solely at the discretion of the filer provided it does not interfere with any required data element.  In such instances, CBP will not mandate what the additional information may be or where it is to be placed on the form.

Invoices may be separately identified in the body of the CBP Form 7501 and the continuation sheet across column 28 followed by the line items appropriate to that invoice.

## WAREHOUSE WITHDRAWAL

If the warehouse withdrawal is for the personal use of diplomatic, consular, other privileged personnel, or for public international organizations, the CBP Form 7501 must clearly state "WAREHOUSE WITHDRAWAL FOR DIPLOMATIC USE" at the top of Column 28, followed by the words "DS Form 1504 Attached."

Blanket permits may be issued to withdraw (1) merchandise from duty-free stores for exportation, (2) merchandise for diplomatic use, and (3) merchandise for aircraft or vessel supply.

Applications for Blanket Permits shall be filed in triplicate on the CBP Form 7501.  The words "APPLICATION FOR BLANKET PERMIT TO WITHDRAW" must be printed in capital letters or stamped in the top margin.

Withdrawal for blanket permits shall bear the words "APPLICATION FOR BLANKET PERMIT TO WITHDRAW."  When the last withdrawal under a blanket permit is filed, the words "LAST WITHDRAWAL UNDER BLANKET PERMIT" shall be depicted on the CBP Form 7501.

## REWAREHOUSE ENTRY

Where the CBP Form 7501 is filed as a rewarehouse entry, blocks 8, 12, 19 and 20 are not required to be completed.

## NAFTA DUTY DEFERRAL

The CBP Form 7501 is used to file a NAFTA Duty Deferral claim (entry type 08).  Refer to the Duty Deferral Handbook or contact the local CBP Office for complete instructions on how to complete the form for Duty Deferral purposes.

## CONSOLIDATED ENTRY SUMMARY

Where the CBP Form 7501 entry summary covers more than one release, (19 C.F.R. § 142.17) report each entry or release number separately, followed by the associated line item number and information.

## TEMPORARY IMPORTATION UNDER BOND (TIB) ENTRY

TIB Entry Summaries (type 23) are processed in CBP's automated system after review for TIB eligibility.  The data required to be reported on a TIB entry summary are the same as those usually reported on a regular consumption entry.  Also, 19 C.F.R. § 10.31(a)(3) identifies additional information that is required to be shown on a TIB entry summary. As a reminder, merchandise that is normally subject to quota, either on consumption entries or on withdrawals from warehouse for consumption, is also subject to quota when entered on a TIB.

**Appendix 1**

**CHECK DIGIT COMPUTATION FORMULA**

Check digits are computed from the filer code and transaction numbers (the first 7 digits of the entry number).  Entry filer codes containing alpha characters must be transformed to a numeric equivalent prior to computing the check digit.  The numeric equivalent for each alpha charter is as follows:

| | | | |
|---|---|---|---|
| A=1 | H=8 | O=6 | U=4 |
| B=2 | I=9 | P=7 | V=5 |
| C=3 | J=1 | Q=8 | W=6 |
| D=4 | K=2 | R=9 | X=7 |
| E=5 | L=3 | S=2 | Y=8 |
| F=6 | M=4 | T=3 | Z=9 |
| G=7 | N=5 | | |

Example: Entry filer code B76 would transform to 276 for check digit computation purposes.

A. Using entry filer code B76 (276) and a transaction number 0324527 as an example, the check digit is computed as follows:

   Number for which check digit will be computed is: 2760324527

B.  Start the calculation process by multiplying every other position by 2.  (Essentially, all even positions will be multiplied by 2.)

