IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JUDGE DONALD C. POGUE, SENIOR JUDGE

_____

| | |
|---|---|
| SUNPOWER CORPORATION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CANADIAN SOLAR INC., *ET AL.*, | ) |
| | ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) |
| | ) Consol. Court No. 15-00067 |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| SOLAR WORLD AMERICAS, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |

_____ )

**DEFENDANT'S RESPONSE TO**
**SUNPOWER COPORATION'S SEPTEMBER 18, 2015 SUBMISSION**


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

REBECCA CANTU
Senior Attorney
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

MELISSA M. DEVINE
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0341
Fax: (202) 514-8624
Email:  melissa.m.devine@usdoj.gov

September 29, 2015

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

BACKGROUND .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    I.    The Court Should Deny SunPower's Motion To Amend The Complaint Because
        SunPower Has Come Forward With No Admissible Or Persuasive Evidence Supporting
        Purported Facts Necessary To Its Claim ............................................................... 3

      A.    Section 1746 Compels Rejection Of SunPower's Declarations ...................................... 4

      B.    The Affidavit Improperly Relies on "Suspicions" and Proffers "Suggestions" ............... 5

      C.    The Court Should Decline To Consider Extra-Record Evidence In Its "Interested Party"
          Analysis .............................................................................................................. 6

      D.    The Evidence On The Record Does Not Establish That SCS Is An "Interested Party" .. 9

    II.    The Court Should Use The Proposed Order If It Holds That SCS Has Standing and Has
         Met The Requirements for Preliminary Injunction ............................................. 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Utils. Grp. v. United States,*
   625 F. Supp. 2d 1330 (Ct. Int'l Trade 2009) ...................................................... 6, 11

*Beck v. U.S. Dep't of Interior*,
   982 F.2d 1332 (9th Cir. 1992) ...................................................................... 10

*DEK Energy Co. v. FERC,*
   248 F.3d 1192 (D.C. Cir. 2001) ...................................................................... 6

*Kamen v. Am. Tel. & Tel. Co.,*
   791 F.2d 1006 (2d Cir. 1986) ....................................................................... 8

*Manguriu v. Lynch*,
   794 F.3d 119 (1st Cir. 2015) ........................................................................ 9

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.,*
   117 F.3d 1520 (9th Cir. 1997) ...................................................................... 10

*Pakfood Pub. Co. v. United States,*
   724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) ................................................... 11

*Visser v. Packer Eng'g Assoc.*,
   924 F.2d 655 (7th Cir. 1991) ........................................................................ 9

*Yama Ribbons & Bows Co. v. United States*,
   865 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ................................................... 13

*Zenith Radio Corp. v. United States*,
   5 Ct. Int'l Trade 155 (1983) ......................................................................... 6

**Statutes**

19 U.S.C. § 1516a ............................................................................... 6, 9, 10, 14

19 U.S.C. § 1677 .................................................................................. 4, 5, 6, 15

28 U.S.C. § 1581 ............................................................................................ 10

28 U.S.C. § 1746 ........................................................................................... 6, 7

28 U.S.C. § 2631 ............................................................................................. 6

**Regulations**

19 C.F.R. § 351.102 .......................................................................................... 6

**Other Authorities**

S. Rep. No. 96–249 (1979) ............................................................................... 10

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JUDGE DONALD C. POGUE, SENIOR JUDGE
_____

|  |  |  |
|---|---|---|
| SUNPOWER CORPORATION | ) | |
| Plaintiff, | ) | |
| and | ) | |
| CANADIAN SOLAR INC., *ET AL.*, | ) | |
| Plaintiff-Intervenors, | ) | |
| v. | ) | Consol. Court No. 15-00067 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| SOLAR WORLD AMERICAS, INC., | ) | |
| Defendant-Intervenor. | ) | |

_____ )

## DEFENDANT'S RESPONSE TO
## SUNPOWER COPORATION'S SEPTEMBER 18, 2015 SUBMISSION

Defendant, the United States, respectfully responds in opposition to SunPower Corporation's (SunPower) submission pertaining to SunPower Corporation, Systems' (SCS) status as an importer of record. As we explain below, SunPower still has not established that SCS is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A), and, thus, the Court does not possess jurisdiction to entertain SCS's claims.

