# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SUNPOWER CORPORATION ET AL.<br><br>**Consolidated Plaintiffs**<br><br>v.<br><br>UNITED STATES<br><br>**Defendant**<br><br>and<br><br>SOLARWORLD AMERICAS, INC.<br><br>**Defendant-Intervenor.** | **Consol. Court No. 15-00067**<br><br>**Before: Hon. Donald C. Pogue,**<br>**Senior Judge**<br><br>**PUBLIC VERSION**<br><br>**BPI INFORMATION DELETED**<br>**ON PAGE 20** |

## ORDER

Upon consideration of Plaintiff SunPower Corporation's ("SunPower") Motion for Judgment on the Agency Record, and all other papers and proceedings herein, it is hereby

**ORDERED** that SunPower's Motion for Judgment on the Agency Record hereby is GRANTED; and it is further

**ORDERED** that the final scope determination  made by the U.S. Department of Commerce in the antidumping duty investigation of *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, and the original scope formulation adopted by the Department, are unsupported by substantial record evidence and otherwise contrary to law; and it is further

**ORDERED** that this action is remanded to the U.S. Department of Commerce for proceedings consistent with this Court's opinion.

**SO ORDERED.**

_____
Hon. Donald. C. Pogue, Senior Judge

Dated: _____, 2015
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SUNPOWER CORPORATION ET AL.    ) | |
| ) | |
| **Consolidated Plaintiffs**    ) | |
| ) | |
| **v.**    ) | **Consol. Court No. 15-00067** |
| ) | |
| UNITED STATES    ) | **Before: Hon. Donald C. Pogue,** |
| ) | **Senior Judge** |
| **Defendant**    ) | |
| ) | **PUBLIC VERSION** |
| **and**    ) | |
| ) | **BPI INFORMATION DELETED** |
| SOLARWORLD AMERICAS, INC.    ) | **ON PAGE 20** |
| ) | |
| **Defendant-Intervenor.**    ) | |
| ) | |

## SUNPOWER CORPORATION'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("Court") and the Court's July 1, 2015 Order, *SunPower Corporation et al. v. United States,* Court No. 15-00067, Docket No. 31, Plaintiff SunPower Corporation ("SunPower") hereby moves for judgement on the agency record with respect to the final scope determination of the U.S. Department of Commerce ("Department") in the antidumping duty investigation of *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, Case No. A-570-010. The Department's final affirmative antidumping duty determination was published in the *Federal Register* on December 23, 2014. *See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 79 Fed. Reg. 76970 (Dep't Commerce Dec. 23, 2014) (Final Determination of Sales at Less Than Fair Value). The Department's antidumping duty order was published in the *Federal Register* on February 18, 2015. *See Certain Crystalline*

*Silicon Photovoltaic Products from the People's Republic of China*, 80 Fed. Reg. 8,592 (Dep't Commerce Feb. 18, 2015) (Antidumping Duty Order).

SunPower respectfully moves, for the reasons set forth in the accompanying brief, that this Court find the Department's determination that crystalline silicon photovoltaic ("CSPV") modules, laminates, and/or panels assembled in the People's Republic of China ("China") containing CSPV cells produced in a customs territory other than China without Chinese-origin inputs are covered by the scope of the antidumping duty investigation and resulting order is unsupported by substantial record evidence and otherwise contrary to law.  Furthermore, SunPower respectfully moves, for the reasons set forth in the accompanying brief, that this Court also find that the scope of the investigation as originally stated in the petition and in the Department's preliminary affirmative antidumping duty determination is unsupported by substantial record evidence and otherwise contrary to law.  SunPower further moves that the Court remand this determination to the Department for disposition consistent with the Court's final opinion, including, as appropriate, the termination of the antidumping duty order.

Respectfully submitted,

Daniel J. Gerkin
Jerome J. Zaucha
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Tel: (202) 778-9168
Fax: (202) 778-9100

*Counsel to SunPower Corporation*

October 5, 2015

## UNITED STATES COURT OF INTERNATIONAL TRADE

SUNPOWER CORPORATION ET AL.    )
)
Consolidated Plaintiffs    )
)
v.    )
)
UNITED STATES    )
)
Defendant    )
)
and    )
)
SOLARWORLD AMERICAS, INC.    )
)
Defendant-Intervenor.    )
)

Consol. Court No. 15-00067

Before: Hon. Donald C. Pogue,
Senior Judge

PUBLIC VERSION

BPI INFORMATION DELETED
ON PAGE 20

## BRIEF IN SUPPORT OF SUNPOWER CORPORATION'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel J. Gerkin
Jerome J. Zaucha
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Tel: (202) 778-9168
Fax: (202) 778-9100

*Counsel to SunPower Corporation*

October 5, 2015

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................ 1

II.    RULE 56.2 STATEMENT ............................................................. 1

       A.     Administrative Decision Under Review ................................ 1

       B.     Issues Presented and Summary of Argument ........................ 2

              1.     Whether the Department's "Scope Clarification" Which Expanded
                     the Petition Scope to Include Modules and Panels Assembled in
                     China from Cells Manufactured Outside of China without the Use of
                     Chinese-Origin Inputs Is Unsupported by Substantial Evidence and
                     Contrary to Law ................................................................ 2

              2.     Whether Petitioner's Original "Two Out of Three" Rule Scope
                     Which Conflicts with Prior Scope Precedent Is Unsupported by
                     Substantial Evidence and Contrary to Law ............................ 2

III.   STATEMENT OF FACTS .............................................................. 3

       A.     Toll Assembly in China of CSPV Modules Imported Into the United States
              by Sunpower or Affiliated Entities Using Malaysian- or Philippines-Origin
              CSPV Cells ............................................................................. 3

       B.     Scope Determination Regarding Chinese-Assembled CSPV Modules Using
              Non-Chinese-Origin Cells in Prior Antidumping and Countervailing Duty
              Investigations ......................................................................... 3

       C.     Antidumping Duty Investigation of Certain Crystalline Silicon Photovoltaic
              Products from the People's Republic of China and Taiwan .................... 6

IV.    STANDARD OF REVIEW ............................................................ 9

V.     ARGUMENT ............................................................................ 10

       A.     The Department's "Scope Clarification" Which Expanded the Petition Scope
              to Include Modules and Panels Assembled in China from Cells
              Manufactured Outside of China without the Use of Chinese-Origin Inputs Is
              Unsupported by Substantial Evidence and Contrary to Law ................. 10

              1.     The Department's "Scope Clarification" Materially Expanded the
                     Scope Beyond that Stated in the Petition ................................ 11

2.   The Department's "Scope Clarification" Conflicts with the
Traditional and Judicially-Approved Method of Determining Country
of Origin in Antidumping Proceedings and the Department's Own
Scope Determination Precedent ………………………………………….. 13

