## UNITED STATES COURT OF INTERNATIONAL TRADE

SUNPOWER CORPORATION AND
SUNPOWER CORPORATION, SYSTEMS ) ) )

        Plaintiff )

        v. )        Court No. 15-00067

UNITED STATES )

        Defendant )

### AMENDED COMPLAINT

In accordance with Rules 3(a)(2) and 7(a)(1) of the Rules of the United States Court of International Trade (the "Court"), Plaintiffs SunPower Corporation and SunPower Corporation, Systems (collectively, "SunPower"), by and through their undersigned counsel, K&L Gates LLP, bring this civil action and alleges the following:

### JURISDICTION

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) to contest the final affirmative antidumping duty determination made by the U.S. Department of Commerce (the "Department") in connection with its antidumping duty investigation of *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China. See* 79 Fed. Reg. 76,970 (Dec. 23, 2014). Prior to the final determination, the Department conducted its investigation on the basis of the scope as it had been defined in the petition. However, in connection with making its final determination, the Department adopted a "scope clarification" that it had first proposed on October 3, 2014, long after making its preliminary affirmative antidumping and

countervailing duty determinations, which had the effect of dramatically expanding the product scope of the antidumping duty investigation. As a result of the final affirmative determination by the Department and the final affirmative material injury determination subsequently made by the U.S. International Trade Commission ("Commission"), the Department published an antidumping duty order that reflected the expanded product scope. *See* 80 Fed. Reg. 8,592 (Feb. 18, 2015).

## STANDING

2.    As an importer of subject merchandise during the period of investigation, as well as a U.S. producer of a domestic like product, SunPower is an interested party within the meaning of 19 U.S.C. § 1516a(f)(3), 19 U.S.C. § 1677(9)(A) and (C), and 28 U.S.C. § 2631(k)(1).

3.    Furthermore, having entered an appearance and its counsel having been granted Administrative Protective Order access, and having made several substantive submissions to the Department during the course of the investigation, SunPower was a "party to the proceeding" within the meaning of 28 U.S.C. § 2631(j)(1)(B) and, therefore, has standing to commence this action pursuant to 28 U.S.C. § 2631(c). *See also* 19 C.F.R. § 351.102(b)(3).

4.    In addition, on February 13, 2014, SunPower responded to the Department's Quantity and Value Questionnaire on behalf of itself, as well as two of its wholly owned subsidiaries, SunPower Corporation, Systems and SunPower North America LLC. In its response, the SunPower entities collectively presented export sales data based on their own import data during the relevant time period.

5.    Thus, although the initial entry of appearance was not specifically made on behalf of SunPower Corporation, Systems, the February 13, 2014 submission, which was accepted by

the Department, was made on behalf of SunPower Corporation, Systems and definitively
established SunPower Corporation, Systems as both an "interested party" and a "party to the
proceeding" within the meaning of 19 C.F.R § 351.102(b)(36) insofar as SunPower Corporation,
Systems demonstrated its "interested party" status as an importer of subject merchandise and
actively participated in the underlying antidumping duty investigation by submitting factual
information.

## TIMELINESS OF ACTION

6.      The antidumping duty order resulting from the Department's final determination
was published on February 18, 2015 and SunPower filed a Summons initiating this action within
30 days thereafter, on March 18, 2015. SunPower served notice of the action upon all other
participants in the investigation on the same date. SunPower is filing this Complaint within 30
days of the date on which its Summons was filed. Accordingly, SunPower has commenced this
action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and
Rule 3(a)(2).

## RELEVANT FACTUAL HISTORY

7.      In late 2008, SunPower entered into a tolling arrangement with Jiawei Solarchina
Co., Ltd. (based in Hong Kong, "Jiawei"), under which Jiawei's wholly-owned subsidiary,
SunEnergy (S.Z.) Co., Ltd. ("SunEnergy") (based in mainland China), performed the tolling
services on behalf of Jiawei.

