**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  HON. DONALD C. POGUE, JUDGE**

_____

|  |  |  |
|---|---|---|
| SUNPOWER CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUNIVA, INC., et al., | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | Consol. Court No. 15-00067 |
| and | ) | |
| | ) | |
| CANADIAN SOLAR INC. et al., | ) | |
| | ) | |
| Intervenor Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SOLARWORLD AMERICAS, INC., | ) | |
| | ) | |
| Intervenor Defendant. | ) | |

_____)

**REPLY BRIEF OF CONSOLIDATED PLAINTIFF SUNIVA, INC.**

Gregory S. M<sup>c</sup>Cue

*Counsel for Suniva, Inc.*

Dated:  March 29, 2016

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   Commerce's Refusal to Include a Scope Exemption for CSPV Products
     Composed of U.S.-Origin Cells was Unsupported by Substantial Evidence and
     Otherwise Not In Accordance With Law ........................................................................2

    A.   Commerce abused its discretion when it refused an exemption for CSPV
          products comprised of U.S.-origin solar cells ........................................................2

        1.   The scope as currently written covers U.S. domestic merchandise ............2

        2.   An exemption in the scope for CSPV products comprised of U.S.-
               origin cells was necessary to prevent the inclusion of U.S.
               domestic merchandise ..................................................................................6

        3.   Commerce's decision to depart from its substantial transformation
               analysis was not supported by substantial evidence, not in
               accordance with law, and not reasonable ....................................................7

        4.   Commerce has taken the position that a substantial transformation
               is required to convert U.S.-origin merchandise into foreign
               merchandise ..................................................................................................8

        5.   Commerce has already held that modules assembled in China of
               U.S.-origin cells are U.S. domestic goods ..................................................10

        6.   Suniva repeatedly expressed its concern to Commerce about the
               harm it would suffer if not for an exclusion for modules containing
               U.S.-origin cells ..........................................................................................11

        7.   Suniva does not need to be the sole voice of the U.S. domestic
               industry to point out when Commerce has taken actions that are
               prohibited by statute ....................................................................................14

    B.   Commerce's decision to not include a scope exemption for cells
          assembled in China of U.S.-origin cells was not in accordance with law
          because it imposes duties on Suniva's domestic – not foreign –
          merchandise ..........................................................................................................16

        1.   The scope of the AD/CVD Orders in *Solar II* covers U.S. domestic
               merchandise ................................................................................................16

        2.   Commerce's interpretation of foreign merchandise in this case is
               neither reasonable nor entitled to deference ..............................................17

        3.   Commerce failed to act reasonably when it determined that solar
               panels comprised of U.S. cells, which it had already determined
               were U.S.-origin goods, were suddenly "foreign" merchandise ................18

    C.   Commerce's revised scope must be limited in application to prospective
          entries only ............................................................................................................19

        1.      Defendant appears to concede that the revised scope cannot, or should not, be applied retrospectively ........................................................19

        2.      Suniva could only address the contents of Commerce's instructions to CBP after they were issued....................................................................19

        3.      Both Suniva and SunPower Corp. argued in their briefs to the Court that the revised scope must not be applied retrospectively.............20

        4.      Suniva clearly articulated its argument that the revised scope must apply to prospective entries only ..............................................................20

II.      CONCLUSION.............................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

C<small>ASES</small>

*Canadian Wheat Bd. V. United States*, 641 F.3d 1344 (Fed. Cir. 2011) .................................. 5, 18

*Ceramica Regiomontana, S.A. v. United States*, 64 F.3d 1579 (Fed. Cir. 1995)................ 6, 15, 18

*Diamond Sawblades Mfrs.' Coalition v. U.S. Dep't of Commerce & U.S. Int'l Trade Comm'n*, 11

    F. Supp. 3d 1303 (Ct. Int'l Trade 2014) .............................................................. 15

*M.M. & P. Maritime Advancement, Training, Educ. & Safety Program v. Dep't of Commerce*,

    729 F.2d 748 (Fed. Cir. 1984)..................................................................... passim

*Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577 (Fed. Cir. 1990) ............................... 6, 17

*U.S. Steel Corp. v. United States*, 637 F. Supp. 2d 1199 (Ct. Int'l Trade 2009) ........................... 5

D<small>EPARTMENT OF</small> C<small>OMMERCE</small> P<small>ROCEEDINGS</small>

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China and*

    *Taiwan: Initiation of Antidumping Duty Investigations*, 79 Fed. Reg. 4,661 (Dep't of

    Commerce, January 29, 2014) ............................................................................... 4

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China:*

    *Antidumping Duty Order*; *and Amended Final Affirmative Countervailing Duty*

    *Determination and Countervailing Duty Order*, 80 Fed. Reg. 8,592 (Dep't of Commerce,

    February 18, 2015)............................................................................................... 2

*Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Final*

    *Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76,970 (Dep't of Commerce,

    Dec. 23, 2014)..................................................................................................... 2

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China:*

    *Initiation of Countervailing Duty Investigations*, 79 Fed. Reg. 4,667 (Dep't of Commerce,

    January 29, 2014)................................................................................................. 4

*Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products from the*

    *People's Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed.