*Note: High order zeros are a significant element in the computation process and must be included in the transaction number.  If the result of the multiplication is greater than 9, add 1 to the sum, but disregard the digit in the tens column.

| 7 | 0 | 2 | 5 | 7 | | |
|---|---|---|---|---|---|---|
| x2 | x2 | x2 | x2 | x2 | | (Multiply by 2) |
| 14 | 0 | 4 | 10 | 14 | | |
| +1 | | | +1 | +1 | | (Add 1 if total is greater than 9.) |
| 15 + | 0 + | 4 + | 11 + | 15 | | (Disregard digit in the tens column) |

C.  Add results 5+0+4+1+5=**15**

D.  Total all odd positions starting at the beginning 2760324527
2+6+3+4+2=**17**

E.  Add the sums from steps C and D.    15+17 = 32

F. Subtract the units digit (last digit) derived in step E (32) from 10.  The result is the check digit .    10 - 2 = **8**

G. Normally, the result of the arithmetic will be a single digit.  In instances when the units digit subtracted from the sum in step E is a 0, the check digit will be 0.

The resulting entry number from the example would be shown as follows:

   B76-0324527-8

## CHECK DIGIT COMPUTATION FORMULA

Using the entry number R07-1010035, this chart was used to compute the check digit:

|     | R | O | 7 | 1 | 0 | 1 | 0 | 0 | 3 | 5 | ? |
|-----|---|---|---|---|---|---|---|---|---|---|---|
| **A** | 9 | 6 | 7 | 1 | 0 | 1 | 0 | 0 | 3 | 5 | |
| **B** | | X 2 | | X 2 | | X 2 | | X 2 | | X 2 | |
| | | 1 2 | | 2 | | 2 | | 0 | | 10 | |
| * | | + 1 | | + 0 | | + 0 | | + 0 | | + 1 | |
| **C** | | 3 | + | 2 | + | 2 | + | 0 | + | 1 | 8 |
| **D** | 9 | + | 7 | + | 0 | + | 0 | + | 3 | = | + 19 |
| **E** | | | | | | | | | | | 27 |
| **F** | | | | | | | | | | | 10 |
| | | | | | | | | | | | - 7 |
| **G** | | | | | | | | | | | 3 |
| | R | O | 7 | 1 | 0 | 1 | 0 | 0 | 3 | 5 | 3 |

## CHECK DIGIT FACTOR

There are some filers who are authorized to use a check digit factor of 1 or higher.  Essentially, the check digit factor is provided to filers who have exhausted the check digits for their filer code.  The check digit factor allows the filer to compute the check digit then add one or two for the new check.  When authorized, the check digit factor is posted to the filer's national filer maintenance record.

For example, if a filer has been authorized to use a check digit factor of 1, using the example above, B76-0324527-8, the check digit (8) would be changed to (9).

The Office of Field Operations, Trade Compliance and Facilitation, Broker Management Branch authorizes the Check Digit Factor.

**Appendix 2**

## RULES FOR CONSTRUCTING THE MANUFACTURER IDENTIFICATION CODE

These instructions provide for the construction of an identifying code for a manufacturer or shipper from its name and address. The code can be up to 15 characters in length, with no inserted spaces.

To begin, for the first 2 characters, use the ISO code for the actual country of origin of the goods. The exception to this rule is Canada. "CA" is NOT a valid country for the manufacturer code; instead, show as one of the appropriate province codes listed below:

| | |
|---|---|
| ALBERTA | XA |
| BRITISH COLUMBIA | XC |
| MANITOBA | XM |
| NEW BRUNSWICK | XB |
| NEWFOUNDLAND (LABRADOR) | XW |
| NORTHWEST TERRITORIES | XT |
| NOVA SCOTIA | XN |
| NUNAVUT | XV |
| ONTARIO | XO |
| PRINCE EDWARD ISLAND | XP |
| QUEBEC | XQ |
| SASKATCHEWAN | XS |
| YUKON TERRITORY | XY |

Next, use the first three characters from the first two "words" of the name. If there is only one "word" in the name, then use only the first three characters from the first name. For example, Amalgamated Plastics Corp. would be "AMAPLA;" Bergstrom would be "BER."

If there are two or more initials together, treat them as a single word. For example, A.B.C. Company or A B C Company would yield "ABCCOM." O.A.S.I.S. Corp. would yield "OASCOR." Dr. S.A. Smith yields "DRSA," Shavings B L Inc. yields "SHABL."

In the manufacturer name, ignore the English words a, an, and, of, and the. For example, "The Embassy of Spain" would yield "EMBSPA."