## BACKGROUND

On July 29, 2015, SunPower filed a motion seeking leave to amend its complaint to join SCS to Court No. 15-00067. In its motion, SunPower stated that "{b}ased on a further review of

1

*the administrative record*, however, SunPower believes its wholly owned subsidiary, {SCS} is

an "interested party" and a "party to the proceeding" and therefore, qualifies as a Plaintiff …."

CM/ECF No. 34 at ¶ 6 (emphasis added).

On August 26, 2015, the United States opposed SunPower's motion, in part, because

SunPower had not alleged facts in its motion establishing that SCS is an "interested party" as

defined by 19 U.S.C. § 1677(9)(A). Neither SunPower's Quantity and Value Questionnaire nor

its separate rate application supported the claim that SCS imported subject merchandise during

the period of investigation. In particular, the entry summary forms submitted to U.S. Customs

and Border Protection (CBP), and later provided to Commerce in SunPower's separate rate

application, *i.e.*, the record information, indicate that an entity other than SCS acted as the

importer of record for certain entries during the investigation period. CM/ECF No. 41 at 15.

On September 15, 2015, the Court held a teleconference, during which SunPower

claimed that the entry summary forms submitted in its separate rate application supported its

claim that SCS acted as an importer of record during the period of investigation. However,

SunPower acknowledged that (1) the name of the entity identified as the importer of record in

Field 26 of the forms (Importer of Record Name and Address) was for an entity other than SCS,

and (2) the named entity *did not exist*. Without citing to any record evidence, SunPower then

claimed that the tax identification numbers in Field 23 of the entry summary forms (Importer

No.) corresponds to SCS. SunPower also asserted that, notwithstanding the incorrect entity

name in Field 26 of the forms, CBP would consider the entries to be made by SCS based on the

tax identification. In light of SunPower's assertions, the Court granted SunPower the

opportunity to submit an affidavit in support of its claim that SCS acted as an importer or record

during the investigation period.

**ARGUMENT**

**I.     The Court Should Deny SunPower's Motion To Amend The Complaint Because SunPower Has Come Forward With No Admissible Or Persuasive Evidence Supporting Purported Facts Necessary To Its Claim**

A party's ability to demonstrate to Commerce during the proceeding that it is an "interested party," as defined in 19 U.S.C. § 1677(9)(A), serves as the basis for that party's ability to participate by submitting factual information or argument and to become a "party to the proceeding." *See* 19 C.F.R. § 351.102(b)(36). This Court, however, has held that, in determining its own jurisdiction under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(2)(A), it is not bound by Commerce's "interested party" determination. *See Ad Hoc Utils. Grp. v. United States,* 625 F. Supp. 2d 1330, 1336 (Ct. Int'l Trade 2009) (citing *Zenith Radio Corp. v. United States*, 5 Ct. Int'l Trade 155, 156 (1983)). SunPower urges the Court, when evaluating standing, to consider information and argument made in what it calls an "affidavit" – information outside administrative record – in the Court's "interested party" inquiry, presumably because Federal courts often will consider extra-record evidence when deciding whether they have jurisdiction. *See, e.g., DEK Energy Co. v. FERC,* 248 F.3d 1192, 1196 (D.C. Cir. 2001). This Court should decline to do so.

As an initial matter, SunPower's "affidavit" is inadmissible. The "affidavit" is not an "affidavit" at all, because it does not comply with 28 U.S.C. § 1746, and is not based on fact or personal knowledge as required by Rule 56(c)(4). In any event, despite Federal court practice to entertain non-record evidence when determining jurisdiction, in the context of the "interested party" requirement under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(2)(A), consideration of evidence outside the administrative record is inappropriate. A plaintiff that wishes to preserve its right to challenge a Commerce determination in this Court has the obligation to place Commerce on notice of that fact and to establish "interested party" status before Commerce prior to its

participation in the administrative proceedings, CM/ECF No. 42, Exhibit 1 at 2 (reflecting that

Commerce required SunPower to "substantiate" its status as an "interested party"); thus,

evidence seeking to establish "interested party" status must be submitted to Commerce in the

first instance.  The "affidavit" introduced by SunPower offers information not included in

Commerce's record before the Court as well as *post hoc* explanations of the customs

documentation not previously presented to Commerce to establish SCS's interested party status.