3.   The Department's Justifications for Expanding the Scope Contrary to
the Traditional and Judicially-Approved Method of Determining
Country of Origin in Antidumping Proceedings and Relevant Prior
Precedent Are Without Merit …………………………………………… 16

    a.   The Department's Oct. 3 Scope Memo and Resulting Scope
Determination Do Not Effectuate the Intent of the Petitioner …..16

    b.   The Department's Oct. 3 Scope Memo and Resulting Scope
Determination Are Disproportionate Responses to Legitimate
Administrability and Enforceability Concerns ……………….... 18

    c.   The Department's Oct. 3 Scope Memo and Resulting Scope
Determination Are Inappropriate Means of Addressing
Speculative Circumvention or Evasion Concerns …………….. 20

4.   The Timing of the Department's Scope Clarification Calls the Validity
of the Department's Final Determination into Question and Deprived
Parties of Procedural Due Process Rights ……………………………... 21

B.   The Original "Two Out of Three" Rule Scope Conflicts with the Scope
Determination Made by the Department in Connection with the Prior
Investigations Unsupported by Substantial Evidence and Contrary to Law …... 24

VI.   CONCLUSION …………………………………………………………. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1187
(Ct. Int'l Trade 2004) ............................................................................ 10, 12, 22

*American Lamb Co. v. United States*, 785 F. 2d 994, 1001 (Fed. Cir. 1986) ..................... 17

*Consol. Bearings Co. v. United States*, 348 F. 3d 997 (Fed Cir. 2003) ............................. 15

*Diversified Prods. Corp. v. United States*, 572 F. Supp. 882 (Ct. Int'l Trade 1983) .............. 12

*E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854
(Ct. Int'l Trade 1998) ................................................................................ 15

*Louis Dreyfus Citrus Inc. v. United States*, 495 F. Supp. 2d 1338, 1355
(Ct. Int'l Trade 2007) ................................................................................ 12

*Minebea Co., Ltd. v. United States*, 782 F. Supp. 117, 120 (Ct. Int'l Trade 1992) ............. 9, 17

*Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 547 (Ct. Int'l Trade 1988),
*aff'd* 898 F. 2d 1577 (Fed. Cir. 1990) ............................................................... 15, 17

*Mitsubishi Heavy Indus. v. United States*, 986 F. Supp. 1428, 1433
(Ct. Int'l Trade 1997) ................................................................................ 15

*Royal Business Machines, Inc. v. United States*, 507 F. Supp. 1007, 1014
(Ct. Int'l Trade 1980) ................................................................................ 12

*Smith Corona Corp. v. United States*, 796 F. Supp. 1532, 1535 (Ct. Int'l Trade 1992) ...... 12, 23

*Ugine et al. v. United States*, 551 F. 3d 1339, 1349 (Fed. Cir. 2009) ............................. 15

**Federal Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................ 9

**Administrative Determinations**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules,
from the People's Republic of China,* 77 Fed. Reg. 73,018 (Dec. 7, 2012)
(Amended Final Determination of Sales at Less Than Fair Value and
Antidumping Duty Order) .............................................................................. 4

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,017 (Dec. 7, 2012) (Countervailing Duty Order) ................................................................................ 4

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 79 Fed. Reg. 44,399 (July 31, 2014) (Affirmative Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination) .......................... 8, 19

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 79 Fed. Reg. 76,970 (Dep't Commerce Dec. 23, 2014) (Final Determination of Sales at Less Than Fair Value) ................................................................................. 1, 9

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 80 Fed. Reg. 8,592 (Dep't Commerce Feb. 18, 2015) (Antidumping Duty Order) ............... 1, 9

*Certain Orange Juice from Brazil*, 71. Fed. Reg. 2,183 (Jan. 13, 2006) (Notice of Final Determination of Sales at Less Than Fair Value) ...................................................... 21

*Coated Free Sheet Paper from Indonesia, Korea, and the People's Republic of China: Final Decision on the Scope Issue Memorandum* (Oct. 17, 2007) .................................. 22

*Sodium Hexametaphosphate from the People's Republic of China*, 73 Fed. Reg. 6,479 (Feb. 4, 2008) (Notice of Final Determination of Sales at Less Than Fair Value) ............... 21

## I.   INTRODUCTION

On behalf of SunPower Corporation ("SunPower"), we hereby submit the following brief in support of SunPower's Rule 56.2 motion for judgment on the agency record.

## II.   RULE 56.2 STATEMENT

### A.   Administrative Decision Under Review

The administrative determination being challenged is the final scope determination of the U.S. Department of Commerce in the antidumping duty investigation of *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, Case No. A-570-010.  The Department's final affirmative antidumping duty determination was published in the *Federal Register* on December 23, 2014.  *See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 79 Fed. Reg. 76,970 (Dep't Commerce Dec. 23, 2014), AD PR 816,[1] and accompanying *Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value* (Dec. 15, 2014), AD PR 817 ("2014 AD I&D Memo").  The Department's antidumping duty order was published in the *Federal Register* on February 18, 2015.  *See Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*, 80 Fed. Reg. 8,592 (Dep't Commerce Feb. 18, 2015), AD PR 839.

---

[1]   Documents contained in the public administrative record filed by the Department on July 7, 2015, *SunPower Corporation et al. v. United States,* Court No. 15-00067, Docket No. 32-1, are identified by name and date, followed by "AD PR" and the corresponding record number.  Documents contained in the confidential administrative record filed by the Department on July 7, 2015, *SunPower Corporation et al. v. United States,* Court No. 15-00067, Docket No. 32-2, are identified by name and date, followed by "AD CR" and the corresponding record number.

B.    **Issues Presented and Summary of Argument**

    1.    **Whether the Department's "Scope Clarification" Which Expanded the Petition Scope to Include Modules and Panels Assembled in China from Cells Manufactured Outside of China without the Use of Chinese-Origin Inputs Is Unsupported by Substantial Evidence and Contrary to Law**

The Department's "scope clarification," without proper support in the administrative record and contrary to law: (i) expanded the scope considerably beyond that stated in the petition, which clearly did not cover Chinese-assembled modules/panels consisting of CSPV cells manufactured outside of China without the use of Chinese-origin inputs; (ii) is at odds with the traditional method of determining country of origin in antidumping proceedings and relevant precedent relating to the country of origin of CSPV modules/panel and CSPV cells in a prior antidumping proceeding; and (iii) was introduced at such a late stage of the investigation, after the investigation had been effectively completed based on the scope as stated in the petition, that it adversely affected the finality of the administrative action and deprived parties of procedural due process.