8.      Under the tolling arrangement, SunPower's wholly-owned subsidiary, SunPower
Systems SARL (based in Switzerland, "SunPower Switzerland"), consigns raw materials and
components – including crystalline silicon photovoltaic ("CSPV") cells that are manufactured by
SunPower affiliates located in Malaysia and the Philippines – to SunEnergy, the Chinese toller,

for final assembly into CSPV modules without ownership of the raw materials and components, or the finished CSPV modules themselves, transferring to SunEnergy.

9.    After SunEnergy has completed the toll assembly services for the CSPV modules, certain of the CSPV modules are shipped from SunEnergy's facilities in mainland China to SunPower or to affiliated entities in the United States.

10.    The Department previously conducted investigations and issued final determinations and orders covering *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, which were published by the Department in the *Federal Register* on December 7, 2012. *See* 77 Fed. Reg. 73,018 (Dec. 7, 2012); 77 Fed. Reg. 73,017 (Dec. 7, 2012). Because the CSPV modules toll-assembled by SunEnergy incorporated CSPV cells originating in Malaysia and/or the Philippines, these modules explicitly were excluded from the previously issued antidumping and countervailing duty orders. Specifically, the orders excluded "modules, laminates, and panels produced in the PRC from cells produced in a third-country." The Department excluded such modules on the basis that the origin of a CSPV cell is determinative of the country of origin of a CSPV module for trade remedy purposes, such that CSPV modules assembled in China using non-Chinese-origin cells would not be of Chinese origin for trade remedy purposes.

11.    On December 31, 2013, SolarWorld Industries America, Inc. ("SolarWorld"), the petitioner in the antidumping and countervailing duty investigations that resulted in the issuance of orders covering CSPV cells in December 2012, requested that the Department and the Commission initiate new antidumping and countervailing duty investigations concerning *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China and Taiwan.* The

Department published notices initiating these antidumping and countervailing duty investigations on January 29, 2014. *See* 79 Fed. Reg. 4,661 (Jan 29, 2014); 79 Fed. Reg. 4,667 (Jan. 29, 2014).

      12.     The stated purpose of the new investigations was to address shifts in CSPV cell production away from China to third countries, including, in particular, Taiwan, and the resulting exclusion of any CSPV modules that were manufactured/assembled in China using such cells from the scope of the 2012 orders.

      13.     In its petition, SolarWorld proposed a product scope that read, in relevant part:

> The merchandise covered by this investigation is crystalline silicon photovoltaic cells, and modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including building integrated materials.

> For purposes of this investigation, subject merchandise also includes modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells completed or partially manufactured within a customs territory other than subject country, using ingots, wafers, or partially manufactured cells sourced from the subject country.

      14.     The Department adopted a slightly modified version of the scope in its initiation notice and preliminary affirmative antidumping and countervailing duty determinations, which read, in relevant part: "For purposes of this investigation, subject merchandise also includes modules, laminates and/or panels assembled in the subject country consisting of crystalline silicon photovoltaic cells that are completed or partially manufactured within a customs territory other than that subject country, using ingots that are manufactured in the subject country, wafers that are manufactured in the subject country, or cells where the manufacturing process begins in the subject country and is completed in a non-subject country." 79 Fed. Reg. 33174 (June 10, 2014); 79 Fed. Reg. 44399 (July 31, 2014).

15.    Under the so-called "two out of three" rule enunciated in the second paragraph of the scope language included in the petition, as modified by the Department,  if a CSPV module is assembled in China using CSPV cells manufactured outside of China, but the cells incorporate either Chinese-origin ingots, Chinese-origin wafers, or CSPV cells partially manufactured in China, then the entire finished CSPV module would be subject to the investigation.