    Reg. 76, 962 (Dep't of Commerce, Dec. 23, 2014) ................................................... 2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*

    *People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value*,

*and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dep't of Commerce, December 7, 2012) ................................................................................................................................ 3

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (Dep't of Commerce, December 7, 2012) ............................................................................ 3

*Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from Argentina*, 58 Fed. Reg. 37,062 (Dep't of Commerce, July 9, 1993) ............................................................................................................................ 10

INTERNATIONAL TRADE COMMISSION PROCEEDINGS

*Certain Crystalline Silicon Photovoltaic Products from China and Taiwan*, Investigation Nos. 701-TA-511 and 730-TA-1246-1247 (Final), Pub. 4519, Feb. 2015, ITC ............................. 16

STATUTES

19 U.S.C. § 1673 ............................................................................................................ 5, 15, 18

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  HON. DONALD C. POGUE, JUDGE**

_____

| | |
|---|---|
| SUNPOWER CORP.,                                )  | |
|                                                )  | |
| Plaintiff,                     )  | |
|                                                )  | |
| and                                 )  | |
|                                                )  | |
| SUNIVA, INC., et al.,                          )  | |
|                                                )  | |
| Consolidated Plaintiffs,       )  | |
|                                                )  | Consol. Court No. 15-00067 |
| and                                 )  | |
|                                                )  | |
| CANADIAN SOLAR INC. et al.,                    )  | |
|                                                )  | |
| Intervenor Plaintiffs,         )  | |
| v.                       )  | |
|                                                )  | |
| UNITED STATES,                                 )  | |
|                                                )  | |
| Defendant.                      )  | |
|                                                )  | |
| and                                 )  | |
|                                                )  | |
| SOLARWORLD AMERICAS, INC.,                      )  | |
|                                                )  | |
| Intervenor Defendant.          )  | |

_____)

<u>**REPLY BRIEF OF CONSOLIDATED PLAINTIFF SUNIVA, INC.**</u>

Consolidated Plaintiff Suniva, Inc. ("Suniva") files this brief in reply to the briefs filed by

the Defendant (hereinafter "USG") and Intervenor Defendant (hereinafter "SW").  In its action,

Suniva challenges the U.S. Department of Commerce's ("Commerce" or "the Department")

determination not to include an explicit exemption from the scope of the investigations under

review, as described below, for crystalline silicon photovoltaic ("CSPV") modules and panels

comprised of U.S.-origin cells. *See Certain Crystalline Silicon Photovoltaic Products from the*

*People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg.

76,970 (Dep't of Commerce, Dec. 23, 2014), AD P.R. Doc. 823 (App. Tab 1), and

*Countervailing Duty Investigation of Certain Crystalline Silicon Photovoltaic Products from the*

*People's Republic of China: Final Affirmative Countervailing Duty Determination*, 79 Fed. Reg.

76, 962 (Dep't of Commerce, Dec. 23, 2014), CVD P.R. Doc. 404 (App. Tab 2)[1] (hereinafter

"*Final Determinations*").   Suniva also challenges Commerce's decision to depart from its usual

transformation origin analysis as applied in an earlier case to these very same products, and its

lack of an explicit statement that would limit application of its expanded scope to entries made

after publication of the antidumping ("AD") and countervailing duty ("CVD") Orders.  *Certain*

*Crystalline Silicon Photovoltaic Products from the People's Republic of China: Antidumping*

*Duty Order*; *and Amended Final Affirmative Countervailing Duty Determination and*

*Countervailing Duty Order*, 80 Fed. Reg. 8,592 (Dep't of Commerce, February 18, 2015), AD

P.R. Doc. 842 (App. Tab 3), CVD P.R. Doc. 413 (App. Tab 4) (hereinafter "*Solar II*").

 In this reply brief, Suniva responds to the USG and SW arguments regarding the legality

and reasonableness of the Department's actions and lack of action.

**I.** **Commerce's Refusal to Include a Scope Exemption for CSPV Products Composed of U.S.-Origin Cells was Unsupported by Substantial Evidence and Otherwise Not In Accordance With Law**

 **A.** **Commerce abused its discretion when it refused an exemption for CSPV products comprised of U.S.-origin solar cells**

  **1.** **The scope as currently written covers U.S. domestic merchandise**

 The USG and SW argue that the scope only covers Chinese merchandise.  According to

the USG, "{t}he *Solar II* orders cover merchandise determined to be Chinese pursuant to an

---

[1] Citations to the administrative record are to the public record document number ("AD P.R. Doc." or "CVD P.R. Doc.") followed by the page or exhibit number.

alternative country-of-origin analysis that Commerce deemed appropriate in light of the circumstances and concerns present in these proceedings."  Defendant's Opposition at 12-13. According to SW, "Commerce 'only applied AD and CVD measures to products determined to have a country of origin of China.'"  Intervenor Defendant's Response at 35 (quoting the *Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation for Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China*) (CVD P.R. 384 at 54-55) (App. Tab 5).  Additionally, the USG argues that an exemption for CSPV products comprised of U.S.-origin cells was unnecessary, while SW argues that not including an exemption was supported by substantial evidence and in accordance with law.  Defendant's Opposition at 47; Intervenor Defendant's Response at 4-5.  Essentially, the USG and SW make the circular argument that the scope of the orders only covers Chinese merchandise because any merchandise subject to the order is the merchandise the DOC determined to be Chinese.