Portions of a name separated by a hyphen are to be treated as a single word. For example, "Rawles-Aden Corp." or "Rawles – Aden Corp." would both yield "RAWCOR."

Some names will include numbers. For examples, "20th Century Fox" would yield "20TCEN" and "Concept 2000" yields "CON200."

Some words in the title of the foreign manufacturer's name should not be used for the purpose of constructing the MID.  For example, most textile factories in Macau start with the same words, "Fabrica de Artigos de Vestuario" which means  "Factory of Clothing." For a factory named  "Fabrica de Artigos de Vestuario JUMP HIGH Ltd," the portion of the factory name that identifies it as a unique entity is "JUMP HIGH."  This is the portion of the name that should be used to construct the MID.  Otherwise, all of the MIDs from Macau would be the same, using "FABDE," which is incorrect.

Similarly, many factories in Indonesia begin with the prefix PT, such as "PT Morich Indo Fashion."  In Russia, other prefixes are used, such as "JSC," "OAO," "OOO," and "ZAO."  These prefixes should be eliminated for the purpose of constructing the MID.

Next, find the largest number on the street address line and use up to the first four numbers. For example, "11455 Main Street Suite 9999" would yield "1145."  A suite number or a post office box should be used if it contains the largest number.  For example, "232 Main Street Suite 1234" would yield "1234."  If the numbers in the street address are spelled out, such as "One Thousand Century Plaza," there will be no numbers in this section of the MID.  However, if the address is "One Thousand Century Plaza Suite 345," this would yield "345."

When commas or hyphens separate numbers, ignore all punctuation and use the number that remains.  For examples, "12,34,56 Alaska Road" and "12-34-56 Alaska Road" would yield "1234."  When numbers are separated by a space, the space is a delimiter and the larger of the two numbers should be selected.  For example, "Apt. 509 2727 Cleveland St." yields "2727."

Finally, use the first three alpha characters from the city name.  "Tokyo" would be "TOK," "St. Michel" would be "STM," "18-Mile High" would be "MIL," and "The Hague" would be "HAG."  Notice that numerals in the city line are to be ignored.

For city-states, use the country name to compose the first three alpha characters.  For examples, Hong Kong would be "HON," Singapore would be "SIN," and Macau would be "MAC."

General Rules:
Ignore all punctuation, such as commas, periods, apostrophes and ampersands.  Ignore all single character initials, such as the "S" in "Thomas S. Delvaux Company."  Ignore leading spaces in front of any name or address.

Listed below are examples of manufacturer names and addresses and their MID codes:

LA VIE DE FRANCE
243 Rue de la Payees
62591 Bremond, France

FRLAVIE243BRE

20TH CENTURY TECHNOLOGIES
5 Ricardo Munoz, Suite 5880
Caracas, Venezuela

VE20TCEN5880CAR

THE E.K. RODGERS COMPANIES
One Hawthorne Lane
London, England SW1Y5HO

GBEKRODLON

THE GREENHOUSE
45 Royal Crescent
Birmingham, Alabama 35204

USGRE45BIR

CARDUCCIO AND JONES
88 Canberra Avenue
Sidney, Australia

AUCARJON88SID

N. MINAMI & CO., LTD.
2-6, 8-Chome Isogami-Dori
Fukiai-Ku
Kobe, Japan

JPMINCO26KOB

BOCCHACCIO S.P.A.
Visa Mendotti, 61
8320 Verona, Italy

ITBOCSPA61VER

MURLA-PRAXITELES INC.
Athens, Greece

GRMURINCATH

SIGMA COY E.X.T.
4000 Smyrna, Italy
1640 Delgado

ITSIGCOY1640SMY

COMPANHIA TEXTIL KARSTEN
Calle Grande, 25-27
67890 Lisbon, Portugal

PTKAR2527LIS

HURON  LANDMARK
1840 Huron Road
Windsor, ON, Canada N9C 2L5

XOHURLAN1840WIN

# EXHIBIT 15

# CONFIDENTIAL EXHIBIT