Thus, this Court should disregard the "affidavit" in its entirety.

    **A.**    <u>**Section 1746 Compels Rejection Of SunPower's Declarations**</u>

First, the affidavit submitted by SunPower is inadmissible under the statute governing

affidavits or declarations submitted to United States courts.  *See* 28 U.S.C. § 1746.  The core

requirements for an unsworn affidavit to evidence any fact are two-fold:  (1) the witness must

state that the facts contained in the affidavit are "true"; and (2) the witness must acknowledge

that the affidavit is submitted under "penalty of perjury":

> Wherever, under any law of the United States or under any rule,
> regulation, order, or requirement made pursuant to law, any matter
> is required or permitted to be supported, evidenced, established, or
> proved by the sworn declaration, verification, certificate,
> statement, oath, or affidavit, in writing of the person making the
> same …, such matter may, with like force and effect, be supported,
> evidenced, established, or proved by the unsworn declaration,
> certificate, verification, or statement, in writing of such person
> which is subscribed by him, *as true under penalty of perjury*, and
> dated, in substantially the following form: …
>
> (2)   If executed within the United States its territories,
> possessions, or commonwealths: "I declare (or certify, verify, or
> state) *under penalty of perjury* that the foregoing is true and
> correct. Executed on (date). (Signature)".

*Id.* (emphasis added).  The affidavit submitted by SunPower omits both mandatory elements of

28 U.S.C. § 1746.  Because the affidavit neither states that the facts contained in the affidavit are

true, nor acknowledges that SunPower was signing the affidavit "under penalty of perjury," the affidavit should not be relied upon to establish the truth of the matters asserted therein. *See* SunPower September 18, 2015 Submission at Attachment I (SunPower Affidavit), CM/ECF No. 51.

### B.    The Affidavit Improperly Relies on "Suspicions" and Proffers "Suggestions"

Furthermore, the affidavit improperly includes statements by SunPower that are not based on fact or personal knowledge. Although not explicitly pertaining to the Court's inquiry into its subject matter jurisdiction, Rule 56(c)(4) of this Court's rules guides what information may be proffered as evidence in an affidavit. *See Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986) (applying the requirements of Rule 56(c)(4) to Rule 12(b)(1) motion). Rule 56(c)(4) provides that "{a}n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

SunPower's affidavit does not meet these requirements. Rather, SunPower states in its affidavit merely that it "*suspects* that the broker inadvertently may have referred to {SunPower Corporation USA in field 26 of the entry summary forms at issue} because the relevant commercial invoices … erroneously refer to 'SunPower Corporation' as the consignee…." SunPower Affidavit at ¶ 8 (emphasis added). SunPower also cites certain information "as further support for the *suggestion* that the broker may simply have erred in connection with completing Field 26 of the relevant summary inquiries…." *Id.* at ¶ 9 (emphasis added) (citing Exhibit 15). Assertions based on "suspicions" or that constitute "suggestions" are neither "made on personal knowledge," nor "set out *facts* that would be admissible evidence," as would be required by USCIT R. 56(c)(4), and, thus, should be disregarded by the Court for determining whether

SunPower has established that SCS acted as an importer of record during the investigation period. *See Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659-60 (7th Cir. 1991) ("{I}nferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." (citation omitted)).

### C.   The Court Should Decline To Consider Extra-Record Evidence In Its "Interested Party" Analysis

SunPower belatedly requests that the Court ignore the various errors and inconsistencies in the information provided to Commerce during the investigation and instead consider extra-record evidence that purportedly corroborates its claims. But it is inappropriate for the Court to consider evidence and information concerning SCS's "interested party" status not found in the administrative record.

The statute upon which SunPower and SCS rely upon for its cause of action, 19 U.S.C. § 1516a(a)(2)(A), provides for a "review of determinations on {the} record." The statute defines the administrative record to be, unless otherwise stipulated by the parties, as "(i) a copy of all information presented to or obtained by {Commerce} during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be kept by section 1677f(a)(3) of this title; and (ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register." 19 U.S.C. § 1516a(b)(2)(A). This Court's review, therefore, is limited to its evaluation of these documents.