    2.    **Whether Petitioner's Original "Two Out of Three" Rule Scope Which Conflicts with Prior Scope Precedent Is Unsupported by Substantial Evidence and Contrary to Law**

Like the Department's "scope clarification," the "two out of three" rule scope language adopted by the Department upon initiation of the investigation and relied upon by the Department in making its preliminary determination, without proper support in the administrative record and contrary to law, is at odds with the traditional method of determining country of origin in antidumping proceedings and relevant precedent relating to the country of origin of CSPV modules/panel and CSPV cells in a prior antidumping proceeding

## III.   STATEMENT OF FACTS

### A.   Toll Assembly in China of CSPV Modules Imported Into the United States by Sunpower or Affiliated Entities Using Malaysian- or Philippines-Origin CSPV Cells

In late 2008, SunPower entered into a tolling arrangement with Jiawei Solarchina Co.,

Ltd. (based in Hong Kong, "Jiawei"), under which Jiawei's wholly-owned subsidiary,

SunEnergy (S.Z.) Co., Ltd. ("SunEnergy") (based in mainland China), performed tolling services

for SunPower on behalf of Jiawei. *See Submission of Quantity and Value Questionnaire for*

*SunPower Corporation and its Wholly Owned Subsidiaries* (Feb. 13, 2014), AD PR 103 and AD

CR 45; *Submission of Separate Rate Application for SunPower Corporation* (Mar. 31, 2014),

AD PR 286 - 290 and AD CR 255 - 260.

Under the tolling arrangement, SunPower's wholly-owned Swiss subsidiary, SunPower

Systems SARL, consigns raw materials and components – including crystalline silicon

photovoltaic ("CSPV") cells that are manufactured by SunPower affiliates located in Malaysia

and the Philippines – to SunEnergy, the Chinese toller, for final assembly into CSPV modules,

without ownership of the raw materials and components, or the finished CSPV modules

themselves, transferring to Jiawei and/or SunEnergy. *See id.; see also Supplement to SunPower*

*Corporation's Entry of Appearance* (Mar. 31, 2014), AD PR 263 and AD CR 201.  After

SunEnergy has completed the toll assembly services for the CSPV modules, certain of the CSPV

modules are shipped from SunEnergy's facilities in mainland China to the United States to be

imported by SunPower or by affiliated SunPower entities in the United States. *See id.*

### B.   Scope Determination Regarding Chinese-Assembled CSPV Modules Using Non-Chinese-Origin Cells in Prior Antidumping and Countervailing Duty Investigations

The Department previously conducted investigations and issued final affirmative

antidumping and countervailing duty determinations and orders covering *Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China,* which were published by the Department in the *Federal Register* on December 7, 2012. *See* 77 Fed. Reg. 73,018 (Dec. 7, 2012); 77 Fed. Reg. 73,017 (Dec. 7, 2012). The scope of the prior orders, as finally adopted by the Department, excluded "modules, laminates, and panels produced in the PRC from cells produced in a third-country." *See id.* Thus, because the CSPV modules toll-assembled by SunEnergy incorporated CSPV cells originating in Malaysia and/or the Philippines, these modules were excluded from the previously issued antidumping and countervailing duty orders.

In connection with these prior investigations, SolarWorld Americas, Inc. ("SolarWorld" or "Petitioner"), on the day prior to the initiation of the investigation, had sought to include within the scope all CSPV modules assembled in China regardless of the origin of the CSPV cells. *See Case Brief of Changzhou Trina Solar Energy Co., Ltd.* (Oct. 16, 2014), AD PR 784, at 4, *citing Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China* (Oct. 9, 2012), at 8, ("2012 AD I&D Memo").

The Department, however, rejected Petitioner's proposal, explaining that "'using a substantial transformation analysis, the Department has determined that modules from [China] are those that have been assembled in [China] using solar cells produced in [China].'" *Id.* Essentially, the Department excluded Chinese-assembled CSPV modules incorporating non-Chinese-origin CSPV cells on the basis that the origin of a CSPV cell is determinative of the country of origin of a CSPV module for trade remedy purposes, such that CSPV modules assembled in China using non-Chinese-origin cells would not be of Chinese origin for trade remedy purposes because the non-Chinese-origin CSPV cells would not have been substantially

transformed by virtue of their assembly into CSPV modules in China.  *See Scope Clarification:*

*Antidumping and Countervailing Duty Investigations of Crystalline Silicon Photovoltaic Cells,*

*Whether or Not Assembled into Modules, from the People's Republic of China* (Mar. 19, 2012)

("2012 Scope Clarification Memo") (attached to *Respondent's Case Brief* (Oct. 16, 2014) as

Exhibit 1, AD PR 780).  As the Department explained in greater detail:

> Based on our analysis of the foregoing factors we find that solar
> module assembly does not substantially transform solar cells such
> that it changes the country-of-origin . . . . [M]odule assemble does
> not substantially alter the essential nature of solar cells nor does it
> constitute significant processing such that it changes the country-
> of-origin of the cell . . . . Therefore, we believe the scope should be
> clarified to state that modules/panels produced in a third-country
> from solar cells produced in [China] are covered by the scope;
> however, modules/panels produced in [China] from solar cells
> produced in a third-country are not covered by the scope.

*Id.*

In the 2012 AD I&D Memo, the Department further commented that "it may not accept a

proposed scope that covers merchandise that originates from a third country not covered by the

investigation.  As noted above, the scope of an AD or CVD order is limited to merchandise that

originates in the country covered by the investigation."  2012 AD I&D Memo, at 8 (attached to

*Respondent's Case Brief* (Oct. 16, 2014) as Exhibit 2, AD PR 780).  The Department concluded

that finding "all modules assembled in [China] are covered by the scope of the investigation, no

matter where the solar cells in the module were produced, would either necessitate making

inconsistent country-of-origin determinations for a single product, or require ignoring country-

of-origin when considering whether merchandise entering the United States is covered by the

scope of the investigation."  *Id.; see also* 2012 Scope Clarification Memo, at 8 (attached to

*Respondent's Case Brief* (Oct. 16, 2014) as Exhibit 1, AD PR 780).  The Department further

suggested that Petitioner would have the option of bringing additional petitions "to address any

dumping concerns it has regarding solar modules/panels assembled from solar cells produced in a third country." *Id.*[2]

### C. Antidumping Duty Investigation of Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China and Taiwan

On December 31, 2013, SolarWorld requested that the Department and the U.S. International Trade Commission initiate new antidumping and countervailing duty investigations concerning *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China and Taiwan. See Petition for the Imposition of Antidumping and Countervailing Duties Pursuant to Sections 701 and 731 of the Tariff Act of 1930, As Amended* (Dec. 31, 2013), AD PR 1 - 10 and AD CR 1 - 11.