16.    Thus, in the case of the China investigation (the Department also initiated corollary proceedings relating to Taiwan), and of particular relevance to SunPower's imported modules/panels, a Chinese-assembled module/panel incorporating a Malaysia- or Philippines-manufactured CSPV cell, which, in turn, incorporated a Chinese-origin wafer, would be within the scope the investigation and, therefore, considered to be subject merchandise.

17.    On June 10, 2014, the Department published its preliminary affirmative countervailing duty determination based on the scope description included in the petition, which triggered the requirement that U.S. importers of subject merchandise make cash deposits, at the rate established in the preliminary determination, of estimated countervailing duties at the time the products enter the United States.  *See* 79 Fed. Reg. 33,174 (June 10, 2014).

18.    Subsequently, on July 24, 2014, the Department issued an affirmative preliminary determination in the companion antidumping duty investigation of imports of certain CSPV products from China, again based on the scope description included in the petition, which was published in the *Federal Register* on July 31, 2014.  See 79 Fed. Reg. 44399 (July 31, 2014).

19.    As such, in the preliminary affirmative antidumping duty determination, the Department maintained, in defining which products were within the scope of its investigation, the so-called "two out of three" rule under which Chinese-assembled modules/panels

incorporating third-country CSPV cells that, in turn, incorporated Chinese-origin inputs, such as ingots, wafers, or partially-manufactured cells, would be considered subject merchandise.

20.     In addition, in connection with the Department's affirmative preliminary antidumping duty determination, the Department established a certification protocol in connection with certain entries of modules/panels from China.  Specifically, the Department stated:

> If an importer imports solar panels/modules that were assembled in the PRC and it claims the panels/modules *do not* contain solar cells manufactured in third countries using ingots, wafers, or partially produced solar cells manufactured in the PRC, the importer is required to maintain the importer certification included in the Department's cash deposit instructions. The importer and exporter are also required to maintain the exporter certification included in the Department's cash deposit instructions if the exporter of the panels/modules for which the importer is making the claim is located in the PRC. The importer and PRC-exporter are also required to maintain sufficient documentation supporting their certifications. We note that while importers and PRC-exporters will be required to maintain the aforementioned certifications and documentation, they will not have to provide this information to CBP as part of the entry documents, unless the certification or documentation is specifically requested by CBP (emphasis supplied).[1]

The Department further added:

> If it is determined that the certification or documentation requirements noted in the certification have not been met, the Department intends to instruct CBP to suspend all unliquidated entries for which these requirements were not met and require the posting of an antidumping duty cash deposit on those entries equal to the PRC-wide rate in effect at the time of the entry."[2]

---

[1]     79 Fed. Reg. 44,399, 44,401–44,402 (July 31, 2014).

[2]     *Id.* at 44,402.

Finally, the Department noted:

> If a solar panel/module assembled in the PRC contains *some* solar cells manufactured in third countries using ingots, wafers, or partially produced solar cells manufactured in the PRC, but the importer is unable, or unwilling, to identify the *total value of the panel/module subject to provisional measures*, the Department intends to instruct CBP to suspend all unliquidated entries for which the importer has failed to supply this information and require the posting of an antidumping duty cash deposit on the *total entered value of the panel/module* equal to the PRC wide rate in effect at the time of the entry.[3]

21.    However, subsequent to its preliminary determination and the establishment of initial cash deposit rates and instructions to suspend liquidations of affected entries based on the scope as defined in the petition, in a memorandum to all interested parties, dated October 3, 2014, the Department unilaterally proposed a "scope clarification" that would dramatically expand the product scope of the pending investigations. Specifically, the Department proposed that subject merchandise for the China investigations would, in relevant part, include "all modules, laminates and/or panels assembled in the PRC that contain crystalline silicon photovoltaic cells produced in a customs territory other than the PRC." Thus, so long as the module is assembled in China, the module would be considered subject merchandise, regardless of the origin of the CSPV cells.

22.    The Department adopted the expanded product scope as part of its final affirmative antidumping and countervailing duty determinations, issued on December 16, 2014. *See* 70 Fed. Reg. 76,970 (Dec. 23, 2014); 79 Fed. Reg. 76,962 (Dec. 23, 2014).