The USG and SW fail to account for the fact that Commerce did not choose the scope of the *Solar II* investigations in a vacuum.  The Department's determination of which products are subject merchandise comes on the heels of the prior set of investigations.  *See e.g.*, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dep't of Commerce, December 7, 2012), and *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (Dep't of Commerce, December 7, 2012) (collectively "*Solar I*").  In *Solar I*, the Department reached the opposite decision – that modules assembled in China, from U.S.-origin cells, are U.S.-origin modules.  Specifically,

Commerce said, "where solar cell production occurs in a different country from solar module assembly, the country-of-origin of the solar modules/panels is the country in which the solar cell was produced." *Scope Clarification: Antidumping and Countervailing Duty Investigations of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China* (Mar. 19, 2012) (AD P.R. Doc. 124 at 8) (App. Tab 6), (CVD P.R. Doc. 87 at 8) (App. Tab 7). And, indeed at the outset of these investigations, Commerce apparently recognized that these products were the same when it announced that:

> Parties should note that when considering product coverage with respect to these investigations, **the Department will be informed by the product coverage decisions that it made in the investigations that resulted in the existing orders** on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the PRC.

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China and Taiwan: Initiation of Antidumping Duty Investigations*, 79 Fed. Reg. 4,661, 4,662 (Dep't of Commerce, January 29, 2014), AD P.R. Doc. 841 at 4,662 (App. Tab 8), and *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Initiation of Countervailing Duty Investigations*, 79 Fed. Reg. 4,667, 4,668 (Dep't of Commerce, January 29, 2014), CVD P.R. Doc. 69 at 4,668 (App. Tab 9).

The USG and SW argument that the scope of *Solar II* only covers Chinese merchandise is based on the assumption that Commerce acted reasonably when it chose to apply something other than the substantial transformation analysis to modules comprised of U.S.-origin cells, assembled in China. Defendant's Opposition at 46-47; Intervenor Defendant's Response at 29. However, neither party provides an adequate explanation for the Department's conflicting decisions on the exact same product. Neither the USG nor SW identifies where Commerce adequately explained how it reasonably could find that CSPV products comprised of U.S.-origin

solar cells constitute U.S. domestic merchandise one day, but Chinese goods the next. "An agency is obligated to follow precedent, and if it chooses to change, it must explain why." *M.M. & P. Maritime Advancement, Training, Educ. & Safety Program v. Dep't of Commerce*, 729 F.2d 748, 755 (Fed. Cir. 1984). In order to fulfill its obligation to "explain why", Commerce needed to explain how the specific modules at issue, made of U.S.-cells and assembled in China, had changed since *Solar I*. Without a substantial transformation analysis, or some other explained methodology to describe the physical change by which a U.S.-origin cell has become "foreign" merchandise, the Department has failed under the statute.

Neither the USG nor SW suggests that Commerce identified anything about these products that changed since Commerce determined that they were U.S. domestic merchandise. Therefore, the USG and SW's argument that Commerce acted reasonably is unsupported. In fact, not only did Commerce fail to act reasonably, but also it abused its discretion by trampling the **central aim** of U.S. AD/CVD law, to apply import duties to foreign products and to protect domestic production. *See* Suniva's Brief at 16, citing to *U.S. Steel Corp. v. United States*, 637 F. Supp. 2d 1199, 1204 (Ct. Int'l Trade 2009), "{t}he **central aim** of the antidumping laws is to protect domestic industries . . . " (citation omitted) (emphasis added). *See also, e.g.,* 19 U.S.C. § 1673 ("{i}f … the administering authority determines that a class or kind of **foreign merchandise** is being, or is likely to be, sold in the United States at less than its fair value . . . then there shall be **imposed upon such merchandise** an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise"); *Canadian Wheat Bd. V. United States*, 641 F.3d 1344, 1351 (Fed. Cir. 2011) (antidumping duties "are imposed **to protect American industries** against unfair trade practices by foreign entities who sell in the

American market" (citation omitted) (emphasis added)); *Ceramica Regiomontana, S.A. v. United States*, 64 F.3d 1579, 1580 (Fed. Cir. 1995) ("{t}he United States countervailing duty laws **protect domestic industries** from unfair foreign competition") .

> **2.**  **An exemption in the scope for CSPV products comprised of U.S.-origin cells was necessary to prevent the inclusion of U.S. domestic merchandise**

As mentioned above, the USG argues that an exemption for CSPV products comprised of U.S.-origin cells was unnecessary.  Defendant's Opposition at 47.  However, the USG's argument relies on the faulty premise that Commerce defined away the issue when it found that these products are Chinese because the Department says they are Chinese.  According to the USG, "… as Commerce explained, 'we have only applied {antidumping} and {countervailing duty} measures to products determined to have a country of origin of China. We have not applied such measures to products determined to have country of origin of the United States.'"  Defendant's Opposition at 46, citing to *Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China: Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value* (P.R. Doc. 809 at 29) (App. Tab 10).  To the contrary, the path to effectuate the purpose of the AD/CVD law, while putting the least limitation on the Department's discretion, would have been to accept the exemption proposed by Suniva, as a limited step necessary to protect domestic production.  Accordingly, Commerce abused its discretion when it decided not to include such an exemption.  *See Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577, 1583 (Fed. Cir. 1990) (a determination by Commerce regarding the scope of an AD order "lies largely in {Commerce's} discretion" but such discretion "must be exercised in light of all the facts before {Commerce} and must reflect that agency's judgment regarding the scope and form of an order that will best effectuate the purpose of the antidumping

laws . . .").  This abuse of discretion is particularly egregious in light of the USG's concession to

this Court, in this proceeding, that "the purpose of the trade remedy law is to provide relief to

**domestic industries** suffering material injury from unfairly traded imports …" (citations

omitted, emphasis added).  Defendant's Opposition at 24.