We acknowledge that, frequently, even in record review cases, Federal courts will allow parties to submit non-record evidence to build a judicial record specific to the question of jurisdiction. *See, e.g., Manguriu v. Lynch*, 794 F.3d 119, 121 (1st Cir. 2015). Courts follow this

practice because establishing Court jurisdiction is not an element of the agency proceeding and, therefore, a party before the agency had no reason to submit evidence to the agency to establish entitlement to seek judicial review. *See Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527-28 (9th Cir. 1997) ("Because Article III's standing requirement does not apply to agency proceedings, petitioners had no reason to include facts sufficient to establish standing as a part of the administrative record. We therefore consider the affidavits not in order to supplement the administrative record on the merits, but rather to determine whether petitioners can satisfy a prerequisite to this court's jurisdiction.") (citing *Beck v. U.S. Dep't of Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992)).  In cases brought pursuant to 28 U.S.C. § 1581(c) challenging Commerce determinations, however, a potential plaintiff has the burden to establish its status as an "interested party" before Commerce prior to submitting evidence or argument that Commerce will consider.  In other words, the record establishing standing is built at the administrative level, because standing is a critical issue before the agency.  A potential plaintiff like SCS has the burden to put Commerce on timely notice that it might challenge Commerce's determination before the Court, and should not be permitted to establish its standing only upon attempting to file a complaint in this Court.

The legislative history for the Trade Agreements Act of 1979 supports this position: "{u}nder {19 U.S.C. § 1516a} any person *with standing in an antidumping or countervailing duty case* can challenge a determination in the Customs Court within 30 days of notice of the determination."  S. Rep. No. 96–249, at 250-51 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 636 (emphasis added).  That the legislative history refers separately to "standing in an antidumping or countervailing duty case" and "a challenge of a determination in the { } Court" indicates not only that there is a distinction between the administrative proceeding and litigation stages, but

also that standing should be established during the administrative proceeding.  To establish its standing during a proceeding, a party would need to provide record evidence in support of its claim that it is in "interested party" within the meaning of section 771(9) of the Act, and the party would need to actively participate in the proceeding, consistent with 19 C.F.R. § 351.102(b)(36).  Although, as we acknowledged above, the Court has held that it is not bound by Commerce's determinations regarding interested party status or participation in determining whether it has jurisdiction to hear a party's claim, *see Ad Hoc Utils. Grp.*, 625 F. Supp. 2d at 1336, the Court should consider whether a party has established its standing during the administrative proceeding, consistent with the legislative history.  Requiring a party to establish its standing during the proceeding serves to ensure that the agency has had an opportunity to develop the factual record and puts the agency on notice that the party may challenge the final determination.

By way of analogy, the exhaustion doctrine requires parties to preserve their arguments for judicial review because doing so puts the agency on notice and affords it the opportunity to consider and to respond to the arguments.  *See e.g.*, *Pakfood Pub. Co. v. United States,* 724 F. Supp. 2d 1327, 1352 (Ct. Int'l Trade 2010).  Similarly, notice as to which parties have standing is important because not all parties who participate in an administrative proceeding are interested parties within the meaning of section 771(9) of the Act.  Indeed, others who do not satisfy the "interested party" definition sometimes file comments or information on the record of a particular proceeding.  Although these parties may actively participate in a proceeding, they are not entitled to challenge Commerce's determination.

The Court's reliance on extra-record evidence when making standing determinations would lead to an untenable result – *i.e.*, parties would assume that they could correct or explain

inaccurate or incomplete information during litigation and thus would have less incentive to accurately report information to Commerce, including information establishing their interested party status.  This Court should not countenance that result.

**D.**  **The Evidence On The Record Does Not Establish That SCS Is An "Interested Party"**

In neither its previous briefings before this Court, nor its "affidavit" filed on September 18, 2015, has SunPower identified any record evidence in support of its claim that SCS established its status as an importer of record during the antidumping duty investigation period. Instead, the record evidence available to Commerce during the investigation was ambiguous at best.