The stated purpose of the new investigations was to address alleged shifts in final CSPV cell production away from China to third countries, including, in particular, Taiwan, and the resulting exclusion of any CSPV modules that were manufactured/assembled in China using such third-country cells from the scope of the 2012 orders. *See id.* at 3. Accordingly, in its petition, SolarWorld proposed a product scope that read, in relevant part:

> The merchandise covered by this investigation is crystalline silicon photovoltaic cells, and modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including building integrated materials.
>
> For purposes of this investigation, subject merchandise also includes modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells completed or partially manufactured within a customs territory other than that subject country, using ingots, wafers, or partially manufactured cells sourced from the subject country.[3]

---

[2]   The Department also rejected Petitioner's alternative request to "clarify" the scope of the investigation to include modules/panels produced in China from solar cells produced in a third country when the wafer production process for the cell occurred in China. *Id.* at 9.

[3]   The reference to "subject country" should be understood to mean China.

*Id.* at 11.

In a letter to SolarWorld, dated January 6, 2014, the Department stated that "there is ambiguity in your proposed scope as to the amount or extent of production that must take place in the subject country for modules, laminates, and/or panels ('solar panels') consisting of crystalline silicon photovoltaic cells ('solar cells') completed or partially manufactured within a customs territory other than the subject country to be covered by the scope." *Letter from Howard Smith, Program Manager, AD/CVD Operations, Office IV, Enforcement and Compliance to Wiley Rein LLP* (Jan. 6, 2014), at 3, AD PR 17 and AD CR 12.

SolarWorld responded by stating: "Petitioner intends that the present proceeding cover panels and modules assembled in a subject country (*e.g.*, China"), even if the cells in those modules are produced in a different country (*e.g.*, Taiwan or a non-subject country), if those cells are made from ingots, wafers, or partially manufactured cells that were manufactured in the subject country (*e.g.*, China). This would cover situations where the panels or modules are assembled in a subject country from cells made in a different country but: 1) the ingots used for the wafers made into the cells were manufactured in the subject country; 2) the wafers made into the cells were manufactured in the subject country; or 3) the cell manufacturing process began in the subject country and then was completed in a non-subject country." *Supplement II to Petition for the Imposition of Antidumping and Countervailing Duties: Certain Crystalline Silicon Photovoltaic Products from China and Taiwan* (Jan. 13, 2014), at 2, AD PR 25 and AD CR 17.

The Department published a notice initiating the Chinese antidumping on January 29, 2014. *See* 79 Fed. Reg. 4,661 (Jan 29, 2014), AD PR 39. The Department adopted a slightly modified version of the petition scope, as proposed by SolarWorld, in its initiation notice, which read, in relevant part:

> For purposes of these investigations, subject merchandise also
> includes modules, laminates and/or panels assembled in the subject
> country consisting of crystalline silicon photovoltaic cells that are
> completed or partially manufactured within a customs territory
> other than that subject country, using ingots that are manufactured
> in the subject country, wafers that are manufactured in the subject
> country, or cells where the manufacturing process begins in the
> subject country and is completed in a non-subject country.

*Id.* at 4,667.  In addition, the Department noted that "the Department issued questions to, and

received responses from, Petitioner pertaining to the proposed scope to ensure that the scope

language in the Petitions would be an accurate reflection of the products for which the domestic

industry is seeking relief."  *Id.* at 4,662.  The Department further apprised interested parties that

"when considering product coverage with respect to these investigations, the Department will be

informed by the product coverage decisions that it made in the investigations that resulted in the

existing [2012] orders on crystalline silicon photovoltaic cells, whether or not assembled into

modules, from [China]."  *Id.*

The Department adopted the scope language included in the initiation notice as part of its

preliminary affirmative antidumping duty determinations.  *See* 79 Fed. Reg. 44,399 (July 31,

2014), AD PR 699.  As such, in the preliminary affirmative antidumping duty determination, the

Department maintained, in defining which products were within the scope of its investigation,

the so-called "two out of three" rule under which Chinese-assembled modules/panels

incorporating third-country CSPV cells that, in turn, incorporated Chinese-origin inputs, such as

ingots, wafers, or partially-manufactured cells, would be considered subject merchandise (but not

Chinese-assembled modules/panels incorporating third-country CSPV cells that did not

incorporate Chinese-origin inputs).

However, more than two months after its preliminary antidumping duty determination,

and even after concluding its verifications of mandatory respondents, in a memorandum to all

interested parties, dated October 3, 2014, the Department unilaterally proposed a "scope clarification" that dramatically would expand the product scope of the pending investigations. *Memorandum to All Interested Parties Regarding Antidumping and Countervailing Duty Investigations of Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China and the Antidumping Duty Investigation of Certain Crystalline Silicon Photovoltaic Products from Taiwan: Opportunity to Submit Scope Comments* (Oct. 3, 2014) ("Oct. 3 Scope Memo"), AD PR 765. Specifically, the Department proposed that subject merchandise for the China investigations would, in relevant part, include "all modules, laminates and/or panels assembled in [China] that contain crystalline silicon photovoltaic cells produced in a customs territory other than [China]." *Id.* The record contains no information that this proposed "scope clarification" either was requested or supported by Petitioner at the time of its initial dissemination.

The Department adopted the expanded product scope enunciated in the Oct. 3 Scope Memo as part of its final affirmative antidumping duty determination, issued on December 16, 2014. *See* 70 Fed. Reg. 76,970 (Dec. 23, 2014), AD PR 816; *see also* 80 Fed. Reg. 8,592 (Feb. 18, 2015) (Antidumping Duty Order), AD PR 839.

## IV.   STANDARD OF REVIEW

The Court reviews antidumping duty determinations made by the Department to determine whether such determinations are supported by substantial evidence in the record and otherwise in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). Specifically, the Department's discretion to define the scope of an investigation "must be exercised reasonably and any consequent determination must be supported by substantial evidence in the record." *Minebea Co., Ltd. v. United States*, 782 F. Supp. 117, 120 (Ct. Int'l Trade 1992).

## V.     ARGUMENT

### A.     The Department's "Scope Clarification" Which Expanded the Petition Scope to Include Modules and Panels Assembled in China from Cells Manufactured Outside of China without the Use of Chinese-Origin Inputs Is Unsupported by Substantial Evidence and Contrary to Law

Although the Department has considerable discretion to determine the scope based on the results of its investigation, the scope of any antidumping final determination and resulting order ordinarily should: (i) effectuate the intent of the petitioner, as reflected in the petition, and, if materially changed from the scope stated in the petition, including by being expanded beyond the petition scope, must be supported by (a) substantial evidence from the record developed during the investigation, and (b) clearly articulated and persuasive reasoning; (ii) define what is subject merchandise consistently with country of origin rules, as applied under the antidumping laws, and any relevant precedent; and (iii) be presented at a sufficiently early stage in the investigation to ensure that the investigation is conducted appropriately and supporting evidence is developed, and that all parties are afforded adequate due process and a meaningful opportunity to participate.