23.    As a result of the final affirmative antidumping duty determination, the Department instructed CBP to suspend the liquidation of entries of subject merchandise entered,

---

[3]    *Id.*

or withdrawn from warehouse for consumption, on or after December 23, 2014, and to collect

cash deposits equal to the applicable weighted-average dumping margins established in the final

determination. *See* Message No. 5002303 (Jan. 2, 2015). The Department's instructions also

addressed the "revocation" of the previously established certification requirements. However, the

Department did not explicitly direct that CBP apply the expanded scope of the investigations to

entries made prior to December 23, 2014.

24. On February 10, 2015, the Commission published its final affirmative injury

determinations. *See* 80 Fed. Reg. 7,495 (Feb. 10, 2015).

25. As a result of the Commission's final affirmative injury determinations, the

Department published antidumping and countervailing duty orders on February 18, 2015. *See* 80

Fed. Reg. 8,592 (Feb. 18, 2015). In the orders, the Department maintained the expanded product

scope first adopted in its final determination, and, in the antidumping duty order, the Department

noted that it would be instructing CBP "to continue to suspend liquidation of all appropriate

entries of certain solar products from the PRC as described in the 'Scope of Orders' section,

which were entered, or withdrawn from warehouse, for consumption on or after July 31, 2014,

the date of publication in the *Federal Register* of the notice of an affirmative preliminary

determination . . . ." 80 Fed. Reg. 8,592, 8,594 (Feb. 18, 2015). In the countervailing duty order,

the Department noted that it "will direct CBP to assess, upon further instruction by the

Department, countervailing duties equal to the amounts listed below for all relevant entries of

solar products from the PRC. These countervailing duties will be assessed on unliquidated

entries of certain solar products from the PRC entered, or withdrawn from warehouse, for

consumption on or after June 10, 2014 . . . and before October 8, 2014 . . . ." 80 Fed. Reg. 8,592,

8,595 (Feb. 18, 2015).

26.    The Department's further instructions to CBP issued subsequent to the orders, however, only addressed the reintroduction of suspension of liquidation and cash deposit requirements following the termination of the applicable provisional measures periods for entries of subject merchandise made on or after the publication of the affirmative injury determinations by the Commission on February 10, 2015, in the case of the countervailing duty order, and on or after the Department's publication of the orders on February 18, 2015, in the case of the antidumping duty order. *See* Message No. 5051303 (Feb. 20, 2015); Message No. 5051302 (Feb. 20, 2015).

27.    The Department subsequently amended the effective date of the antidumping cash deposit requirement to February 10, 2015 to align with the countervailing duty cash deposit requirement and corrected the cash deposit rate for the PRC-Wide Entity. *See* Message No. 5061301 (Mar. 2, 2015).

## CLAIMS AND BASES FOR RELIEF

### COUNT I

28.    The allegations of paragraphs 1 through 27 are restated and incorporated herein by reference.

29.    The scope of the investigation as defined in the petition, which proposed the so-called "two out of three" rule, contradicts the product scope of the prior investigations and ensuing antidumping and countervailing duty orders covering Chinese-origin CSPV cells published by the Department in December 2012 and is inconsistent with the prior position taken by the Department regarding which CSPV modules may be considered Chinese products for trade remedy purposes, which was based on the location of the substantial transformation of a CSPV cell.

30.     The "two out of three" rule, in effect, discards the Department's prior determination that the origin of a CSPV cell is dispositive in determining the country of origin of a CSPV module, even when that CSPV cell incorporates a Chinese-origin ingot, wafer, or partially-manufactured CSPV cell, because the Chinese-origin inputs are substantially transformed during CSPV cell production and, therefore, do not affect the origin of the CSPV cell. As a result, under the scope formulation set forth in the petition, identical CSPV modules could have differing countries of origin for trade remedy purposes depending on the origin of the CSPV cell components, which, as the Department acknowledged during the course of the prior investigations, is untenable, and, therefore, if adopted by the Department for purposes of a final determination and order would be arbitrary, contrary to law, and not supported by substantial record evidence.