### 3. Commerce's decision to depart from its substantial transformation analysis was not supported by substantial evidence, not in accordance with law, and not reasonable

The USG argues that Commerce's choice to depart from its substantial transformation

origin analysis was "supported by substantial evidence" and was "in accordance with law".

Defendant's Opposition at 47.  Additionally, according to SW, "… Commerce reasonably

determined not to rely solely on the substantial transformation analysis in the underlying

proceeding …".  Intervenor Defendant's Response at 35.  The USG further argues that Suniva

"incorrectly presume{s} that Commerce should have applied the substantial transformation

analysis …".  Defendant's Opposition at 13.  The USG maintains that "Suniva's request for {a

scope exception} was erroneously premised on its belief that Commerce should apply a

substantial transformation analysis and on its assertion that its merchandise had a United States

country of origin."  Defendant's Opposition at 47.

As Suniva explained previously, the Department may revise or clarify its scope analysis,

however it is "obligated to follow precedent, and if it chooses to change, it must explain why."

*M.M. & P. Maritime Advancement*, at 755.  Suniva's Brief at 20.  This obligation forms the basis

of Suniva's request for an exception for CSPV products comprised of U.S.-origin solar cells.  In

the instant case, Commerce failed to adequately explain its rationale for departing from

precedent – especially precedent on the exact same merchandise, which Commerce had analyzed

only three years before.  Accordingly, in light of its prior decisions, Commerce was obligated to

take into account its own finding of the central, defining character of the cells in a module. Commerce's failure to follow its own finding on the same merchandise – as it had indicated initially that it would do – constitutes an abuse of discretion, because Commerce has applied AD/CVD duties to domestic products in a manner that harms, not protects, Suniva, a member of the domestic industry.  Because Commerce failed to explain how the modules at issue in the case at bar differ from the modules Commerce found to be exempt from AD/CVD duties in *Solar I*, Commerce should have applied a substantial transformation analysis, as it did in *Solar I*, because the modules at issue constitute the same merchandise.

### 4. Commerce has taken the position that a substantial transformation is required to convert U.S.-origin merchandise into foreign merchandise

SW argues that "Suniva's contention that Commerce 'has confirmed that a substantial transformation is required to convert U.S.-origin merchandise into foreign merchandise' is unsupported and incorrect. … {W}hile Commerce may have a practice of utilizing the substantial transformation analysis, it has not 'confirmed' that this approach is <u>required</u> to determine country-of-origin."  Intervenor Defendant's Response at 34-35 (emphasis in original).

SW may quibble over the word "confirmed", but it is clear that the Department has a regular and usual practice whereby it determines origin via a substantial transformation analysis. The USG acknowledges this in its response brief, saying "… Commerce applied the substantial transformation analysis in *Solar I*, and regularly applies that analysis in other antidumping and countervailing duty proceedings …".  Defendant's Opposition at 13.  The USG also refers to substantial transformation as Commerce's "usual approach".[2]  *Id.*  As mentioned above, agencies

---

[2] The entire quote is as follows:  "Similarly, that Commerce applied the substantial transformation analysis in *Solar I*, and regularly applies that analysis in other antidumping and countervailing duty proceedings, is of limited relevance to the reasonableness of Commerce's

(Continued…)

may only depart from normal practice if they articulate their reasoning.  "An agency is obligated to follow precedent, and if it chooses to change, it must explain why." *M.M. & P. Maritime Advancement*, at 755.  This concept is the guidepost to which Suniva's challenge returns at every point, and which the USG and SW fail to address.  In the case at bar, Commerce has not adequately explained why it departed from its "usual approach", because it has not articulated how the modules, made of U.S. cells and assembled in China, are different in *Solar II* than they were in *Solar I*, when they were found to be U.S. domestic merchandise.

By quibbling with the word "confirmed", SW attempts to avoid an additional facet of Suniva's argument – that Commerce already has acknowledged the fundamental statutory imperative that AD/CVD duties must be applied only to foreign, not domestic, goods AND, that the identity of such goods depends upon substantial transformation.  In its initial brief before this Court, Suniva presented an example where Commerce, when analyzing the connections between the AD/CVD laws and the U.S. Customs provisions regarding American Goods Returned, stated the following:

> The AD/CVD provisions provide for the assessment of duties only on products of the subject foreign country-not on products of the United States. (See, e.g., section 303 of the Act (whenever any country bestows a subsidy on any article "manufactured or produced in such country" CVD duties shall be imposed on "such article or merchandise"); see also section 701 of the Act; and section 771(16) of the Act (defining such or similar merchandise as merchandise subject to the investigation and similar merchandise "produced in the same country").) Therefore, **even if a U.S. origin product is deemed to be "foreign" for Customs purposes, it is not subject to AD and CVD duties unless it is transformed through processing or manufacture into a product of the subject country.**

---

country-of-origin analysis and resulting scope clarifications in *Solar II*. Commerce supported its departure from its usual approach of determining country-of-origin with a detailed and reasoned explanation based upon the specific facts on the records of the *Solar II* investigations."

*Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from Argentina*, 58 Fed. Reg. 37,062, 37,065 (Dep't of Commerce, July 9, 1993) (emphasis added).  Suniva's Brief at 11-12.

Additionally, on multiple occasions the Department has acted to avoid application of duties to U.S. goods without substantial transformation.  Suniva's Brief at 21.  The examples provided by Suniva which support these statements are not disputed by the USG or SW.  Additionally, by failing to provide any examples of instances where Commerce applied AD or CVD duties to products that the Department's previous analysis of the very same merchandise had determined to be U.S. domestic merchandise, the USG and SW apparently concede that no such examples exist.

<h3 style="text-align:center">5.    Commerce has already held that modules assembled in China of U.S.-origin cells are U.S. domestic goods</h3>

SW argues that modules assembled in China of U.S.-origin cells "benefit from countervailable subsidies in China" and "are dumped into the United States".  Therefore they are "properly covered by the scope of the AD/CVD orders."  Intervenor Defendant's Response at 4-5.

As a starting point, we must state again that Suniva's merchandise is domestic because Commerce found in the past that a solar module carries the country of origin of its solar cells.  Commerce's decision to include CSPV products comprised of U.S.-origin cells within the scope of the Orders was not in accordance with law because it imposes duties on Suniva's domestic – not foreign – merchandise.  While Commerce may opt to depart from precedent, it must explain its rationale.  *M.M. & P. Maritime Advancement*, at 755.  In the instant case Commerce has not explained how the modules at issue, comprised of U.S.-origin cells and assembled in China, have

changed from the prior investigation to the extent that it became appropriate to abandon precedent and apply something other than a substantial transformation analysis.

Additionally, SW's argument highlights the inconsistency in the Department's decision to include modules assembled in China from U.S.-origin cells in the scope of *Solar II*.  Namely, if modules assembled in China from U.S.-origin cells were benefitting from Chinese subsidies and being dumped in the US, as alleged by SW, then why weren't they covered by the orders in in *Solar I*?  Presumably, these practices would have occurred during the *Solar I* investigations as well.  However, in *Solar I*, these same modules were found to be U.S.-origin goods.  Given that both the USG and SW fail to explain the difference between modules assembled in China from U.S.-origin cells in *Solar I*, and modules assembled in China from U.S.-origin cells in in *Solar II*, SW's argument that they should be treated differently lacks merit.  Ultimately, Commerce is "obligated to follow precedent" and apply a substantial transformation analysis to these modules. *M.M. & P. Maritime Advancement*, at 755.

Because Commerce already has found that modules assembled in China using U.S.-origin cells do not experience a shift in identity that would make them "foreign", the modules are U.S. domestic products.  Accordingly, it is inappropriate for SW to urge Commerce include such products in the scope of any AD/CVD investigation.  While SW may wish to see some portion of domestic competition subjected to AD/CVD duties, the fact remains that the central purpose of the AD/CVD laws is to protect the domestic industry producing the domestic like product.

> **6.      Suniva repeatedly expressed its concern to Commerce about the harm it would suffer if not for an exclusion for modules containing U.S.-origin cells**

The USG takes the position that "Suniva did not argue in the underlying investigation that the absence of an exclusion would result in harm to the domestic injury …".  Therefore

11

Suniva "failed to exhaust its administrative remedies with respect to this claim" (citation omitted).  Defendant's Opposition at 47.

This assertion is unfounded.  Suniva raised this argument before the Department on multiple occasions during the underlying investigations.  Suniva's repeated submissions to Commerce clearly show that Suniva, a member of the domestic industry, was requesting an exclusion for modules assembled in China from U.S.-cells because it was concerned about the harm it would suffer in the absence of such an exclusion.  This petition was filed by SW on December 31, 2013. *Petition for the Imposition of Antidumping and Countervailing Duties: Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China and Taiwan* (AD P.R. Doc. 2) (App. Tab 11), (CVD P.R. Doc. 1) (App. Tab 12).  Suniva first raised this argument just 15 days later in its submission to Commerce on January 15, 2014, requesting that the Department set aside a period for interested parties to raise issues regarding product coverage in *Solar II*.  In that document, Suniva explained that it "has a large production of cells in the United States."  Suniva then stated:

> If the above interpretation of the scope is petitioner's intended outcome then Suniva's U.S.-origin cells, when shipped to China, possibly could be subject to duties upon return.  In other words, the cells are of U.S. origin, when shipped to China they experience a relatively minor operation, described by the Department as "a comparatively less sophisticated process than cell conversion," as noted above.  Upon importation into the United States, these modules are not of Chinese origin for ADD/CVD purposes, as clearly described by the Department.  Nonetheless, the proposed scope of the instant petition **seems to be proposing that duties would be applied to these U.S.-origin goods**.  This seems unreasonable on its face and, at a minimum, strong support for the need to set aside a comment period in this case.

*Request for Comment Period on Scope for Certain Crystalline Silicon Photovoltaic Products from the People's Republic of China and Taiwan* (January 15, 2014) (emphasis added), AD P.R. Doc. 35 at 6 (App. Tab 13), CVD P.R. Doc. 56 at 6 (App. Tab 14).