Although SunPower and its counsel both certified that the information contained in SunPower's separate rate application was "accurate and complete to the best of {their} knowledge," *see* CM/ECF No. 43, Exhibit 2 at 8-9, SunPower now asserts that the information was inaccurate.  Specifically, SunPower acknowledges the three entry summary forms it claims demonstrate that SCS was an importer "erroneously referred to 'SunPower Corporation USA,'" and that "there is no entity within the SunPower organizational structure having the name 'SunPower Corporation USA."  SunPower Affidavit at ¶ 8.  Additionally, SunPower states that the invoices included with the entry summary forms "erroneously refer to 'SunPower Corporation' as the consignee…."  *Id.*  During the course of the investigation, SunPower and SCS had ample opportunity not only to correct the entry summary forms and the invoices, but also to alert Commerce to the errors in the submitted information.  Of course, after submitting the allegedly inaccurate information to Commerce neither SunPower nor SCS elected to correct the information during the administrative proceeding.  As a result, it would be unreasonable to

allow them to correct the errors in the submitted information or to explain them away well after the conclusion of the investigation.

SunPower claims that the customs forms demonstrate that the consignee and the importer of record had the same physical address and importer number/Federal tax identification number. *See* SunPower Affidavit at ¶¶ 7-8.  In support of its reading of the record, however, SunPower relies exclusively on evidence that was not provided to Commerce, including its filings with the U.S. Securities and Exchange Commission, the Florida Secretary of State, a copy of Form 5106 filed with CBP, surety bonds, and broker invoices.  *See id.* at ¶¶ 4-6 (citing Exhibits 5-6, 8-10, 13.1-13.3).  Because none of this evidence is on the record, Commerce would have had no way of knowing that the importer number and Federal tax identification number on the entry summary forms purportedly belonged to SCS.  At best, the record reflects an inconsistency, *not* that SCS was the importer of record for the imports at issue.[1]  Similarly, Commerce would have had no way of knowing, based on the evidence available on the record, whether SCS was the only company at the physical address listed in the forms.

Moreover, SunPower improperly relies on information submitted in the countervailing duty investigation as support for its assertions.  *See* SunPower Affidavit at ¶ 9 (citing Exhibit 15).  The Court has recognized that "antidumping duty and countervailing duty investigations operate pursuant to different statutory provisions, are separate administrative proceedings, and as such, each investigation has its own unique and separate administrative record.  *Yama Ribbons & Bows Co. v. United States*, 865 F. Supp. 2d 1294, 1300 (Ct. Int'l Trade 2012) (citing 19 C.F.R.

---

[1] SunPower claims that it was "clear to CBP" that SCS was the importer of record. SunPower Affidavit at ¶ 7.  At issue in this case, however, is a determination of sales of less than fair value by *Commerce* and consequent antidumping duty order, not a liquidation by CBP of entries made pursuant to that order.  Moreover, SunPower is, at best, relying upon its self-serving supposition that anything was "clear to CBP."

§ 351.306).  Just as it would be inappropriate for Commerce to move business proprietary information from one administrative proceeding to another, *id.* ("Importantly, the relevant data appears to be proprietary and therefore it would have been inappropriate for Commerce simply to move it from one administrative record to another." (citation omitted)), it would be improper for the Court to rely on the business proprietary information provided in Exhibit 15 of SunPower's affidavit to make a determination as to whether SCS has standing to challenge Commerce's antidumping duty investigation.

Finally, as SunPower acknowledges, SunPower Affidavit at ¶ 11, neither SunPower nor SCS filed case briefs, which might have provided Commerce an opportunity to focus on the issue of SCS's interested party status.  As a result, SCS failed to put Commerce on notice of its status in the proceeding and that it was a party that might challenge the final determination. SunPower's motion to join SCS to this action is ultimately a request for the Court to ignore that SCS failed to fulfill its responsibility to establish its interested party status during the underlying investigation.  SunPower's motion should be denied.