The Department's "scope clarification," as adopted in the final determination and resulting antidumping duty order, fails on each of these points, and, as such, is: (i) unsupported by substantial record evidence; and (ii) and arbitrary and based on an impermissible construction of the Department's statutory authority.  Indeed, the Department's "scope clarification" was, using the words of the Court in *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1187 (Ct. Int'l Trade 2004), "made at a late stage in the investigation and in irregular fashion; was reached without a thorough inquiry; and was based on unpersuasive reasoning." Specifically, as discussed below, the Department's "scope clarification," as adopted in the final determination and resulting antidumping duty order: (i) expanded the scope considerably beyond

that stated in the petition, which clearly did not cover Chinese-assembled modules/panels

consisting of CSPV cells manufactured outside of China without the use of Chinese-origin

inputs, without the support of substantial record evidence and/or clear or persuasive reasoning;

(ii) is at odds with the traditional method of determining country of origin in antidumping

proceedings and relevant precedent relating to the country of origin of CSPV modules/panel and

CSPV cells in a prior antidumping proceeding; and (iii) was introduced at such a late stage of the

investigation, after the investigation had been effectively completed based on the scope as stated

in the petition, that the "scope clarification" could not have been based on substantial evidence

developed in the investigation, which also calls into question the validity of the other aspects of

the Department's final determination, and deprived the parties of their full rights to due process

and participation in the investigation.  Each of the above considerations supports a ruling by the

Court that the Department's final determination is unsupported by substantial evidence and is

contrary to law, and certainly, in combination, compels such a ruling.

> ### 1.   The Department's "Scope Clarification" Materially Expanded the Scope Beyond that Stated in the Petition

The Department, which characterized the Oct. 3 Scope Memo as a mere "clarification" of

the scope, instead materially expanded the scope beyond that stated in the petition.  As a result,

the scope captures *all* Chinese-assembled CSPV modules incorporating non-Chinese-origin

CSPV cells, whereas previously a much smaller subset of such modules were captured pursuant

to Petitioner's "two out of three" rule scope formulation (specifically, Chinese-assembled CSPV

modules incorporating non-Chinese-origin CSPV cells manufactured using Chinese-origin

inputs).  The Department's expansion of the scope beyond that stated in the petition is

unsupported by substantial record evidence and contrary to law.

The Department's authority and discretion to define and clarify the scope of an investigation to reflect the intent of the petitioner is well established. *See Diversified Prods. Corp. v. United States*, 572 F. Supp. 882 (Ct. Int'l Trade 1983). However, the Department's authority and discretion to materially expand the scope during the course of an investigation is limited: "Each stage of the proceeding maintains the scope passed on from the previous stage. Thus, the class or kind of merchandise described in the petition, which becomes the subject of investigation . . . is the subject of the preliminary injury determination . . . and the final determinations." *Royal Business Machines, Inc. v. United States*, 507 F. Supp. 1007, 1014 (Ct. Int'l Trade 1980). The Court (and the Department), therefore, have adhered to the principle that the Department "must exercise caution in redefining scope in midstream to include items which were clearly known about and excluded at the time of initiation of the investigation and, indeed in this case, at the time of the preliminary determination." *Smith Corona Corp. v. United States*, 796 F. Supp. 1532, 1535 (Ct. Int'l Trade 1992); *see also Louis Dreyfus Citrus Inc. v. United States*, 495 F. Supp. 2d 1338, 1355 (Ct. Int'l Trade 2007).

There is no question that, like the merchandise described in the proposed modification of the scope at issue in *Smith Corona*, which was proposed after the preliminary determination, *all* Chinese-assembled CSPV modules incorporating non-Chinese CSPV cells, regardless of the origin of the origin of the CSPV cell inputs, were not covered by the scope of the investigation at the outset of the investigation.

Furthermore, as intimated by the Court in *Royal Business Machines and Allegheny Bradford*, the principal reason the Department may not materially expand the scope in the midst of the investigation presumably is that any expansion will result in the Department's investigation covering one category of products, but its final determination covering another

category of products. In this investigation, the Department investigated modules/panels with non-Chinese-origin CSPV cells containing Chinese-origin inputs, but issued a final determination as to modules/panels with non-Chinese-origin CSPV cells, regardless of the origin of the CSPV cell inputs. As such, neither the scope determination, nor other aspects of the Department's final determination, given the extremely late stage of the "scope clarification," could have been based on substantial evidence developed in the investigation.

Finally, as detailed in Section V.A.3, below, none of the Department's purported justifications for its "scope clarification" reasonably overcome the presumption against materially expanding the scope of an investigation midstream. Accordingly, the Department's adoption of the "scope clarification" in its final determination should be rejected.

> 2. **The Department's "Scope Clarification" Conflicts with the Traditional and Judicially-Approved Method of Determining Country of Origin in Antidumping Proceedings and the Department's Own Scope Determination Precedent**

The "scope clarification" first proposed by the Department in the Oct. 3 Scope Memo and ultimately adopted by the Department, in that it compels a contrary country of origin determination, departs from the traditional and judicially-approved "substantial transformation" test for determining country of origin in antidumping proceedings and directly conflicts with the scope determination the Department made in connection with the investigations resulting in the imposition of antidumping and countervailing duty orders in December 2012.

Specifically, as a result of the Department's "scope clarification," a Chinese-assembled CSPV module incorporating a non-Chinese-origin CSPV cell is subject to the more recent antidumping duty investigation and resulting order as a product of Chinese origin, whereas the identical module is excluded from the prior antidumping and countervailing duty investigations as a product of the country where CSPV cell production occurred. The prior determination was

premised on a finding by the Department that the assembly of a third-country CSPV cell into a

module in China does not "substantially transform" that CSPV cell into a product of China.

In connection with the present investigation, however, the Department suggests that this

conflicting scope determination is not inconsistent with, but merely builds upon, the prior scope

determination and ultimately justifies the "scope clarification" by reference to a number of

special circumstances: "We do not agree that our analysis is inconsistent with *Solar I*. Rather, in

these investigations we are building upon our decisions in *Solar I* and finding, given the

circumstances before us, that it is appropriate to go beyond our decision concerning country of

origin from *Solar I*." 2014 AD I&D Memo, at 15-16, AD PR 817.   Accordingly, "based on

these considerations . . . the Department finds it appropriate to determine for purposes of these

investigations that the country of origin of [Chinese-assembled CSPV modules incorporating

non-Chinese-origin CSPV cells] is [China]." *Id.* at 15.