### COUNT II

31.     The allegations of paragraphs 1 through 30 are restated and incorporated herein by reference.

32.     In its final determination, the Department did not merely clarify the product scope of the investigation, but dramatically expanded the scope to capture merchandise that was not contemplated in the petition or during the course of the preliminary investigation as being subject to the investigation and expanded the scope at a point when the investigation already had been substantially completed on the basis of the scope as stated in the petition. Indeed, the Department unilaterally undertook to expand the scope without any apparent request from SolarWorld, which had defined the scope in its petition, a scope that SolarWorld relied upon in asserting and substantiating its allegations in the petition and presumably believed addressed the allegedly injurious effect of allegedly unfairly traded imports.

33.     While the Department may exercise certain discretion regarding the scope of an investigation, that discretion is not boundless. Indeed, the Department "must show caution in expanding the scope to cover merchandise that was either not included or specifically excluded from the outset of the investigation." *Louis Dryfus Citrus, Inc. v. United States*, 495 F. Supp. 2d 1338, 1335 (Ct. Int'l Trade 2007). Furthermore, while the Department has broad discretion to modify the scope of an investigation, any such modification must be "supported by substantial evidence" and must not have a "prejudicial effect." *Id.*

34.     In addition, even if the Department has the discretion to expand the scope, it must do so at an early enough point in the investigation so that information can be collected and the investigation can be conducted based on the expanded scope and there is no prejudicial effect on any interested party. In this investigation, the Department expanded the scope after the information had been collected and the investigation had been substantially completed.

35.     This expansion of the scope, particularly at such a late stage in the antidumping duty investigation, was not supported by substantial record evidence and has severely prejudiced certain interested parties, such as SunPower. Therefore, the Department's expansion of the scope was contrary to law.

### COUNT III

36.     The allegations of paragraphs 1 through 35 are restated and incorporated herein by reference.

37.     The product scope belatedly adopted by the Department in its 2014 investigation and in the challenged final determination, contradicts the product scope of the investigations and ensuing antidumping and countervailing duty orders covering Chinese-origin CSPV cells published by the Department in December 2012 and is arbitrarily inconsistent with the prior

position taken by the Department regarding which CSPV modules may be considered Chinese products for trade remedy purposes, which was based on the location of the substantial transformation of a CSPV cell.

38.    In the investigations resulting in the December 2012 antidumping and countervailing duty orders, the Department determined that CSPV "module assembly does not substantially alter the essential nature of solar cells nor does it constitute a significant processing such that it changes the country of origin of the cell." March 19, 2012 Memorandum from Jeff Pedersen to Chris Marsh "Scope Clarification: Antidumping and Countervailing Duty Investigations of Crystalline Silicon Photovoltaic Cells, Whether of Not Assembled into Modules, from the People's Republic of China." Furthermore, the Department found that the solar cell imparts the essential character of a solar module and, therefore, the origin of the solar cell is determinative of the country of origin, for trade remedy purposes, of a CSPV module. Finally, the Department asserted that "where solar cell production occurs in a different country from solar module assembly, the country of origin of the solar modules/panels is the country in which the solar cell was produced." *Id.*

39.    Based on the Department's position regarding the origin of products for trade remedy purposes, SunPower's imported CSPV modules, which are toll-assembled in China, but incorporate CSPV cells that are manufactured either in Malaysia or the Philippines, were excluded from the scope of the 2012 antidumping and countervailing duty orders because, in effect, the modules were considered to originate either in Malaysia or the Philippines and an investigation only can cover products with a country of origin of the country under investigation.