On February 18, 2014, Suniva reiterated this argument in its scope comments submitted to Commerce.  In those comments, Suniva explained that it was "the leading American manufacturer of high-efficiency, cost-competitive PV solar cells and modules."  Suniva also stated:

> {I}f the Department is to expand into a new analysis, in addition to its existing origin rule from the prior CSPV investigations, it cannot do so in a way that would apply duties to products already defined by the Department as being of U.S. origin.  U.S. antidumping and countervailing duty law makes specific reference to duties on foreign merchandise and to **protection of domestic production**.  Accordingly, we respectfully request that the scope be revised to incorporate an exclusion for CSPV products assembled using U.S.-origin cells.

*Scope Comments to Sec'y of Commerce, from Steptoe & Johnson LLP, re: "Comments on the Scope and Request for Scope Revisions Certain Crystalline Silicon Photovoltaic Products from China and Taiwan"* (Feb. 18, 2014) (emphasis added), AD P.R. Doc. 131 at 3 (App. Tab 15), CVD P.R. Doc. 91 at 3 (App. Tab 16).

Suniva raised this argument a third time in its case brief submitted to the Department on October 16, 2014.  Once again, Suniva underscored its position as a member of the U.S. domestic industry:  "Suniva is the leading American manufacturer of high-efficiency, cost-competitive PV solar cells and modules. … Suniva has a large production of CSPV cells in the United States."  Suniva further explained that:

> As a U.S. producer of the subject merchandise, Suniva respectfully submits that the Department can only add to or deviate from its substantial transformation analysis in a way that would be consistent with the fundamental objectives of the U.S. antidumping

13

> and countervailing duty laws.  **Specifically, U.S. law is designed to apply duties to foreign merchandise and to protect domestic production**.   The Department has already found that modules, panels and laminates assembled from U.S.-origin cells are of U.S. origin for AD/CVD purposes.   Accordingly, the proposed clarification should contain a scope exclusion for CSPV products assembled from U.S.-origin cells.

*Case Brief to Sec'y of Commerce, from Steptoe & Johnson LLP, re: "Case Brief on Scope Issues Certain Crystalline Silicon Photovoltaic Products from China and Taiwan",* (October 16, 2014) (emphasis added), AD P.R. Doc. 779 at 3-4 (App. Tab 17), CVD P.R. Doc. 357 at 3-4 (App. Tab 18).

It is clear from Suniva's consistent reminders to Commerce that Suniva is a member of the domestic industry, and to include an explicit exclusion for modules containing U.S.-origin cells, that Suniva was repeatedly requesting an exclusion because it was concerned about the harm it would suffer in the absence of such an exclusion.  For the USG to claim that Suniva did not argue that the domestic industry would be injured is disingenuous.

7. **Suniva does not need to be the sole voice of the U.S. domestic industry to point out when Commerce has taken actions that are prohibited by statute**

The USG argues that Suniva's "broad assertion of harm to the 'domestic industry' improperly implies that Suniva's position represents the domestic industry as a whole." According to the USG, Suniva is only one of two domestic producers, and the other domestic producer "supported Commerce's scope clarification" and did not claim that such a scope would harm the domestic injury.  Defendant's Opposition at 47-48.

First, Suniva does not need to be the sole voice of the U.S. domestic industry to speak up when Commerce has acted in a manner that is prohibited by law.  U.S. authorities are thoroughly consistent that the central purpose of AD/CVD law is to protect domestic production and to

apply import duties only to foreign merchandise.  *See* 19 U.S.C. § 1673 ("{i}f … the administering authority determines that a class or kind of **foreign merchandise** is being, or is likely to be, sold in the United States at less than its fair value . . . then there shall be **imposed upon such merchandise** an antidumping duty . . ."); *Diamond Sawblades Mfrs.' Coalition v. U.S. Dep't of Commerce & U.S. Int'l Trade Comm'n*, 11 F. Supp. 3d 1303, 1314 (Ct. Int'l Trade 2014) ("an antidumping duty order protects domestic producers by imposing duties . . ."); *Ceramica Regiomontana, S.A. v. United States*, 64 F.3d 1579, 1580 (Fed. Cir. 1995) ("{t}he United States countervailing duty laws **protect domestic industries** from unfair foreign competition").  In its case brief to the Department, Suniva explained that the central purpose of the AD/CVD laws is to protect the domestic industry producing the domestic like product.  U.S. law repeatedly states that import duties are to be applied only to "foreign" merchandise and that "domestic" producers are to be protected.  *See Case Brief to Sec'y of Commerce, from Steptoe & Johnson LLP, re: "Case Brief on Scope Issues Certain Crystalline Silicon Photovoltaic Products from China and Taiwan",* (October 16, 2014), AD P.R. Doc. 779 at 6-9 (App. Tab 17), CVD P.R. Doc. 357 at 6-9 (App. Tab 18).