## II.    The Court Should Use The Proposed Order If It Holds That SCS Has Standing and Has Met The Requirements for Preliminary Injunction

During the September 15, 2015 teleconference, the Court asked whether the United States had any objections to the proposed form of SunPower's proposed order enjoining liquidation of SCS's entries, assuming that SunPower had established that SCS had standing to challenge the underlying administrative determination.[2]  Upon further review of SunPower's motion, we find

---

[2] As explained in our responses to SunPower's motion for leave to file an amended complaint and motions to enlarge the preliminary injunctions issued in Court Nos. 15-00083 and 15-00088, however, the Court lacks subject-matter jurisdiction over SCS's claims because SCS (1) has not complied with the requirements of 19 U.S.C. § 1516a(a)(2)(A) and (2) lacks standing to challenge Commerce's final determination in the antidumping duty investigation of certain

that the order proposed by SunPower may create some confusion.  Specifically, although

SunPower requests enlargement of the preliminary injunctions issued in Court Nos. 15-00083

and 15-00088, its proposed order identifies only SCS, rather than identifying both SunPower and

SCS.  Our proposed order in Attachment A includes language that addresses this concern and

makes clear that any new order issued by the court replaces and supersedes the prior preliminary

injunctions.

## CONCLUSION

For these reasons, we respectfully request that the Court hold that SunPower has not

established that SCS is interested party within the meaning of 19 U.S.C. § 1677(9)(A).


Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

---

crystalline silicon photovoltaic products from China.  Further, SunPower has failed to establish
that it will suffer irreparable harm if SCS's entries are liquidated.

<table>
<tr><td></td><td>s/Melissa M. Devine</td></tr>
</table>

|                                          |                                          |
|------------------------------------------|------------------------------------------|
| OF COUNSEL:                              | MELISSA M. DEVINE                        |
|                                          | Trial Attorney                           |
| REBECCA CANTU                            | Commercial Litigation Branch             |
| Senior Attorney                          | Civil Division                           |
| Office of the Chief Counsel              | U.S. Department of Justice               |
|    for Trade Enforcement & Compliance | P.O. Box 480                 |
| U.S. Department of Commerce              | Ben Franklin Station                     |
|                                          | Washington, D.C. 20044                   |
|                                          | Tel: (202) 616-0341                      |
|                                          | Fax: (202) 514-8624                      |
|                                          | Email:  melissa.m.devine@usdoj.gov       |
|                                          |                                          |
| September 29, 2015                       | Attorneys for Defendant                  |

# **ATTACHMENT A**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE DONALD C. POGUE, SENIOR JUDGE

| | |
|---|---|
| _____ ) | |
| SUNPOWER CORPORATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| CANADIAN SOLAR INC., *ET AL.*, ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | |
| v. ) | Consol. Court No. 15-00067 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| SOLAR WORLD AMERICAS, INC., ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

**<u>ORDER</u>**

Upon consideration of SunPower Corporation's (SunPower) July 27, 2015 motions to enlarge the scope of the preliminary injunction issued in *Shanghai BYD Co. v. United States*, Court No. 15-00083, and *Canadian Solar Inc. v. United States*, Court No. 15-00088, which are consolidated in the above captioned action, to include entries made by SunPower Corporation, Systems (SCS), a separate company, SunPower's September 18, 2015 submission in support of SCS's status as an importer of record during the period of investigation, as well as defendant's response in opposition thereto, and all other pertinent papers, it is hereby:

ORDERED that SunPower's motions are GRANTED; and it is further

ORDERED that this amended preliminary injunction replaces and supersedes the preliminary injunctions entered by this Court in Court Nos. 15-00083 and 15-00088 on May 29, 2015; and it is further

ORDERED that defendant, the United States, together with its delegates, officers, agents, servants, including employees of U.S. Customs and Border Protection and the U.S. Department of Commerce, are hereby ENJOINED during the pendency of this litigation, (including all relevant appeals and remands) from liquidating, ordering the liquidation of, or causing liquidation of any unliquidated entries of certain crystalline silicon photovoltaic products from the People's Republic of China that:

    i.    were imported by SunPower Corporation or SunPower Corporation, Systems; and

    ii.    were suspended pursuant to Department of Commerce case number A-570-010; and

    iii.    were entered, or withdrawn from warehouse, for consumption July 31, 2014, through January 26, 2015, and February 10, 2015, through January 31, 2016; and

    iv.    remain unliquidated as of 5 o'clock p.m. on the day this order is executed; and it is further

ORDERED that this injunction shall expire upon entry of a final and conclusive court decision in this litigation, including all appeals and remand proceedings as provided in Section 516A(e) of the Tariff Act of 1930, as amended,19 U.S.C. § 1516a(e).

SO ORDERED.

Dated: _____                    _____
      New York, New York                                       SENIOR JUDGE