Furthermore, the Department, while admitting that the country of origin of Chinese-

assembled CSPV modules incorporating non-Chinese-origin CSPV cells now is China, stated

that "no product would at any time have two countries of origin for AD/CVD purposes . . . The

country of origin of these modules, for AD/CVD purposes, is only [China]" *Id.* at 16.   However,

in the case of the CSPV modules imported into the United States by SunPower and affiliated

entities, for example, which are toll assembled in China, the country of origin of the modules

now is China, despite the fact that the CSPV cells incorporated into such modules originate

either in Malaysia or the Philippines.   Accordingly, it is clear that identical modules,

notwithstanding the fact that there have been two separate investigations, impermissibly would

have two countries of origin for trade remedy purposes.

While the Department unquestionably has the authority to define and clarify the scope of an investigation, including to "carry out its mandate to administer the law effectively and in accordance with its intent, *Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 547 (Ct. Int'l Trade 1988), *aff'd* 898 F. 2d 1577 (Fed. Cir. 1990), that authority "is limited by the requirement that it be exercised reasonably and that any consequent determination be supported by substantial evidence in the administrative record." *Mitsubishi Heavy Indus. v. United States*, 986 F. Supp. 1428, 1433 (Ct. Int'l Trade 1997). That reasonable exercise of discretion surely extends to country of origin determinations, which the Court has recognized as critical to the administration of the antidumping laws: "Because antidumping orders apply to merchandise from particular countries, not individual producers, determining the country where the unfairly traded merchandise is produced or manufactured is fundamental to the proper administration and enforcement of the antidumping statute." *E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854 (Ct. Int'l Trade 1998). Indeed, while the Department has "discretion in defining the criteria for country-of-origin determinations," that discretion is not boundless, particularly with respect to any departure from prior precedent: "[The Department] is obligated to follow prior precedent absent some legitimate reason for departing from it." *Ugine et al. v. United States*, 551 F. 3d 1339, 1349 (Fed. Cir. 2009), *citing Consol. Bearings Co. v. United States*, 348 F. 3d 997 (Fed Cir. 2003).

As the record indicates, Petitioner has a sophisticated understanding the sourcing and production practices in the global CSPV cell and module industry and is well versed in the operation of the antidumping laws. The underlying investigation was Petitioner's second opportunity to cover subject products of concern. If Petitioner was concerned about covering all CSPV modules/panels assembled using third-country CSPV cells, Petitioner could have,

consistent with the Department's prior scope determination, targeted those third countries, which did occur in the case of Taiwan.  Accordingly, there is no justification for the Department, particularly absent any request by Petitioner, to expand the scope in a way that upends the traditional country of origin analysis and departs from prior relevant precedent, rather than requiring Petitioner to request the initiation of investigations of other countries, as appropriate.

Finally, as detailed in Section V.A.3, below, none of the Department's purported justifications reasonably support the Department's departure from the judicially-approved "substantial transformation" test for determining the country of origin of merchandise for antidumping purposes or its prior country of origin precedent regarding identical merchandise.

### 3.   The Department's Justifications for Expanding the Scope Contrary to the Traditional and Judicially-Approved Method of Determining Country of Origin in Antidumping Proceedings and Relevant Prior Precedent Are Without Merit

As noted above, none of the various "considerations" cited by the Department, either individually, or collectively, demonstrate any legitimate or reasonable justification for the Department's material expansion of the scope or the Department's departure from its prior scope precedent and the substantial transformation analysis underpinning that precedent.  Accordingly, the Department's "scope clarification" should be rejected as unsupported by substantial record evidence and contrary to law.

#### a.   The Department's Oct. 3 Scope Memo and Resulting Scope Determination Do Not Effectuate the Intent of the Petitioner

The Department attempts to justify its expansion of the scope and departure from the prior scope determination and underlying substantial transformation analysis by suggesting that the "scope clarification" "reflects the intent of the Petition." 2014 I&D Memo, at 12 and 19, AD PR 817.  Indeed, the Department asserts that its "scope clarification" does not constitute an

expansion of the scope at all "because the Petition expresses the Petitioner's intent to cover modules assembled in China using third-country cells." 2014 I&D Memo, at 24, AD PR 817.[4]

The Department rightly notes, and the Court recognizes, that the Department has the discretion to "define and clarify the scope of an antidumping investigation in a manner which reflects the intent of the petition." *Minebea Co., Ltd. v. United States*, 782 F. Supp. 117, 120 (Ct, Int'l Trade 1992), *citing Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 547 (Ct. Int'l Trade 1988), *aff'd* 898 F. 2d 1577 (Fed. Cir. 1990). Nevertheless, as noted above, that "discretion must be exercised reasonably and any consequent determination must be supported by substantial evidence in the administrative record." *Id.*, *citing American Lamb Co. v. United States*, 785 F. 2d 994, 1001 (Fed. Cir. 1986). Although Petitioner may have stated that it was initiating new trade remedy proceedings targeting both China and Taiwan as a means of addressing the "loophole" it believed was created as a result of the Department's prior scope determination, the administrative record in no way reflects any intention on the part of Petitioner to broadly capture all Chinese-assembled CSPV modules regardless of the country of origin of the CSPV cells (or Chinese-origin inputs) incorporated into such modules. In fact, Petitioner's own statements belie the contrary assertion by the Department that "the Petitioner's intent is a scope that covers all solar modules assembled in [China] using third-country cells." *Id.*

As noted above, the petition introduced the "two out of three" rule scope formulation. *See Petition for the Imposition of Antidumping and Countervailing Duties Pursuant to Sections 701 and 731 of the Tariff Act of 1930, As Amended* (Dec. 31, 2013), at 11, AD PR 1 - 10 and AD CR 1 - 11. Presumably, Petitioner, which, having previously succeeded in obtaining relief under

---

[4]    Furthermore, the Department suggests, without citing to any supportive authority, that the fact that the Department, rather than Petitioner, proposed the "scope clarification" in response to interested party comments somehow authorizes an expansion of the scope. *Id.*

the antidumping and countervailing duty laws and, therefore, should be assumed to have a

sophisticated understanding of the operation of the relevant statutes, consciously fashioned this

novel scope, which explicitly required that the ingots, wafers, or partially manufactured CSPV

cells used in non-Chinese CSPV cell production originate in China, for Chinese-assembled

modules using such cells to be covered.  Indeed, when pressed by the Department at the outset of

the investigation regarding the clarity of the scope language, Petitioner unequivocally stated its

intention to cover only those Chinese-assembled CSPV modules that satisfy the "two out of

three" rule criteria.  *See Supplement II to Petition for the Imposition of Antidumping and

Countervailing Duties: Certain Crystalline Silicon Photovoltaic Products from China and

Taiwan* (Jan. 13, 2014), at 2, AD PR 25 and AD CR 17.  In the face of such an explicit

statement, the Department simply cannot credibly assert as a basis for its conflicting scope

determination that the intent of the petition otherwise would be frustrated.