40.    However, under the product scope as stated in the challenged final determination and in the resulting order, the country of origin of SunPower's same Chinese-assembled CSPV

modules would be China, meaning that identical merchandise impermissibly would have a different country of origin for trade remedy purposes under the two orders.

41.     The Department's expanded product scope (and even the so-called "two out of three" rule originally proposed by SolarWorld) is inconsistent with the Department's formulation of origin for scope purposes, and the scope determinations made by the Department, in connection with the investigations that resulted in the imposition of antidumping and countervailing duty orders on Chinese-origin CSPV cells in December 2012, and, therefore, is arbitrary, contrary to law, and not supported by substantial record evidence.

## COUNT IV

42.     The allegations of paragraphs 1 through 41 are restated and incorporated herein by reference.

43.     The adoption of the expanded product scope by the Department in connection with its final affirmative antidumping duty determination in 2014 severely prejudiced certain interested parties, such as SunPower, by depriving them of due process as to any entries made prior to the publication of the final determination, particularly given that SunPower expended substantial time and resources into developing and implementing a wafer tracking protocol to ensure that it could comply with the so-called "two out of three" rule and the accompanying certification requirements established by the Department in its preliminary affirmative antidumping duty determination.

44.     SunPower could not possibly have predicted that the Department would so radically expand the product scope of its investigation and potentially capture within the scope of the order certain products that previously would not have been subject to the scope, particularly when the expansion of the product scope of the investigation was premised on an interpretation

of the country of origin of such modules that was inconsistent with the Department's determination in 2012.

45.      The Department's expanded product scope cannot reasonably be applied to entries entered, or withdrawn from warehouse for consumption, prior to the publication of the antidumping duty order in the *Federal Register* on February 18, 2015, and certainly not prior to the publication of the final affirmative antidumping duty determination on December 23, 2014.

COUNT V

46.      The allegations of paragraphs 1 through 45 are restated and incorporated herein by reference.

47.      The Department's adoption of its expanded product scope at such a late stage in the proceeding materially degraded the Department's ability to base its antidumping duty margin calculations on the most precise available data, thereby calling into question the finality and validity of the Department's preliminary and affirmative antidumping duty determinations.

**PRAYER FOR RELIEF**

**WHEREFORE,** SunPower respectfully requests that the Court enter judgment in its favor by:

(1)     Directing the Department to: (i) reject both the so-called "two out of three" rule as defined in the petition and adopted for purposes of the Department's preliminary affirmative antidumping duty determination, and the expanded product scope adopted in the Department's final affirmative antidumping duty determination; (ii) revert to the substantial transformation determination made in connection with the 2012 investigations in defining the scope; (iii) rescind the preliminary and final affirmative antidumping duty determinations as to any Chinese-assembled CSPV modules incorporating non-Chinese-origin CSPV cells; and (iv) instruct CBP to (a) refund any estimated antidumping duties deposited by importers of Chinese-assembled CSPV modules incorporating non-Chinese-origin CSPV cells on the basis of the preliminary and final affirmative antidumping duty determinations, (b) lift the suspension of liquidation for any affected entries, and (c) liquidate any such entries without regard to antidumping duties.; or

(2)     Directing that the Department reject the expanded product scope in favor of the so-called "two out of three" rule and instructing CBP to refund deposits of estimated antidumping duties based on the expanded product scope; or

(3)     Enjoining the Department and CBP from applying the expanded product scope to entries made prior to the publication of the antidumping duty order in the *Federal Register* on February 18, 2015 or prior to the publication of the final affirmative antidumping duty determination on December 23, 2014 and instructing CBP to

refund deposits of estimated antidumping duties based on the expanded product scope made in connection with entries prior to these dates; and

(4)     Granting such other and further relief as the Court may deem appropriate.


Respectfully submitted,

Daniel J. Gerkin
Jerome J. Zaucha
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Tel: (202) 778-9168
Fax: (202) 778-9100

*Counsel to SunPower Corporation*

April 17, 2015