Second, the USG misconstrues Suniva's position.  Suniva is a member of the domestic industry – a fact uncontested by the USG.  Therefore, it follows logically that if Suniva is harmed, then the domestic industry, of which Suniva comprises a part, also is harmed, at least to some extent.  It is one thing to say that harm to Suniva means at least some harm to the domestic injury.  It is another to say that Suniva comprises 100 percent of the U.S. domestic industry.  Suniva said the former, never the latter.  In fact, in the "Plaintiff Background" section of Suniva's brief, Suniva plainly says it is not the sole U.S. producer of solar cells.  Suniva quotes from the International Trade Commission ("ITC"), stating that it is one of "two remaining U.S.

producers of CSPV cells" and that both remaining producers "internally consume the majority of the CSPV cells they manufacture in the United States in their U.S. production of CSPV modules" (footnote omitted).  *Certain Crystalline Silicon Photovoltaic Products from China and Taiwan*, Investigation Nos. 701-TA-511 and 730-TA-1246-1247 (Final), Pub. 4519, Feb. 2015, ITC.  Suniva's Brief at 6.  Additionally, in the first sentence of the "Plaintiff Background" section, Suniva states that it is "the leading U.S. manufacturer of high-efficiency, cost-competitive solar cells and modules".  This statement informs that Suniva is the "leading" manufacturer – not the "only" manufacturer.  Suniva's Brief at 5.

**B.      Commerce's decision to not include a scope exemption for cells assembled in China of U.S.-origin cells was not in accordance with law because it imposes duties on Suniva's domestic – not foreign – merchandise**

**1.      The scope of the AD/CVD Orders in *Solar II* covers U.S. domestic merchandise**

The USG argues that the scope does not cover anything but Chinese merchandise.  Defendant's Opposition at 12, 46.  In making this argument, the USG misunderstands the bounds of Commerce's discretion.  Commerce was not working from a clean slate when it decided the scope of *Solar II*.  The scope covers U.S. domestic merchandise because Commerce had already determined that the very same type of modules assembled in China of U.S.-origin cells are U.S. domestic merchandise.  *See* section I.A.1. above.  To depart from this clear precedent, Commerce would have needed to explain its decision.  "An agency is obligated to follow precedent, and if it chooses to change, it must explain why."  *M.M. & P. Maritime Advancement*, at 755.  In the instant case, Commerce failed to "explain why" it departed from precedent when it could not articulate how the modules, made of U.S. cells and assembled in China, are different in *Solar II* than they were in *Solar I*, when they were found to be U.S. domestic merchandise.

**2.      Commerce's interpretation of foreign merchandise in this case is neither reasonable nor entitled to deference**

The USG maintains that "Commerce's interpretation of 'foreign merchandise' in this case … is reasonable and entitled to deference."  Defendant's Opposition at 47.  SW also maintains that "Commerce reasonably determined that c-Si PV cells not of Chinese-origin, which are assembled into modules in China, are Chinese-origin modules and, as such, 'foreign merchandise' …" .  Intervenor Defendant's Response at 34.  To the contrary, Commerce's decision of what constitutes "foreign merchandise" in this case is neither reasonable nor entitled to deference.  Commerce's decision to apply AD/CVDs to U.S. origin merchandise constitutes an abuse of discretion because Commerce failed to produce a scope that "best effectuate{s} the purpose of the antidumping laws".  *Mitsubishi Elec. Corp. v. United States*, at 1583.  Moreover, discretion is not warranted where the Department has failed to follow precedent, or adequately explain why, as discussed above.

The USG also argues that "Suniva provides no authority to suggest that Commerce may not exercise its gap-filling authority to determine, on a case-by-case basis, what merchandise is 'foreign' for purposes of the statute."  Defendant's Opposition at 46.  The USG's argument is misplaced.  Suniva never contends that the Department lacks the discretion to determine the scope of an AD or CVD order.  In fact, Suniva quotes the Federal Circuit, saying that a determination by Commerce regarding the scope of an AD order "lies largely in {Commerce's} discretion".  However, such discretion "must be exercised in light of all the facts before {Commerce} and must reflect that agency's judgment regarding the scope and form of an order that will best effectuate the purpose of the antidumping laws …".  *Mitsubishi Elec. Corp. v. United States*, at 1583.  Suniva's Brief at 10.  Here, Commerce failed to craft a scope that "best effectuate{s} the purpose of the antidumping laws", because it chose to apply AD/CVDs to U.S.

17

domestic merchandise, in violation of the law.  *See, e.g.*, 19 U.S.C. § 1673 ("{i}f … the administering authority determines that a class or kind of **foreign merchandise** is being, or is likely to be, sold in the United States at less than its fair value . . . then there shall be **imposed upon such merchandise** an antidumping duty …"); *Canadian Wheat Bd. V. United States*, 641 F.3d 1344, 1351 (Fed. Cir. 2011) (antidumping duties "are imposed **to protect American industries** against unfair trade practices by foreign entities who sell in the American market" (citation omitted) (emphasis added)); *Ceramica Regiomontana, S.A. v. United States*, 64 F.3d 1579, 1580 (Fed. Cir. 1995) ("{t}he United States countervailing duty laws **protect domestic industries** from unfair foreign competition").

Additionally, the scope decision in *Solar II* cannot be examined as if it existed in a vacuum.  It follows the Department's scope decision in *Solar I*, and is in direct conflict with its predecessor.  The Department has yet to explain how, given the same merchandise and the same set of circumstances, it can come to opposite conclusions.  "Gap-filling" authority is no license to issue inconsistent decisions on the same merchandise.