> **b.      The Department's Oct. 3 Scope Memo and Resulting Scope
> Determination Are Disproportionate Responses to Legitimate
> Administrability and Enforceability Concerns**

The Department further attempts to justify its expansion of the scope departure from the

prior scope determination and underlying substantial transformation analysis by asserting that the

"scope clarification" "will make the resulting order(s) substantially easier to administer and

enforce (for both the Department and CBP)."  2014 I&D Memo, at 12 and 19, AD PR 817.

The Department further suggests that concerns raised by interested parties (*i.e.*, respondents)

regarding the practical difficulties inherent in applying the "two out of three" rule somehow are

resolved by rejecting both the prior scope determination and the "two out of three" rule: "The

scope being adopted in these investigations resolves interested parties' concerns . . . by covering

*all* modules assembled in [China] from third-country cells.  Under the scope being adopted for

these final determinations, producers and exporters would not need to track for purposes of these proceedings the ingots, wafers, or partial cells that are being used in the third-country cells being assembled into modules in China." 2014 I&D Memo, at 13, AD PR 817 (emphasis in original). The Department has abused its discretion by adopting a scope that makes administering and enforcing an order by the Department and U.S. Customs and Border Protection ("CBP") easier while simultaneously burdening exponentially greater trade on the basis of a country of origin determination that, as detailed above, directly contradicts prior precedent.

Petitioner's "two out of three" rule scope formulation, which itself, as detailed below, is flawed, may be more difficult to administer, but the Department and CBP ably have demonstrated that they can effectively administer scope language that addresses imported merchandise, as well as certain key constituent components. Indeed, CBP currently is administering a Department-mandated certification protocol in connection with the 2012 antidumping and countervailing duty orders covering non-Chinese-assembled CSPV modules incorporating Chinese-origin CSPV cells and had implemented a similar protocol in connection with the preliminary determination in the more recent investigation. *See* 79 Fed. Reg. 44,399, 44,401 - 44,402 (July 31, 2014), AD PR 699. At no time has the Department articulated that the above-described certification protocol is an inadequate means of administering and enforcing the "two out of three" rule scope formulation.

Furthermore, any administrative burden associated with the implementation of this scope predominantly lies with non-U.S. CSPV cell and module producers and exporters and the U.S. importers of such CSPV modules. SunPower, for example, implemented a wafer tracking protocol to ensure compliance with what it reasonably understood would be the scope of any resulting order. SunPower alluded to these efforts in submissions filed with the Department on

May 29, 2014 and July 23, 2014 and reported to the Department in connection with the latter

submission that only approximately [        ] of the CSPV cells used by SunPower's Chinese

toller incorporate Chinese-origin wafers. *See SunPower Corporation's Response to Request for*

*Information* (May 29, 2014), AD PR 489 and AD CR 462; *Supplement to SunPower*

*Corporation's Separate Rate Application* (July 23, 2014), AD PR 692 and AD CR 666.

Accordingly, the Department's misplaced reliance on administrability and enforcement as

bases for its "scope clarification" are contrary to law and otherwise not supported by substantial

record evidence.

c.   <b>The Department's Oct. 3 Scope Memo and Resulting Scope<br>Determination Are Inappropriate Means of Addressing<br>Speculative Circumvention or Evasion Concerns</b>

Finally, the Department erroneously asserts that the "scope clarification" is required to

"reduce as much as possible additional opportunities for evasion like those that resulted in after

the imposition of AD and CVD cash deposits in *Solar I*" due, in no small measure, to the fact

that "the solar products industry involves a complex and readily adaptable global supply chain."

2014 I&D Memo, at 13 and 18, AD PR 817. However, the Department's contortion of the scope

in contravention of a prior scope determination specifically to counter possible future

circumvention or evasion cannot be permitted in light of the fact that the antidumping laws

permit the petitioning industry to seek redress for alleged circumvention or evasion through

alternative mechanisms.

The onus is on an aggrieved domestic industry to deploy the antidumping laws to

address, as appropriate, these changing circumstances, regardless of how complex the industry

might be. Indeed, Petitioner did just that by initiating the more recent China and Taiwan

investigations, which, as noted above, was suggested as an appropriate remedy by the

Department in its 2012 I&D Memorandum.  Given the country of origin determination that the Department made in connection with the prior investigation, Petitioner also could have initiated investigations targeting, for example, Malaysian-origin CSPV cells assembled in China into CSPV modules, but, for whatever reason, elected not to do so.  Alternatively, Petitioner could request that the Department initiate an anti-circumvention inquiry following the issuance of any order.

These remedial measures are in keeping with the antidumping laws, whereas a unilateral determination by the Department to abandon what presumably was a carefully crafted scope on the basis that a conflicting scope, which, in essence, imposes a worldwide order on CSPV cells, peremptorily addresses speculative circumvention or evasion concerns is contrary to law and not otherwise supported by substantial record evidence.

   **4.**  **The Timing of the Department's Scope Clarification Calls the Validity of the Department's Final Determination into Question and Deprived Parties of Procedural Due Process Rights**

The Department's "scope clarification" was first broached more than two months after the preliminary determination and was first adopted only in connection with the investigation as part of the Department's final affirmative antidumping duty determination.  This timing: (i) undermined the administrative record developed by the Department during the course of the investigation, which was based on what was considered in accordance with the prior scope to be "subject merchandise" at the outset of the investigation and in the preliminary determination;[5] (ii) calls into question the finality and validity of the Department's final determination; and (iii)

---

[5] The Department itself previously has rejected attempts to amend the scope of an investigation after issuing a preliminary determination on the basis that "amending the scope language . . . would, in effect, serve to expand the current scope of subject merchandise that was subject to [the] investigation at too late a stage in the proceeding." *See Final Determination of Sales at Less than Fair Value: Sodium Hexametaphosphate from the People's Republic of China*, 73 Fed. Reg. 6,479 (Feb. 4, 2008), and accompanying Issues and Decision Memorandum at Comment 1; *See also Notice of Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances: Certain Orange Juice from Brazil*, 71. Fed. Reg. 2,183 (Jan. 13, 2006).

deprived interested parties of due process and their ability to avail themselves of key procedural

safeguards during the course of the investigation.