> **3.** **Commerce failed to act reasonably when it determined that solar panels comprised of U.S. cells, which it had already determined were U.S.-origin goods, were suddenly "foreign" merchandise**

SW argues Commerce "acted reasonably" when it included modules assembled in China of U.S.-origin cells within the scope of *Solar II* because these modules were "being dumped and subsidized and were injurious to the U.S. solar industry" and the domestic industry needed to be able to protect itself against imports of these modules. Intervenor Defendant's Response at 35.

While this justification may be adequate for DOC action against foreign merchandise, even involving countries other than China, as discussed in section I.A.5 above, there is no basis for SW to urge Commerce to include merchandise in the scope of any AD/CVD investigation

that previously has been found by Commerce to be U.S. domestic merchandise.  While SW may wish to see some aspect of its domestic competition subject to AD/CVD duties, the fact remains that the central purpose of U.S. AD/CVD law is to apply import duties only to foreign products and to protect domestic production, which Commerce previously found to include modules made from U.S. cells.

        **C.**      **Commerce's revised scope must be limited in application to prospective entries only**

           **1.**      **Defendant appears to concede that the revised scope cannot, or should not, be applied retrospectively**

The USG appears to acknowledge that the expanded scope cannot, or should not, be applied retrospectively, to entries made on or after the dates that the preliminary AD and CVD determinations were published in the summer of 2014.  On the AD side, the USG states that the expanded scope applies only to "merchandise entering *on or after* the publication of the antidumping final determination."  Defendant's Opposition at 48-49 (emphasis in original).  The final AD determination was published on December 23, 2014.  On the CVD side, the expanded scope applies only to "entries … covered by the scope of the countervailing duty order and that entered on or after February 10, 2015 (the date of publication of the ITC's final injury determination) ...".  Defendant's Opposition at 49-50.  With the USG's response brief, the record now demonstrates that Commerce concedes that it cannot, or should not, apply the expanded scope retrospectively to the summer of 2014.

           **2.**      **Suniva could only address the contents of Commerce's instructions to CBP after they were issued**

SW argues that "Suniva did not raise this argument {that the revised scope must be applied only to entries made on or after the date of publication of the AD/CVD Orders} in its case brief below {to the Department of Commerce in 2014}, and thus failed to exhaust its

administrative remedies." Intervenor Defendant's Response at 36.    However, Suniva had no

way to address Commerce's final cash deposit instructions to U.S. Customs and Border

Protection ("CBP") until they were published, in early 2015.  Message 5002303 (Jan. 2, 2015),

AD P.R. Doc. 822 (App. Tab 19), and AD P.R. Doc. 825 (App. Tab 20); message 5051302 (Feb.

18, 2015), AD P.R. Doc. 836 (App. Tab 21); message 5051303 (Feb. 20, 2015), CVD P.R. Doc.

412 (App. Tab 22).  In Suniva's briefs to the Department of Commerce in 2014, Suniva had no

way of knowing which scope definition Commerce would ultimately apply, let alone which

entries that definition would apply to.

### 3.    Both Suniva and SunPower Corp. argued in their briefs to the Court that the revised scope must not be applied retrospectively

SW argues that Suniva is the only party to take the position before the Court that the

revised scope must only apply to entries made on or after the date that the AD/CVD Orders were

published in the Federal Register, on February 18, 2015.[3]  Intervenor Defendant's Response at

37.  That assertion is incorrect.  In the SunPower Corporation ("SunPower") brief in support of

its motion for judgment on the agency record, SunPower too makes the argument that the revised

scope must not apply to entries made prior to the publication of the AD Order on February 18,

2015.[4]  SunPower's Brief at 24.

### 4.    Suniva clearly articulated its argument that the revised scope must apply to prospective entries only

SW argues that "… the basis for Suniva's argument {that the revised scope must be

limited in application to prospective entries only} is not clear."  Intervenor Defendant's

---

[3] Defendant, on the other hand, recognizes that both Suniva and SunPower Corporation made this argument.  Defendant's Opposition at 48.

[4] SunPower also presents an alternative:  the revised scope must not apply to entries made prior to the publication of the final AD determination on December 23, 2014.  SunPower's Brief at 24.

Response at 37.  The USG argues that Suniva "… fail{ed} to develop {its} argument such that we can respond.  This issue therefore is waived and this Court should disregard this issue" (citations omitted).  Defendant's Opposition at 48.

To the contrary, Suniva explained in its brief that "{t}he revised scope should not apply retrospectively to entries made during the preliminary periods when importers relied upon the Department's scope as initiated and its statement that it would 'be informed by' the prior CSPV scope analysis."  Suniva's Brief at 23.  That statement is clear and complete.

## II.   CONCLUSION

WHEREFORE, Consolidated Plaintiff, Suniva, respectfully requests that this Honorable Court hold that the Department's scope analysis in the *Final Determinations* is not supported by substantial evidence or is otherwise not in accordance with law, as described herein, and should be remanded to Commerce to correct its errors.  Suniva further requests that this Court provide such other relief as this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Gregory S. McCue

Gregory S. McCue

*Counsel for Suniva, Inc.*

STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
(202) 429-6421
gmccue@steptoe.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for Consolidated Plaintiff Suniva, Inc.'s Reply Brief, as computed by Steptoe & Johnson LLP's word processing system (Microsoft Word 2010) is 6,295.

/s/ Gregory S. McCue
(Signature of Attorney)

March 29, 2016
(Date)