Although the Department generally may exercise discretion in defining the scope of an

investigation to ensure the investigation is appropriately conducted, depending on the

circumstances, and "there is no clear point during the course of an antidumping investigation at

which Commerce loses the ability to adjust the scope," "Commerce's discretion to define and

clarify the scope of an investigation is limited in part by concerns for the finality of

administrative action, which caution against including a product that was understood to be

excluded at the time the investigation began." *Allegheny Bradford Corp. v. United States*, 342 F.

Supp. 2d 1172, 1187-1188 (Ct. Int'l Trade 2004).  For example, by basing the final

determination on its "scope clarification" the Department's dumping margin calculations would

have been faulty as they were premised on sales of merchandise subject to the scope in effect at

the outset of the investigation (and, furthermore, the Department's ability to identify respondent

parties and accord eligible parties separate rate status would have been compromised by the

absence of quantity and value and separate rate submissions, respectively, relating to Chinese-

assembled CSPV modules incorporating non-Chinese-origin CSPV cells known to have been

manufactured without any Chinese-origin inputs).[6] *See Final Decision on the Scope Issue*

*Memorandum, Coated Free Sheet Paper from Indonesia, Korea, and the People's Republic of*

*China* (Oct. 17, 2007) ("Moreover, we note that granting such a [scope] clarification would mean

---

[6]      The Court should be wary of any suggestion by the Department that its data were valid based on the over-
reporting by respondent parties of sales and shipments of CSPV modules incorporating non-Chinese-origin
CSPV cells because of their inability to definitively track the origin of the wafers or other inputs used in
CSPV cell production, in that there is no definitive evidence in the record substantiating such an assertion.
Furthermore, the Department's assertion that it gleaned information regarding the broader category of
products covered by the final, but not initial, scope of the investigation during the course of its investigation
of the narrower category of products covered by the initial scope does not constitute substantial evidence
justifying the broader scope coverage.

that a significant number of sales in the investigations would not be included in the margin

calculations, raising a potential procedural safeguards concern.").

   The Department's "scope clarification," which took effect only in December 2014, nearly

one year after the initiation of the investigation, raises the above-described concerns about the

finality of the administrative action, but perhaps more importantly substantially deprived parties

of due process. Indeed, the Court has recognized that "procedural safeguards such as

opportunities to respond and to be heard are built into the unfair trade laws. To change the scope

definition at late stages of the proceedings deprives the parties of the full benefits of those

procedures." *Smith Corona Corp. v. United States*, 796 F. Supp. 1532, 1535 (Ct. Int'l Trade

1992). The Department relies upon the fact that its initiation notice invited scope comments and

that the preliminary determination noted that the Department was continuing to analyze

interested parties' scope comments. *See* 2014 I&D Memo, at 23, AD PR 817. According to the

Department, these "notifications . . . provided parties with adequate due process with regard to

this scope clarification." *Id.* at 24. However, as noted above, the Department apprised interested

parties in the initiation notice that "when considering product coverage with respect to these

investigations, the Department will be informed by the product coverage decisions that it made

in the investigations that resulted in the existing [2012] orders on crystalline silicon photovoltaic

cells, whether or not assembled into modules, from [China]." 79 Fed. Reg. 4,661 (Jan 29, 2014),

AD PR 39. Thus, it is unpersuasive for the Department to claim that its continuing evaluation of

interested parties' scope comments adequately informed such parties that the Department would

be rejecting the relevant 2012 scope determination in favor of a "scope clarification" that

dramatically expanded the scope as stated in the petition and in the Department's initiation notice

and preliminary determination.

Thus, the Court should reject the Department's untimely "scope clarification."

Finally, should the Court accede to the Department's "scope clarification," the Court must prevent the retroactive application of the "scope clarification" to entries made prior to the publication of the antidumping duty order on February 18, 2015, or at least prior to the publication of the Department's final determination in the *Federal Register* on December 23, 2014.

**B.     The Original "Two Out of Three" Rule Scope Conflicts with the Scope Determination Made by the Department in Connection with the Prior Investigations Unsupported by Substantial Evidence and Contrary to Law**

For the same reasons stated above, the "two out of three" rule scope formulation should be rejected as inconsistent with the 2012 scope determination in that it too abandons the judicially-approved "substantial transformation" test for determining country of origin for antidumping purposes and ignores the Department's prior determination that the country of origin of a CSPV module for antidumping and countervailing duty purposes is the country of origin of the CSPV cells.

The "two out of three" rule scope formulation contradicts the Department's prior determination that the origin of a CSPV module is dependent on the origin of the CSPV cell incorporated into that module, by considering the origin of the CSPV cell inputs in determining the origin of the cell and module.  There has been no suggestion, however, that the origin of a cell input, such as an ingot or wafer, affects the origin of a CSPV cell.  As a result, it is reasonable to treat any CSPV cell manufactured outside of China as originating in the country of cell manufacture regardless of the origin of the cell inputs and, as such, any CSPV module would, based on the Department's prior determination, assume the origin of the CSPV cell for antidumping purposes.

There is absolutely no basis whatsoever for departing from the Department's prior scope determination, which was based on a reasoned assessment of the country of origin of CSPV modules pursuant to the "substantial transformation" test.  Accordingly, to the extent the Court rejects the Department's "scope clarification," the Court also must reject the original "two out of three" rule scope as unsupported by substantial record evidence and contrary to law.

## VI.    CONCLUSION

SunPower respectfully requests that the Court find the scope determinations in the contested antidumping duty investigation to be unsupported by substantial record evidence and contrary to law and remand the determinations to the Department for determinations consistent with the Court's opinion.

Respectfully submitted,

Daniel J. Gerkin
Jerome J. Zaucha
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Tel: (202) 778-9168
Fax: (202) 778-9100

*Counsel to SunPower Corporation*

October 5, 2015

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's July 1, 2015 Order, *SunPower Corporation et al. v. United States,* Court No. 15-00067, Docket No. 31, the undersigned certifies that this brief complies with the word count requirement.  The word count for SunPower Corporation's Brief in Support of SunPower Corporation's Rule 56.2 Motion for Judgment on the Agency Record is 7,937 words.

Daniel J. Gerkin
Jerome J. Zaucha
K&L Gates LLP

*Counsel to SunPower Corporation*

October 5, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 5, 2015, the foregoing Brief in Support of SunPower Corporation's Rule 56.2 Motion for Judgment on the Agency Record was filed electronically with the Court through the CM/ECF System.  Pursuant to the Court's Administrative Order 02-01, this filing constitutes service on all of the parties participating in this appeal, *SunPower Corporation et al. v. United States*, Court No. 15-00067.

_____
Daniel J. Gerkin