UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE DONALD C. POGUE, SENIOR JUDGE

| | |
|---|---|
| SUNPOWER CORP., )<br><br>Plaintiff, )<br><br>and )<br><br>CANADIAN SOLAR INC., *et. al.,* )<br><br>Plaintiff-Intervenors, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant, )<br>and )<br><br>SOLARWORLD AMERICAS, INC., )<br><br>Defendant-Intervenor. )<br> ) | Consol. Court No. 15-00067 |

**CONSOLIDATED PLAINTIFFS' JOINT REPLY BRIEF IN SUPPORT OF THEIR
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

John M. Gurley
Diana Dimitriuc Quaia
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
(202) 857-6301

Counsel for Consolidated Plaintiffs Canadian Solar Inc.,
Changzhou Trina Solar Energy Co., Ltd., China Sunergy
(Nanjing) Co., Ltd., Chint Solar (Zhejiang) Co., Ltd., ET
Solar Industry Ltd., Hefei JA Solar Technology Co., Ltd.,
Jinko Solar Co., Ltd., LDK Solar Hi-Tech (Nanchang)
Co., Ltd., Perlight Solar Co., Ltd., ReneSola Jiangsu Ltd.,
Shanghai JA Solar Technology Co., Ltd., Shenzhen
Sacred Industry Co., Ltd., Shenzhen Sungold Solar Co.,
Ltd., Sumec Hardware & Tools Co., Ltd., Sunny Apex
Development Ltd., Wuhan FYY Technology Co., Ltd.,
Wuxi Suntech Power Co., Ltd., Zhongli Talesun Solar
Co., Ltd., Znshine PV-Tech Co., Ltd.

Craig A. Lewis
Samantha  Clark Sewall
Wesley Verne Carrington
HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW.
Washington, DC 20004
(202) 637-8613

Counsel for Consolidated Plaintiffs Shanghai
BYD Co., Ltd. and BYD (Shangluo) Industrial
Co., Ltd.

March 29, 2016

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    SUMMARY OF ARGUMENT ..............................................................................2

III.   ARGUMENT .........................................................................................................4

       A.   THE SCOPE OF <u>SOLAR II</u> IS IN CONFLICT WITH THE STATUTE..............4

            1.   <u>Solar II</u> Provides for the Application of Conflicting Origin Rules at
                 the Same Time and for Two Country of Origin Results for the
                 Same Merchandise.................................................................................4

            2.   Congress Has Limited the Applicability of AD/CVD Laws to
                 Merchandise from Countries Named in the Petition ...............................8

            3.   Commerce's Departure from the Substantial Transformation Test
                 to Determine Origin Is Unreasonable........................................................9

       B.   THE COUNTRY OF ORIGIN ANALYSIS IN SOLAR II IS NOT
            SUPPORTED BY SUBSTANTIAL EVIDENCE ..............................................14

            1.   The "Additional Analysis" Is No Analysis at All .....................................14

            2.   Commerce's "Additional Analysis" Is Not an Appropriate Origin
                 Test .............................................................................................................18

       C.   PETITIONER'S INTENT IS NOT A VALID BASIS FOR COMMERCE
            TO PROVIDE A REMEDY NOT AUTHORIZED BY STATUTE ..................22

       D.   EVASION CONCERNS CANNOT TRUMP THE STATUTORY
            SCHEME.........................................................................................................23

       E.   UNDER THIS COURT'S PRECEDENT, COMMERCE'S
            UNPRECEDENTED SCOPE EXPANSION AT THE LATE STAGE OF
            THE PROCEEDING WAS AN ABUSE OF DISCRETION ...........................27

IV.    REVOCATION OF THE SOLAR II ORDERS IS THE APPROPRIATE
       REMEDY ...............................................................................................................29

V.     CONCLUSION ......................................................................................................30

AFDOCS/13091044.5

# TABLE OF AUTHORITIES

**Cases**

Advanced Tech. & Materials Co. v. United States,
No. 9-00511, 2011 WL 5191016 (Ct. Int'l Trade Oct. 12, 2011) ....................................8, 10

AMS Assocs., Inc. v. United States,
737 F.3d 1338 (Fed. Cir. 2013) ..............................................................................................26

Appleton Papers Inc. v. United States,
37 CIT __, 929 F. Supp. 2d 1329 (2013)...............................................................10, 20, 21

Burlington Truck Lines, Inc. v. United States,
371 U.S. 156 (1962) ................................................................................................................17

Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,
467 U.S. 837 (1984) ..................................................................................................................9

Dorbest v. United States,
604 F.3d 1363 (Fed. Cir. 2010) ................................................................................................3

E.I. Du Pont de Nemours & Co. v. United States,
22 CIT 370, 8 F. Supp. 2d 854 (1998)..........................................................................*passim*

Ethan Allen Operations, Inc. v. United States,
39 CIT __, 121 F. Supp. 3d 1345, 1352 (2015)......................................................................24

Ferrostaal Metals Corp. v. United States,
11 CIT 470, 664 F. Supp. 535 (1987).............................................................................10, 21

Food and Drug Admin. v. Brown & Williamson Tobacco Corp.,
529 U.S. 120 (2000) ..................................................................................................................9

Freeport Minerals Co. v. United States,
776 F.2d 1029 (Fed. Cir. 1985) ...........................................................................................3, 18

Huvis Corp. v. United States,
570 F.3d 1347 (Fed. Cir. 2009) ..............................................................................................13

Legacy Classic Furniture, Inc. v. United States,
36 CIT __, 867 F. Supp. 2d 1321 (2012)................................................................................24

Minebea Co. v. United States,
16 CIT 20, 782 F. Supp. 117 (1992), aff'd 984 F.2d 1178 (Fed. Cir. 1993).........22, 27, 28, 29

Mitsubishi Elec. Corp. v. United States,
12 CIT 1025, 700 F. Supp. 538 (1988), aff'd 898 F. 2d 1577 (Fed. Cir. 1990)...............25, 26

Nakornthai Strip Mill Pub. Co. v. United States,
32 CIT 1272, 587 F. Supp. 2d 1303 (2008)............................................................................21

# TABLE OF AUTHORITIES

Pakfood Pub. Co. v. United States,
   453 Fed. Appx. 986 (Fed. Cir. 2011) ................................................... 13

Peer Bearing Co.– Changshan v. United States,
   38 CIT ___, 986 F. Supp. 2d 1389 (2014) .............................................. 18

Peer Bearing Co.-Changshan v. United States,
   No. 11-00022, 2015 WL 9412861 (Ct. Int'l Trade Dec. 21, 2015) ................................ *passim*

Rhone-Poulenc, Inc. v. United States,
   20 CIT 573, 927 F. Supp. 451 (1996) ................................................... 17

Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,
   No. 14-00106, 2016 WL 524268 (Ct. Int'l Trade Feb. 9, 2016) ............................ 21

Smith Corona Corp. v. United States,
   16 CIT 562, 796 F. Supp. 1532 (1992) .............................................. 28, 29

Smith Corona Corp. v. United States,
   17 CIT 47, 811 F. Supp. 692 (1993) ................................................... 10

Timken Co. v. United States,
   25 CIT 939, 166 F. Supp. 2d 608 (2001) ................................................ 17

Ugine & ALZ Belg., N.V. v. United States,
   31 CIT 1536, 517 F. Supp. 2d 1333 (2007) ...................................... 3, 8, 11, 23

Ugine & ALZ Belgium v. United States,
   551 F.3d 1339 (Fed. Cir. 2009) ....................................................... 11

Ward v. Sternes,
   334 F.3d 696, 704 (7th Cir. 2003) .................................................... 21

Wieland-Werke AG v. United States,
   22 CIT 129, 4 F. Supp. 2d 1207 (1998) ................................................ 17

**Statutes**

19 U.S.C. § 66 ............................................................................. 12

19 U.S.C. § 1671 ........................................................................ 8, 24

19 U.S.C. § 1671(a)(1) ...................................................................... 23

19 U.S.C. § 1673 ........................................................................... 24

19 U.S.C. §1673(1) ................................................................. 8, 10, 19, 23

19 U.S.C. § 1677j ........................................................................... 26

## TABLE OF AUTHORITIES

19 U.S.C. § 1677j(b) ............................................................................................... 12, 18

**Regulations**

19 C.F.R. § 134.1(b) .................................................................................................... 12

19 C.F.R. § 351.225(h) ................................................................................................ 18

**Administrative Determination**

Cellular Mobile Telephones and Subassemblies form Japan, 50 Fed. Reg. 45447
    (Dep't Commerce Oct. 31, 1985) (final LTFV determ.) ......................................... 16

Certain Crystalline Silicon Photovoltaic Products From the People's Republic of
    China, 79 Fed. Reg. 76962 (Dep't Commerce Dec. 23, 2014) (final CVD
    determ.), and accompanying Issues and Decision Memorandum .......................... 1, 14, 15, 21

Certain Crystalline Silicon Photovoltaic Products From the People's Republic of
    China, 79 Fed. Reg. 76970 (Dep't Commerce Dec. 23, 2014) (final LTFV
    determ.), and accompanying Issues and Decision Memorandum .................................. *passim*

Certain Crystalline Silicon Photovoltaic Products From the People's Republic of
    China, 80 Fed. Reg. 8592 (Dep't Commerce Feb. 18, 2015) (Dep't Commerce
    Feb. 18, 2015) (amended final CVD determ. and AD/CVD orders).................................. 1, 25

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules,
    from the People's Republic of China, 77 Fed. Reg. 63791 (Dep't Commerce
    Oct. 17, 2012) (final LTFV determ.), and accompanying Issues & Decision
    Memo................................................................................................................................. 4

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From the People's Republic of China, 77 Fed. Reg. 73017 (Dep't Commerce
    Dec. 7, 2012) (CVD order)................................................................................... *passim*

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From the People's Republic of China, 77 Fed. Reg. 73018 (Dep't Commerce
    Dec. 7, 2012) (amended LTFV determ. and AD order) .......................................... *passim*

Large Newspaper Printing Presses and Components Thereof, Whether Assembled
    or Unassembled from Germany, 61 Fed. Reg. 38166 (Dep't Commerce July
    23, 1996) (final LTFV determ.)............................................................................... 16

**Other Authorities**

Oxford Dictionaries, accessible at
    http://www.oxforddictionaries.com/us/definition/american_english/analysis ...................... 15

In accordance with Rule 56.2 of the Rules of this Court and the March 17, 2016 Amended Scheduling Order in this action, ECF No. 84, we submit this Joint Reply Brief on behalf of Consolidated Plaintiffs Canadian Solar Inc., Changzhou Trina Solar Energy Co., Ltd., China Sunergy (Nanjing) Co., Ltd., Chint Solar (Zhejiang) Co., Ltd., ET Solar Industry Ltd., Hefei JA Solar Technology Co., Ltd., Jinko Solar Co., Ltd., LDK Solar Hi-Tech (Nanchang) Co., Ltd., Perlight Solar Co., Ltd., ReneSola Jiangsu Ltd., Shanghai JA Solar Technology Co., Ltd., Shenzhen Sacred Industry Co., Ltd., Shenzhen Sungold Solar Co., Ltd., Sumec Hardware & Tools Co., Ltd., Sunny Apex Development Ltd., Wuhan FYY Technology Co., Ltd., Wuxi Suntech Power Co., Ltd., Zhongli Talesun Solar Co., Ltd., Znshine PV-Tech Co., Ltd., as well as Consolidated Plaintiffs Shanghai BYD Co., Ltd. and BYD (Shangluo) Industrial Co., Ltd., collectively "Consolidated Plaintiffs."

## I.    INTRODUCTION

Consolidated Plaintiffs submit their reply in support of their motion for judgment upon the agency record challenging the U.S. Department of Commerce's ("Commerce") final determinations and resulting orders in the antidumping and countervailing investigations in Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China ("Solar Products from China").  See Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China, 79 Fed. Reg. 76970 (Dep't Commerce Dec. 23, 2014) (final LTFV determ.), AD P.R. 834 ("Solar II Final AD Determination"), and accompanying Issues and Decision Memorandum, AD P.R. 817 ("Solar II AD ID Memo"); Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China, 79 Fed. Reg. 76962 (Dep't Commerce Dec. 23, 2014) (final CVD determ.), CVD P.R. 408 ("Solar II Final CVD Determination"), and accompanying Issues and Decision Memorandum, CVD P.R. 388 ("Solar II CVD ID Memo"); Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China, 80 Fed.

Reg. 8592 (Dep't Commerce Feb. 18, 2015) (amended final CVD determ. and AD/CVD orders), AD P.R. 853, CVD P.R. 417 ("<u>Solar II Orders</u>").

In their Motion for Judgment Upon the Agency Record, Consolidated Plaintiffs challenged Commerce's scope definition in <u>Solar II</u> which resulted in the imposition of the *Chinese* <u>Solar II Orders</u> on merchandise that is of *non-Chinese origin*, in violation of Commerce's statutory authority. <u>See</u> Consol. Plaintiffs' Joint Rule 56.2 Motion for Judgment on the Agency Record and Memorandum of Law in Support (Oct. 5, 2015), ECF No. 61 ("Pl. Br."). Consolidated Plaintiffs argued that Commerce's scope determination cannot be reconciled with the country of origin determinations applying the substantial transformation test to the *same* merchandise in <u>Solar I</u>[1] or in the companion AD investigation on <u>Solar Products from Taiwan</u>. Pl. Br. at 41.

## II.    SUMMARY OF ARGUMENT

Defendant and Defendant-Intervenor provide lengthy briefs that fail to demonstrate how Commerce's unprecedented scope definition in <u>Solar II</u>, which deviates from statute and any other case applying a substantial transformation analysis, in order to provide an extra-statutory remedy for this investigation and this petitioner *only*, can be sustained under this Court's standard of review. <u>See</u> Defendant's Opposition to Motions for Judgment Upon the Administrative Record (Feb. 9, 2016), ECF No. 78  (" Def. Br."); Defendant-Intervenor SolarWorld Americas, Inc.'s ("SolarWorld") Response Brief (Feb. 9, 2016) ECF. No. 79 ("Def.-Int. Br.").

---

[1] <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China</u>*,* 77 Fed. Reg. 73018 (Dep't Commerce Dec. 7, 2012) (amended LTFV determ. and AD order) and <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China</u>, 77 Fed. Reg. 73017 (Dep't Commerce Dec. 7, 2012) (CVD order*)*(collectively "<u>Solar I Orders</u>").

It is well-known that Commerce cannot modify its practice in an manner contrary to the plain language of the statute. Dorbest v. United States, 604 F.3d 1363, 1371 (Fed. Cir. 2010). Contrary to that principle, the scope of Solar II is the result of an unlawful departure from Commerce's long-standing and judicially-affirmed substantial transformation test in favor of a new "analysis" consisting of discretionary factors that have nothing to do with the production process or the product whose origin is being determined.  The result of this new "analysis" is the simultaneous application of two contradictory origin rules and two country of origin determinations for the same merchandise, a result that is not permitted by statute.  As this Court has explained, Commerce may not impose duties applicable to one country if the merchandise originates from a different country. See Ugine & ALZ Belg., N.V. v. United States, 31 CIT 1536, 1550-51, 517 F. Supp. 2d 1333, 1345 (2007).

Further, there are no factual findings and no record evidence supporting the new "analysis."  Commerce's attempt to transform the absence of factual findings as to the "subject merchandise" into an affirmative finding of origin does not establish a logical connection between the facts found and conclusions drawn, nor can it reasonably be characterized as "a judgment anchored in the language and spirit of the relevant statutes and regulations." Freeport Minerals Co. v. United States, 776 F.2d 1029, 1032 (Fed. Cir. 1985). As discussed in our main brief and as addressed below, Consolidated Plaintiffs request that the Court find the scope language of Solar II to be contrary to law and unsupported by substantial evidence on the record.

III.   **ARGUMENT**

A.   **THE SCOPE OF <u>SOLAR II</u> IS IN CONFLICT WITH THE STATUTE**

1.   **<u>Solar II</u> Provides for the Application of Conflicting Origin Rules at the Same Time and for Two Country of Origin Results for the Same Merchandise**

Historical context is important in this case to illustrate the extraordinary remedy that Commerce has reserved for one petitioner only, SolarWorld. Indeed, counsel is unaware of any other case where Commerce has issued two country of origin rules, in complete contradiction with each other, for the identical merchandise, to be applied simultaneously, for the single end goal of dragging into an AD/CVD order on China not only Chinese subject merchandise but also a large universe of non-Chinese, thus "non-subject," merchandise. The breadth of this proposed remedy is a clear departure from the statutory remedies that Commerce is authorized to provide.

Defendant reframes this untenable outcome by arguing that <u>Solar II</u> analyzed merchandise that fell beyond the scope of <u>Solar I</u> and that the <u>Solar II</u> proceedings cover merchandise determined to be Chinese pursuant to an alternative country or origin analysis that Commerce devised specially for this case. Def. Br. at 12. That line of reasoning fails to account for the fact that the product targeted by both <u>Solar I</u> and <u>Solar II</u> is identical: it consists of solar modules containing crystalline silicon photovoltaic cells. Defendant makes no effort to reconcile the simultaneous application of two contradictory country of origin rules on the same merchandise.

In its 2012 antidumping and countervailing duty investigations in <u>Solar I</u>, Commerce stated in no ambiguous terms that "{t}he scope of an AD or CVD order is limited to merchandise that is produced in the country covered by the order." <u>See</u> <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China</u>, 77 Fed. Reg.

63791 (Dep't Commerce Oct. 17, 2012) (final LTFV determ.), and accompanying Issues & Decision Memo at 5 (Cmt. 1) ("Solar I AD ID Memo").[2]

Commerce closely examined the country of origin of solar modules through its long-standing and judicially-endorsed substantial transformation test and determined the solar cells to be the "essential active component" of a solar module, and therefore, the country of origin determining component of the solar module. Solar II AD ID Memo at 15, AD P.R. 817. Commerce found that "module assembly does not substantially alter the essential nature of solar cells nor does it constitute significant processing such that it changes the country-of-origin of the cell . . . ." Memorandum from J. Pedersen to G. Taverman, re: Scope Clarification at 8 (Mar. 19, 2012) ("Solar I Scope Clarification Memo"), attached as Exh. 2 to Respondents' Scope Comments, AD P.R. 125, CVD P.R. 88. Commerce concluded in Solar I that "where solar cell production occurs in a different country from solar module assembly, the country-of-origin of the solar modules/panels is the country in which the solar cell was produced." Solar I AD ID Memo at 8 (attached to Respondents' Scope Comments, at Exh. 2, AD P.R. 125, CVD P.R. 88).[3] Commerce found that it could not lawfully cover within the scope of the Solar I Orders modules that are merely assembled in China if the cells were not Chinese.

---

[2] Attached as Exh. 1 to Letter from Sidley Austin to Commerce, Inv. Nos. A-570-010, A-583-853, and C-570-011, re Comments on Scope on behalf of Yingli Green Energy Holding Co. Ltd., Yingli Green Energy, Americas, Inc., Canadian Solar Inc., Changzhou Trina Solar Energy Co., Ltd., Wuxi Suntech Power Co., Ltd., Shanghai JA Solar Technology Co., Ltd., Hefei JA Solar Technology, Co., Ltd., and Jinko Solar Co., Ltd. and with the support of the China Chamber of Commerce for Import and Export of Machinery and Electronic Products ("CCCME") and its members (Feb. 18, 2014) ("Respondents' Scope Comments"), AD P.R. 125, CVD P.R. 88.

[3] In the companion case, Solar Products from Taiwan, Commerce followed this same country of origin analysis and determination (i.e., cells confer origin of solar panels and assembly does not substantially transform the product to confer origin). Therefore, under Solar I and Solar Products from Taiwan the origin rule is that the origin of the cells determines the origin of the module.

The resulting AD/CVD Orders in Solar I contained scope language that covered all Chinese cells, modules made in China containing Chinese cells as well as modules made in any third country containing Chinese cells.  See Solar I Orders. In contrast, the scope of Solar II specifically excludes merchandise covered by the Solar I Orders and covers modules assembled in China containing crystalline cells produced in third countries. Commerce reached this decision by employing an alternative country of origin analysis. The differences in scope coverage and the origin test applied are illustrated below:

| SOLAR I | SOLAR II |
| --- | --- |
| *Relevant Scope Language* | |
| The merchandise covered by this order is crystalline silicon photovoltaic cells, and modules, laminates, and panels, consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including, but not limited to, modules, laminates, panels and building integrated materials. . . . | The merchandise covered by these orders are modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including building integrated materials. ***For purposes of this investigation, subject merchandise includes modules, laminates and/or panels assembled in the PRC consisting of crystalline silicon photovoltaic cells produced in a customs territory other than the PRC***. . . . |
| Modules, laminates, and panels produced in a third-country from cells produced in the PRC are covered by this order; ***however, modules, laminates, and panels produced in the PRC from cells produced in a third-country are not covered by this order***.[4] | Further, also ***excluded from the scope of these orders are any products covered by the existing antidumping and countervailing duty orders on crystalline silicon photovoltaic cells***, whether or not assembled into modules, laminates and/or panels, from the PRC. {i.e. Solar I}[5] |
| *Criteria for Origin Test* | |
| Whether assembly of cells into modules would result in substantial transformation. Criteria relied upon:[6] | Merchandise assembled in China that contains cells produced in a third country other than the China is covered by the investigations[7] |

[4] Solar I Orders, 77 Fed. Reg. at 73018-19 and 77 Fed. Reg. at 73017 (emphasis added).

[5] Solar II Orders, 80 Fed. Reg. at 8593 (emphasis added).

[6] Solar I AD ID Memo at 6, attached to Respondents' Scope Comments, at Exh. 1, AD P.R. 125, CVD P.R. 88.

[7] Solar II AD ID Memo at 12-13, AD P.R. 817; Solar II CVD ID Memo at 38-41, CVD P.R. 388.

| | |
|---|---|
| 1.   whether the processed downstream product falls into a different class or kind of product when compared to the upstream product;<br>2.   whether the essential component of the merchandise is substantially transformed in the country of exportation;<br>3.   The extent of processing. | 1. Petitioner's Intent was to cover all modules assembled in China using third country cells<br>2. Statement On Complexity of Solar Industry<br>3.  Perceived circumvention / administrability Concerns |
| ***Application of Origin Test***<br>***Country of Origin of Module Assembled in China with Third Country Cells*** | |
| Third Country | China |

Both Defendant and SolarWorld explain in their briefs that Commerce's traditional substantial transformation test for determining origin (the test applied in Solar I) is intended to coexist with the new origin analysis in Solar II.  Def. Br. at 20-21; Def.-Int. Br. at 29 ("Commerce's determinations not to rely solely on its substantial transformation analysis . . . ."). Moreover, in order to apply the Solar II scope language *both* origin rules must be applied at the same time on the same merchandise.  Let's take the example of a solar module assembled in China from non-Chinese crystalline cells. To determine if this product is covered by Solar II, of necessity, the Solar I origin rule applies via the exclusionary scope language and the "new" origin rule also applies at the same time.

While Defendant and SolarWorld strongly dispute that Solar II results in the same product having two countries of origin, they are absolutely wrong.  Def. Br. at 25; Def.-Int. Br. at 31-32.  This result is unavoidable. The identical product is being found at the same time Chinese (in Solar II) and non-Chinese (in Solar I) as a result of the application of two conflicting origin rules.

Defendant's position is that solar modules that are found *not Chinese* under the origin analysis of Solar I, are then covered by Solar II once Commerce applies its new origin rule. Def.

Br. at 13. This new origin rule is nothing more than a bare statement that modules assembled in

China are of Chinese origin. According to Defendant, this outcome is reasonable and lawful

largely because SolarWorld allegedly intended to cover under AD/CVD all solar modules

regardless of their country of origin. See e.g. Def. Br. at 12, 21.  However, Defendant's intent

alone cannot grant Commerce authority to provide extra-statutory trade remedies, nor does it

resolve Solar I's inherent contradiction with Solar II.

### 2.   Congress Has Limited the Applicability of AD/CVD Laws to Merchandise from Countries Named in the Petition

Countervailing and antidumping duty orders apply to countries, not individual producers.

19 U.S.C. §§ 1671 and 1673(1); see also E.I. Du Pont de Nemours & Co. v. United States, 22

CIT 370, 375, 8 F. Supp. 2d 854, 859 (1998). As such, Commerce's authority to assess AD/CVD

duties on a product requires it to "specify both the class or kind of merchandise and the particular

country from which the merchandise originates." Ugine & ALZ Belg., N.V., 31 CIT at 1550, 517

F. Supp. 2d at 1345; Advanced Tech. & Materials Co. v. United States, No. 9-00511, 2011 WL

5191016, at *4 (Ct. Int'l Trade Oct. 12, 2011).

> Conversely, if merchandise does not meet one of the parameters—
> either class or kind, or country of origin—it is outside the scope of
> the {antidumping duty} or {countervailing duty} order. . . . And if
> the merchandise is outside the scope of an {antidumping duty} or
> {countervailing duty} order, i.e., not 'subject merchandise,' then
> Commerce, per statute and per its own rules, may not impose
> duties on those goods.

Ugine & ALZ Belg., N.V., 31 CIT at 1551, 517 F. Supp. 2d at 1345 (citations omitted)

(footnotes omitted).

It follows that a good that is not produced in a subject country is not "subject

merchandise" and cannot be covered by an AD/CVD order on the subject country. In Solar II,

Defendant argues for the exact opposite origin outcome -  that all modules assembled in China

from third country cells are of Chinese origin.  Def. Br. at 12. Defendant claims that the

circumstances and concerns present in <u>Solar II</u> require a departure from Commerce's usual

approach and that such a departure is entirely within the agency's discretion. <u>Id.</u> at 13. The fact

remains that in <u>Solar II</u>, Commerce exercised its discretion in such a way that the same product

has two countries of origin.  By Defendant's own admission such a result is contrary to the

statute. <u>Id.</u> at 25.

Therefore, no matter how a scope describes a class or kind of merchandise, the

merchandise must be determined to originate in the country covered by the investigation. While

Defendant admits to this important principle (<u>Id.</u> at 17) and argues that its actions are reasonable,

both the end result of <u>Solar II</u> and the decision process used to achieve that end result are

unlawful. Despite the clear origin decision in <u>Solar I</u> that solar cells confer origin, Commerce

arbitrarily determined that for the new investigations the solar panel being made in China confers

origin. This determination deviated from any origin test used by Commerce in the past and was

not based on an analysis of the statute, case law or agency precedent. In doing so,  Commerce

improperly expanded the geographic reach of the Orders to cover non-subject merchandise,

which is a violation of the statute.  "{A}lthough agencies are generally entitled to deference in

the interpretation of statutes that they administer, a reviewing 'court, as well as the agency, must

give effect to the unambiguously expressed intent of Congress.'" <u>Food and Drug Admin. v.</u>

<u>Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 125-26 (2000) (quoting <u>Chevron U.S.A. Inc.</u>

<u>v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 842–43 (1984)).

### 3. Commerce's Departure from the Substantial Transformation Test to Determine Origin Is Unreasonable

Commerce has an obligation to apply orders based on a product's country of origin.  As

the Court has explained, proper administration of AD/CVD orders depends on ensuring that

merchandise is attributed to the proper country of origin. E.I. Du Pont de Nemours & Co., 22

CIT at 375, 8 F. Supp. 2d at 859 ("determining the country where the unfairly traded

merchandise is produced or manufactured is fundamental to the proper administration and

enforcement of the antidumping statute."). Based on decades of consistent Commerce precedent,

the proper country of origin is the country in which the merchandise was last substantially

transformed prior to importation into the United States. See id.

In E.I. DuPont, the Court accorded deference to the substantial transformation rule,

explaining that such rule is "a reasonable application of 19 U.S.C. §1673(1) . . . because it

comports with the plain meaning of the statute." Peer Bearing Co.-Changshan v. United States,

No. 11-00022, 2015 WL 9412861, at *12 (Ct. Int'l Trade Dec. 21, 2015), quoting E.I. Du Pont,

22 CIT at 374, 8 F. Supp. 2d at 858. The Court has affirmed country of origin determinations

based on a substantial transformation analysis. See, e.g., Appleton Papers Inc. v. United States,

37 CIT __, 929 F. Supp. 2d 1329, 1335-36 (2013); Advanced Tech., 2011 WL 5191016, at **3-

5. As the Court has explained, "{t}he Department's 'substantial transformation' rule provides a

yardstick for determining whether the processes performed on merchandise in a country are of

such significance as to require that the resulting merchandise be considered the product of the

country in which the transformation occurred.'" Advanced Tech., 2011 WL 5191016, at *4,

quoting E.I. DuPont, 22 CIT at 374, 8 F. Supp. 2d at 858 (internal quotations omitted); see also

Smith Corona Corp. v. United States, 17 CIT 47, 50, 811 F. Supp. 692, 695 (1993); Ferrostaal

Metals Corp. v. United States, 11 CIT 470, 473, 664 F. Supp. 535, 537 (1987)).

Thus, Commerce has a method of analysis that has been judicially approved and

consistently applied for decades, through which it addresses the question of origin for

merchandise manufactured in more than one country. Defendant acknowledges that Commerce's

normal practice is to determine a product's country of origin using a substantial transformation

analysis. Def. Br. at 18-19 and 23. However, Defendant, as well as SolarWorld argue that

because such practice is not codified in statute or regulations, Commerce has discretion to depart

from it. Id. at 19, citing Ugine & ALZ Belg., N.V., 517 F. Supp. 2d at 1349.  Defendant' reliance

on Ugine is misplaced because, when read in the proper context, the cite from Ugine does not

support Defendant's position.  In Ugine & ALZ Belg., N.V., the Court of Appeals for the Federal

Circuit reviewed a challenge to Commerce's liquidation instructions, which reflected

Commerce's origin determination that certain hot rolled steel was Belgian in origin rather than

German. In describing Commerce's underlying country of origin determination, the court stated

as follows:

> Commerce, under the antidumping statute, has discretion in
> defining the criteria for country-of-origin determinations. See 19
> U.S.C. §§ 66, 1677j(b); 19 C.F.R. § 134.1(b). **Nonetheless,
> Commerce is obligated to follow prior precedent absent some
> legitimate reason for departing from it.** Consol. Bearings Co. v.
> United States, 348 F.3d 997, 1007 (Fed. Cir. 2003). **Here,
> Commerce's prior precedent was clear.** Steel that was hot rolled
> in Germany and not further cold rolled in Belgium was German in
> origin, not Belgian, because the processes performed in Belgium,
> pickling and annealing, did not constitute a substantial
> transformation. In the Court of International Trade, Commerce
> offered no reason for departing from this precedent with respect to
> the entries in question, other than its argument-now rejected-that
> Arcelor failed to exhaust administrative remedies. Indeed, as noted
> earlier, Commerce in this appeal does not even argue that steel hot
> rolled in Germany and not further cold rolled in Belgium is
> Belgian in origin.

Ugine & ALZ Belgium v. United States, 551 F.3d 1339, 1349 (Fed. Cir. 2009) (emphasis added).

As the Court stated, "Commerce is obligated to follow prior precedent absent some legitimate

reason for departing from it." Id. Similar to the situation above, after Solar I, Commerce's

precedent as to the origin of solar modules was clear: the country of cell manufacture – not the

country of assembly of the module – is the country that confers origin on a solar module. Thus

Commerce had an obligation to follow that precedent in the context of the <u>Solar II</u> investigations. Further, we note that the sentence quoted by Defendant, referring to Commerce's discretion in defining the criteria for country of origin determinations, cites to the statute's anticircumvention provisions (19 U.S.C. § 1677j(b)) and to regulations of U.S. Customs and Border Protection (19 U.S.C. § 66 and 19 C.F.R. § 134.1(b)) and thus is not directly applicable to this case. As the Court has explained in <u>Peer Bearing Co.-Changshan</u>, 2015 WL 9412861, at *12, Commerce's interpretive authority of the scope of an order is necessarily narrower than its authority under the anticircumvention provision of the statute, which was not invoked here. Therefore, the Government clearly overstates Commerce's authority to disregard precedent and to determine country of origin in the context of the <u>Solar II</u> investigations based purely on discretionary factors.

Defendant also argues that deviation from prior practice does not itself render Commerce's final scope determination improper. Def. Br. at 23. The Government goes on to argue that Commerce is free to adapt its views and practices to the case at hand "as long as it does so in a manner consistent with law, provides a reasonable explanation for doing so, and supports its decision with substantial evidence on the record." Def. Br. at 23. In this case, none of these conditions are met. As discussed above, Commerce's new origin rule is inconsistent with law because it results in two origin rules applying at the same time to the same merchandise and two countries of origin for the same goods. For this reason alone, as discussed in Consolidated Plaintiffs' opening brief, Commerce's departure is unlawful and remand is therefore appropriate.

Defendant's argument that the new origin test should be upheld because Commerce has provided an explanation for its departure from practice and precedent, <u>id.</u>, is without merit. First,

Commerce does not aver that it has actually changed its practice on determining the country of origin through a substantial transformation test. Id. at 23-24; Def.-Int. Br. at 28-29.  In fact, Commerce clearly states that in future cases it will continue to use its "traditional" substantial transformation test. Solar II AD I&D Memo at 15, AD P.R. 817. Instead, Commerce explains that it has created an "additional analysis" for this case in particular. Id. The cases cited by Defendant and that support a change in Commerce's methodology (Def. Br. at 23-24) are inapposite because in this case Commerce seeks to apply both its "traditional" origin test from Solar I and a new origin test, although the outcomes of these two tests are in direct conflict. For this reason, the cases cited by SolarWorld, Pakfood Pub. Co. v. United States[8] and Huvis Corp. v. United States,[9] likewise do not support SolarWorld's arguments. Def.-Int. Br. at 28-29. In Huvis Corp., the Court accepted Commerce's change in practice as long as "its methodology is permissible under the statute;" whereas in this case, Commerce's "new" origin test is inconsistent with the statute. 570 F.3d at 1353.

Second, Commerce's explanation for departing from the substantial transformation analysis fails to reconcile the country of origin determination in this case with that in Solar I or in Solar Panels from Taiwan. Def. Br. at 24-25. While Defendant and SolarWorld argue that Commerce should be able to address unfair pricing decisions or subsidization that takes place in the exporting country, even if such activities do not result in substantial transformation, id. at 24; Def.-Int. Br. at 18, these are no more than aspirational statements of what they believe Commerce "should" be able to do.  Neither party cites to any authority in the statute or agency precedent that support Commerce taking such actions.

---

[8] 453 Fed. Appx. 986 (Fed. Cir. 2011).
[9] 570 F.3d 1347 (Fed. Cir. 2009).

13

In sum, the explanations provided fall short of identifying the legal basis for Commerce's authority to depart from agency and court precedent supporting the substantial transformation analysis, particularly where such a departure results in inconsistent country of origin determinations on the same merchandise.

**B.     THE COUNTRY OF ORIGIN ANALYSIS IN <u>SOLAR II</u> IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

      **1.      The "Additional Analysis" Is No Analysis at All**

In the final determination, Commerce appears to characterize its new country of origin analysis for this case as "additional analysis" to a substantial transformation analysis:

> **While the Department intends that a substantial transformation analysis will continue to be the primary manner in which it will evaluate country of origin in AD/CVD proceedings, given the facts presented by these investigations** (and in light of the *Solar I* orders already in place, under which country of origin was already based on a substantial transformation analysis), **the Department finds that its additional analysis is appropriate**.

Solar II AD ID Memo at 15, AD P.R. 817 (emphasis added); Solar II CVD ID Memo at 41, CVD P.R. 388 (emphasis added).

As Consolidated Plaintiffs indicated in their opening brief, there is nothing in the record to suggest that Commerce performed a country of origin analysis in this case (based on any of the typical substantial transformation criteria) *other than* the "additional analysis" referenced above.  Defendant's brief confirms that there is no separate origin analysis *per se*; rather the "additional analysis" is the only "analysis" supporting the <u>Solar II</u> scope determination:

> As Commerce clearly explained, "{b}ased on these considerations, and in order to evaluate whether there is unfair pricing and/or subsidization of modules assembled in {China} using third-country cells, {Commerce} finds it appropriate to determine for purposes of these investigations that the country of origin of such modules is

14

> {China}. That is the "additional analysis" of country of origin to
> which Commerce refers.

Def. Br. at 27 (alteration in original) (citation omitted). By Defendant's own admission, the

origin of solar modules assembled in China was decided on the basis of three criteria: (1)

Commerce's perception of petitioner's intent, (2) a statement as to the nature of the solar

products industry; and (3) concerns of administrability, enforcement and evasion. Id.; see also

Solar II CVD ID Memo at 38-41, CVD P.R. 388; Solar II AD ID Memo at 12-14, AD P.R. 817.

  Commerce's use of the noun "analysis" in connection with Commerce's statement of the

country of origin designation in Solar II is more accurately characterized as an euphemism. The

record is clear that Commerce has not provided any "analysis" in the proper sense of that word.[10]

All that Commerce has relied upon to justify the Solar II scope is speculation, statements by

SolarWorld and statements of policy. See Def. Br. at 20-22.  No part of the so-called "analysis"

makes reference to the record developed during the investigations or to any characteristics of the

product which is presumably being "analyzed" for a determination of its country of origin. It

appears to be a practical impossibility to present an "analysis" of a good (in this case, the origin

of the solar modules assembled in China) without examining that good (i.e. solar modules

assembled in China).

  As to the first criterion, petitioner's intent, it is self-evident that petitioner's intent has no

bearing on the factual issue of the extent of processing performed on a solar module in a third

country and in China. In other words, this criterion has nothing to do with the product whose

---

[10] The dictionary definition of "analysis" is:

 1  Detailed examination of the elements or structure of something, typically as a basis for
 discussion or interpretation: ( 'statistical analysis,' 'an analysis of popular culture')
 1.1  The process of separating something into its constituent elements. Often
 contrasted with synthesis.

See Oxford Dictionaries, accessible at
http://www.oxforddictionaries.com/us/definition/american_english/analysis.

origin is being determined. The only support cited by Commerce for its broad interpretation of petitioner's intent are statements in the <u>Solar I</u> petitions, in the <u>Solar II</u> petitions and other correspondence from petitioner. <u>Solar II AD ID Memo</u> at 12-13, AD P.R. 817.

As to the second criterion, Commerce asserts that "the record demonstrates that the solar products industry involves a complex and readily adaptable global supply chain which allows producers to modify their production chains easily and quickly." <u>Id.</u> at 13.  In today's globalized market, this general statement can be said of numerous industries. Other than referring to the petitions, Commerce cites to no fact finding that would explain the relevance of this broad statement to the country of origin determination.

Finally, the last criterion is related to perceived evasion concerns. Def. Br. at 25. However, country of origin determinations, which examine the production process of the subject merchandise, cannot be based upon enforcement and anticircumvention concerns. This is not a reasonable basis for a country of origin analysis. While evasion concerns have been considered by Commerce when defining the scope, <u>Solar II AD ID Memo</u> at 13, AD P.R. 817, such considerations are not informative as to the *origin* of the product analyzed. The determinations cited by Commerce in <u>Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled from Germany</u>[11] and <u>Cellular Mobile Telephones and Subassemblies form Japan</u>[12] illustrate this point as they refer to the inclusion in the scope of parts, subassemblies or incomplete merchandise.  <u>See</u> <u>Solar II AD ID Memo</u> at 14 n.42, AD P.R. 817.[13] But none of these cases support Commerce's actions in <u>Solar II</u> to include in the scope

---

[11] 61 Fed. Reg. 38166 (Dep't Commerce July 23, 1996) (final LTFV determ.).

[12] 50 Fed. Reg. 45447 (Dep't Commerce Oct. 31, 1985) (final LTFV determ.).

[13] We note that the scopes of <u>Solar I</u> and <u>Solar II</u> similarly include merchandise "whether or not partially or fully assembled into other products." Therefore, the concerns illustrated by the cases cited by Defendant are already incorporated into the respective scope descriptions. However, such considerations are not a substitute for an analysis of the country of origin.

merchandise produced in a third country. Commerce appears to have conflated these two issues by providing enforcement related reasons as the very basis for its country of origin determination.

According to Commerce, consideration of these three criteria – all unrelated to the production process itself - requires a conclusion that modules assembled in China should be considered Chinese despite the finding in Solar I, that the identical product is not Chinese in origin. Id. at 15. Contrary to Defendant's argument that such explanations are reasonable, Commerce has failed to explain how its discretionary criteria are relevant to determining the origin of a solar module.  Commerce's country of origin conclusion does not follow from these facts and there is no attempt to reconcile this result with the Solar I origin analysis. Therefore, it is not possible to discern the logical connection between facts presented and the conclusion drawn.  See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962) (requiring a rational connection between the facts found and the choice made).

Further, Commerce has failed its basic obligation to investigate the country of origin of the modules which it purports to have covered under the AD/CVD Orders in Solar II. It is well-known that Commerce has an obligation to investigate by gathering information either on its own initiative or through questionnaires and other requested submissions. See Wieland-Werke AG v. United States, 22 CIT 129, 135, 4 F. Supp. 2d 1207, 1212 (1998); see also Timken Co. v. United States, 25 CIT 939, 959, 166 F. Supp. 2d 608, 629 (2001) (Commerce has a "responsibility to undertake reasonable investigatory functions"); Rhone-Poulenc, Inc. v. United States, 20 CIT 573, 578, 927 F. Supp. 451, 456 (1996) ("Commerce's failure to perform an independent investigation of the facts related to this issue falls short of its statutory duty to investigate antidumping cases and assign fair antidumping margins."). The U.S. Court of Appeals for the

Federal Circuit has explained that "the grant of discretionary authority to an agency implies that the exercise of discretion be predicated upon a judgment anchored in the language and spirit of the relevant statutes and regulations." Freeport Minerals Co., 776 F.2d at 1032.  The so-called "analysis" of Solar II should be rejected as unsupported by substantial evidence.

## 2.    Commerce's "Additional Analysis" Is Not an Appropriate Origin Test

Ultimately, Commerce's country of origin analysis must be consistent with the statutory scheme.  19 U.S.C. §§ 1671 and 1673(1).  See also Peer Bearing Co.-Changshan, 2015 WL 9412861, at *13, citing E.I. Du Pont, 22 CIT at 373-74, 8 F. Supp. at 858. As such, Commerce must recognize that an antidumping duty investigation involving goods from certain named countries may not be expanded to include goods produced in other countries merely by using a new set of discretionary criteria.  As this Court has explained, such an expansion of the scope is not authorized except in conformity with the statutory and regulatory provisions that govern anticircumvention proceedings, 19 U.S.C. § 1677j(b) and the corresponding regulations at 19 C.F.R. § 351.225(h). See Peer Bearing Co.– Changshan v. United States,  38 CIT ___, 986 F. Supp. 2d 1389, 1399-1400 (2014).[14]

Referring to Commerce's origin determination, the Court explained that "{a}ny 'substantial transformation criteria' or 'totality of the circumstances test' Commerce used to

---

[14] In Peer Bearing Co. – Changshan, the Court remanded Commerce's finding that parts for tapered roller bearings from China further processed in Thailand were not substantially transformed in Thailand. The Court found that Commerce exceeded its authority to interpret an order when it expanded the scope of the order to include products processed in the third country, Thailand. The Court indicated that, on the facts of that record, Commerce's interpretation of the origin test was not supported by the evidence on the record and explained that Commerce's origin determination was thus outside its authority unless Commerce availed itself of the anticircumvention provisions at 19 U.S.C. § 1677j(b) and proved the factors therein. 986 F. Supp. 2d at 1405-1406.

decide that question was required to be consistent with the limitations on the Department's authority." Id.

As discussed supra, the origin determination in Solar II was based on three criteria: petitioner's intent, a statement of the nature of the solar products industry, and concerns of administrability and evasion. Def. Br. at 27. None of the previous origin determinations upheld by the Court were based on any of the three criteria used in Solar II.

For example, in conducting a substantial transformation test, Commerce has relied on a series of factors, including:  1) whether the processed downstream product fell into a different class or kind of product when compared to the upstream product; 2) the extent of processing or manufacturing, cost and level of investment; and 3) whether the physical and mechanical properties, the essential component of the product, and end use are changed as a result of the processing.  See Peer Bearing Co.–Changshan v. United States,  2015 WL 9412861, at *13 (referencing a set of criteria Commerce uses generally in making country-of –origin determinations). While not all of these criteria were relevant in every instance, they can be traced to decisions of this Court affirming origin determinations, as discussed below.

The decisions of this Court which upheld the application of the substantial transformation test rely on the origin test in E.I. DuPont, which was found to be "a reasonable application of 19 U.S.C. § 1673(1) because it comports with the plain meaning of the statute."  E.I. Du Pont, 22 CIT at 374, 8 F. Supp. 858. In turn, this test is based on long-standing precedent:

> "{s}ubstantial transformation generally refers to a degree of processing or manufacturing resulting in a new and different article," citing as examples Commerce rulings recognizing as substantial transformations the galvanizing of sheet steel and the conversion of a base vehicle into a limousine. DuPont, 22 CIT at 372, 8 F. Supp. 2d at 857. This statement of the substantial transformation rule accords with the substantial transformation rule established under the customs laws. See United States v. Gibson–

> Thompsen Co., Inc., 27 C.C.P.A. 267 (1940). . . . Among the cases
> this Court cited in DuPont was Ferrostaal Metals Corp. v. United
> States, 11 CIT 470, 664 F. Supp. 535 (1987), which held for
> purposes of a voluntary restraint agreement that sheet steel is
> substantially transformed by galvanizing and annealing according
> to customs law principles of substantial transformation.

Peer Bearing Co.-Changshan, 2015 WL 9412861, at *12 (alteration in original).

In E.I. Du Pont, the Court stated that the proper country of origin is the country in which the merchandise was last substantially transformed prior to importation into the United States. See E.I. Du Pont, 22 CIT at 375, 8 F. Supp. at 859.   In that case, in order to determine whether the merchandise was substantially transformed in the subject country, Commerce examined whether the degree of processing or manufacturing resulted in a new and different article. Id., 22 CIT at 376, 8 F. Supp. at 859.

In Appleton Papers Inc., 929 F. Supp. 2d at 1335-36, the Court upheld a scope determination by Commerce that lightweight thermal paper in unfinished "jumbo roll" produced in a third country was not within the scope of AD/CVD orders on lightweight thermal paper from China. In that case Commerce determined that "conversion" of third country jumbo rolls by slitting and repackaging in China did not amount to a substantial transformation.  Id. The Court agreed and found that Commerce correctly interpreted the scope in applying the substantial transformation test previously applied in E. I. Du Pont. Id., 929 F. Supp. 2d at 1336. Specifically, the criteria used by Commerce to determine origin were (1) where the upstream and the downstream product are the same class or kind of merchandise; (2) whether the conversion operations required only "minimal" capital investment and expertise; and (3) the end use, mechanical properties, or essential characteristic of the merchandise. Id., 929 F. Supp. 2d at 1333. Notably, in Appleton Papers, Commerce declined to include an anticircumvention inquiry

in its country of origin analysis. Id. The Court sustained that decision. Id., 929 F. Supp. 2d at

1337.

What these criteria have in common, including the origin analysis in Solar I, is the focus

of the origin analysis on the conversion operations in the various countries and on the products

themselves. In contrast, none of the three criteria used in Solar II to determine origin discuss any

details of the merchandise or the processing steps performed. Therefore, in light of this Court's

precedent affirming origin questions through the criteria of the substantial transformation test,[15]

Commerce's departure from this long-standing test (and the criteria developed to apply this test)

to create an exception for this case only[16] amounts to arbitrary agency action. "Agencies have a

responsibility to administer their statutorily accorded powers fairly and rationally, which

includes not treat{ing} similar situations in dissimilar ways." Nakornthai Strip Mill Pub. Co. v.

United States, 32 CIT 1272, 1276, 587 F. Supp. 2d 1303, 1307 (2008) (alteration in original)

(internal quotations omitted) (citations omitted). "An agency determination that is arbitrary is

ipso facto unreasonable." See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,

No. 14-00106, 2016 WL 524268, at *17 n.148 (Ct. Int'l Trade Feb. 9, 2016) (citing Ward v.

Sternes, 334 F.3d 696, 704 (7th Cir. 2003)) ("noting that 'a decision {that} is so inadequately

supported by the record as to be arbitrary {is} therefore objectively unreasonable'" Id.

(alterations in original)).

To summarize, the origin test in Solar II is unreasonable because it is inconsistent with

Commerce's precedent in Solar I and other origin determinations, it departs from the substantial

---

[15] See Appleton Papers, 929 F. Supp. 2d at 1336; E.I. Du Pont, 22 CIT at 373-76, 8 F. Supp. 2d at 858-59; Peer Bearing Co.-Changshan, 2015 WL 9412861, at *7; Ferrostaal Metals Corp., 11 CIT at 473, 664 F. Supp. at 537-38; Smith Corona Corp., 17 CIT at 50, 811 F. Supp. at 695.
[16] Solar II AD ID Memo at 12-15, AD P.R. 817; Solar II CVD ID Memo at 41, CVD P.R. 388.

transformation test as upheld by this Court without a valid reasoning, and is unsupported by factual findings or analysis on the record of these proceedings.

### C.   PETITIONER'S INTENT IS NOT A VALID BASIS FOR COMMERCE TO PROVIDE A REMEDY NOT AUTHORIZED BY STATUTE

Defendant and SolarWorld argue that the scope of Solar II was justified because SolarWorld's intent was to cover all modules produced in China consisting of third country cells. Def. Br. at 31; Def-Int. Br. at 13-14.  These arguments are unsupported by the record and are contrary to Commerce's obligation to apply orders based on a product's country of origin. The Court should reject these arguments for two reasons.

First, SolarWorld's purported intent cannot control the outcome of this case. Petitioner's statement of intent alone does not allow Commerce to expand the scope of the investigations to cover goods produced *in third countries*. Further, this Court has required unequivocal evidence of intent when deciding whether to permit the inclusion of merchandise not specifically mentioned in the petition. See Minebea Co. v. United States, 16 CIT 20, 22-23, 782 F. Supp. 117, 120-121 (1992), aff'd 984 F.2d 1178 (Fed. Cir. 1993) (upholding ruling that products were in-scope when petition expressed interest in those products and their application, and post-petition submissions indicated intent to include those products). But here, it is notable that both Defendant and SolarWorld cite often to statements of Petitioner's intent from *another* investigation - from the Solar I investigations. See e.g. Solar II AD ID Memo at 12; Def. Br. at 29-30.  With respect to the *current* investigations, as explained in Consolidated Plaintiffs' opening brief, the scope language in the petition and until Commerce's October 3 scope clarification[17] made reference only to the "two-out-of-three" scope definition rather than the

---

[17] Commerce Letter to All Interested Parties, re: Opportunity to Submit Scope Comments (Oct. 3, 2014), AD P.R. 765, CVD P.R. 349 (the "Solar II Scope Clarification Letter").

greatly expanded final scope. Pl. Br. at 6. Indeed, there is no record evidence whatsoever

indicating that SolarWorld intended, or even anticipated, Commerce's final determination

subjecting all modules made in China to the Solar II Orders.

Second, while SolarWorld describes a loophole being created in the aftermath of the

Solar I Orders (Def.-Int. Br. at 13), the fact is that the Orders in Solar I cover all merchandise

with a country of origin of China, i.e., crystalline silicon cells, whether not assembled into

modules, from China. This is not a loophole. Solar modules originating outside China have not

been exempted from the Solar I Orders; rather, they were not subject merchandise in the first

place. Accordingly, Commerce's determination in the Solar I investigations was the appropriate

result under the statute, regardless of SolarWorld's intent.

SolarWorld is entitled to relief only from injury caused by reason of imports from the

country under investigation. See 19 U.S.C. §§ 1671(a)(1), 1673(1); E.I. Du Pont, 22 CIT at 375,

8 F. Supp. 2d at 859. That relief was provided under the Solar I Orders. However, Commerce

may not impose duties applicable to one country to merchandise that is from a different country.

Ugine & ALZ Belg., N.V., 31 CIT at 1550-51, 517 F. Supp. 2d at 1345. Neither Defendant nor

SolarWorld provide any authority to support their suggestion to the contrary.

### D.   EVASION CONCERNS CANNOT TRUMP THE STATUTORY SCHEME

Although Commerce explains that it departed from its normal practice in order to address

enforcement and circumvention concerns, Def. Br. at 32, these elements are not outcome-

determinative of a country of origin analysis. SolarWorld claims that coverage of all solar

modules assembled in China, regardless of the country in which the cells were produced "was

essential to prevent the 'intentional evasion or circumvention' of the AD/CVD orders." Def.-Int.

Br. at 16. Its arguments should be rejected. Under a substantial transformation origin test, the

final scope of <u>Solar II</u> includes modules with countries of origin other than China, and thus violates the statutory provisions stating that the scope covers a class or kind of merchandise from only the country under investigation. 19 U.S.C. §§ 1671(a)(1), 1673(1). Defendant fails to explain how business decisions made by Chinese companies to shift their production and exports to non-subject merchandise (modules assembled using third-country cells), Def. Br. at 21 and 29, would somehow cure the inconsistency with the statute.

As an initial matter, a product that is excluded from the scope of an order, for lacking the requisite country of origin to which the order applies, does not constitute circumvention – it is the *lawful* application of the antidumping and countervailing statutes that apply orders to specific merchandise *from a specific country*. <u>See</u> 19 U.S.C. §§ 1671, 1673; <u>E.I. Du Pont</u>, 22 CIT at 375, 8 F. Supp. 2d at 859 ("{A}ntidumping orders apply to merchandise from particular countries . . . ").

Defendant and SolarWorld explain in their briefs that the <u>Solar II</u> investigations were in reaction to what SolarWorld perceived as a "loophole" created by the <u>Solar I</u> investigations and by potential AD/CVD duty evasion concerns. Def. Br. at 12-13 and 21; Def.-Int. Br. at 13. That characterization is incorrect as a matter of law. The Court has clearly stated that "{u}nequivocal exclusions are not loopholes; they are argued for and intentionally omitted from the scope." <u>Ethan Allen Operations, Inc. v. United States</u>, 39 CIT __, 121 F. Supp. 3d 1345, 1352 (2015) (quoting <u>Legacy Classic Furniture, Inc. v. United States</u>, 36 CIT __, 867 F. Supp. 2d 1321, 1330 (2012) (alterations in the original). In <u>Legacy Classic Furniture</u>, the Court remanded a determination by Commerce which failed to give effect to a clear exclusion in the scope of the AD/CVD orders on wooden bedroom furniture from China. <u>Legacy Classic Furniture</u>, 867 F.

Supp. 2d at 1325, 1331. Similarly here, the scope of <u>Solar II</u> includes clear exclusionary

language that references <u>Solar I</u> and, implicitly, the origin determination of <u>Solar I</u>:

> also excluded from the scope of these orders are any products
> covered by the existing antidumping and countervailing duty
> orders on crystalline silicon photovoltaic cells, whether or not
> assembled into modules, laminates and/or panels, from the PRC.
> {i.e. <u>Solar I</u>}.

<u>Solar II Orders</u>, 80 Fed. Reg. at 8593.

Defendant and SolarWorld's characterization of scope language as a "loophole,"

circumvention or evasion should be rejected.

SolarWorld's dissatisfaction with the ultimate result of <u>Solar I</u> is not a sufficient reason

for Commerce to provide a remedy that is contrary to the statutory scheme. A party's right to

relief under the statute is conditioned on a variety of factors. A fundamental aspect of that relief

is that it extends only to products originating in a subject country. The transparent and rational

origin determination in <u>Solar I</u> did not create a loophole nor result in evasion of duties. The Court

should, therefore reject Defendant's justification that additional relief was due to SolarWorld for

solar modules that were clearly deemed "not" subject merchandise under the scope of <u>Solar I</u>.

SolarWorld's insistence on labels such as "loophole" and "evasion" to describe imports outside

the scope of <u>Solar I</u> is disturbing and unwarranted, but ultimately it is of no moment to a proper

country of origin determination.

Defendant and SolarWorld's reliance upon this Court's opinion in <u>Mitsubishi Elec. Corp.</u>

<u>v. United States</u>, a case dealing with unique facts, is misplaced.  <u>See</u> <u>e.g.</u> Def. Int. Br. at 15-19

citing <u>Mitsubishi Elec. Corp. v. United States</u>, 12 CIT 1025, 700 F. Supp. 538 (1988), <u>aff'd</u> 898

F. 2d 1577 (Fed. Cir. 1990); <u>see</u> Def. Br. at 32-36. In <u>Mitsubishi</u>, the Court upheld Commerce's

determination to expand the scope of an order on cellular mobile telephones ("CMT") to cover

also CMT subassemblies. 12 CIT at 1047, 700 F. Supp. at 555-556. A critical consideration for

doing so was the Court's recognition that the investigation involved "an infant industry" and one "where recent technological advances render known and established classifications and descriptions inadequate to cover the intended merchandise." Id. However, those unique circumstances are not applicable to this case, as the crystalline silicon photovoltaic cell industry is by no means a new industry nor does Defendant make any claims to such effect.  Moreover, there is no indication that the CMT subassemblies at issue in Mitsubishi were of third country origin, thus Mitsubishi does not support SolarWorld and Defendant's arguments because it does not stand for the proposition that Commerce has the authority to include *third country* products into an investigation on another country.

Moreover,  Commerce's scope decision does not necessarily preclude SolarWorld from obtaining a remedy for any injury it may incur as a result of imports of modules assembled using solar cells produced in third countries. SolarWorld has the option to pursue additional petitions addressing injurious imports from countries other than China. Additionally, Petitioner and Commerce had a statutory mechanism at 19 U.S.C. § 1677j that could have addressed SolarWorld's circumvention concerns had they sought to use it. Legislative history of the anticircumvention provision makes clear that it was intended to address merchandise that, but for the provision, may fall outside the scope of an order. See AMS Assocs., Inc. v. United States, 737 F.3d 1338, 1343 (Fed. Cir. 2013) (noting that the anticircumvention provision "authorize{s} Commerce to expand the scope of existing antidumping and countervailing duty orders to reach products that are not covered by the existing scope . . ."). By ignoring the statutory scheme, Commerce has produced an illogical scope definition that results in identical merchandise, solar modules incorporating crystalline silicon solar cells, having two countries of origin and two rules

of origin: a rule of origin determined by the processing performed on the product and a rule of origin for China that is unrelated to the characteristics of the merchandise.

E. **UNDER THIS COURT'S PRECEDENT, COMMERCE'S UNPRECEDENTED SCOPE EXPANSION AT THE LATE STAGE OF THE PROCEEDING WAS AN ABUSE OF DISCRETION**

In response to Consolidated Plaintiffs' argument that the broadening of the scope occurred at a very late stage of the investigation and this limited respondents' ability to respond to this unprecedented change in scope, Defendant claims that there are no procedural concerns. Def. Br. at 37-38. Moreover, Defendant makes the specious claim that no party attempted to file new factual information related to the proposed scope and that Commerce did not reject such new factual information. Id. at 44-45. For clarity, we note that Commerce first announced an unspecified possible revision to the scope at the *final briefing* stage of the investigations.[18] This was after respondents submitted voluminous questionnaire responses, surrogate values information, scope comments and the questionnaire responses were verified by Commerce – all under the scope language on which the case was initiated, i.e. the so-called "two-out-of-three rule." Trying to submit new factual information at the that time would have been futile as it was too late to revise and re-verify voluminous questionnaire responses.

Moreover, Defendant's position is utterly disingenuous because (a) the scope was not merely "clarified" at that late stage but expanded beyond any reasonable expectation and (b) respondents could not have reasonably anticipated that Commerce would depart from the substantial transformation test and create a scope that was contrary to the statute. In other words, it is one matter to expect reasonable clarifications to a scope definition and another matter entirely to be faced with a complete rewrite of the scope in a manner that was inconsistent with

---

[18] Briefs were filed on October 16, 2014, just under two weeks after the Solar II Scope Clarification Letter.

all existing precedent.  In <u>Smith Corona</u>, the Court upheld Commerce's decision to decline to

expand the scope of an investigation where a scope change to include certain subassemblies was

requested one month prior to the end of the case. <u>Smith Corona Corp. v. United States</u>, 16 CIT

562, 565, 796 F. Supp. 1532, 1535 (1992). This Court clearly explained the procedural problems

posed by scope changes at such a late stage and the course of action that would have been most

appropriate for petitioner:

> Commerce, however, must exercise caution in redefining scope in midstream to include items which were clearly known about and excluded at the time of initiation of the investigation, and, indeed in this case, at the time of the preliminary determination.
>
> Various procedural safeguards such as opportunities to respond and to be heard are built into the unfair trade laws. To change the scope definition at late stages of the proceedings deprives the parties of the full benefits of those procedures. . . . Late changes in scope definitions can cause problems with this process and can even lead to unintended divergences from commitments pursuant to international obligations. The anticircumvention statute provides for Commerce and ITC consultation on these difficulties, and presumably appropriate solutions can be found. There is no specific mechanism for consultation on this subject midstream in an ongoing investigation. Perhaps there is no such need because if the need arose, ITC could adjust during its final determination. Of course, changes between the ITC preliminary and final determinations also may lessen the effectiveness of some procedural safeguards.
>
> . . .
>
> The court is not unaware of the problem faced by plaintiff. It did not know of any need for a broader scope definition until shortly before it raised the issue with Commerce. It is faced with the possibility of a largely useless order. But, although the remedies are not without cost and may achieve less than plaintiff might desire, plaintiff did have the options of filing a new petition or awaiting the issuance of the order and seeking relief under the mechanism Congress set up to handle circumvention issues.

<u>Id.</u>

The same reasoning is all the more valid in this case, where the scope changes are far more expansive.  First, as indicated in Consolidated Plaintiffs' opening brief, Commerce's expansion of the scope language went far beyond any definition of subject merchandise proposed by SolarWorld in the petition or at any time prior to Commerce's October 3 Scope Clarification Letter. Pl. Br. at 23-24. In contrast, in <u>Smith Corona,</u> the Court's concerns were based on a more modest expansion of scope which related to certain parts. <u>See</u> 16 CIT at 566, 796 F. Supp. at 1535. Second, consistent with the reasoning in <u>Smith Corona,</u> also in this case the scope expansion included "items which were clearly known about and excluded at the time of initiation of the investigation . . . ." <u>Id.,</u> 16 CIT at 565, 796 F. Supp. at 1535. Indeed, under the origin rule of <u>Solar I</u>, third country solar panels were clearly known to be excluded from an investigation on China and, as noted above, they were never part of a scope definition proposed by Petitioner.

For all the reasons above, Commerce's expansion of the scope at such a late stage was unreasonable.

## IV.   REVOCATION OF THE <u>SOLAR II</u> ORDERS IS THE APPROPRIATE REMEDY

As the scope language in <u>Solar II</u> solely purports to cover *non-Chinese* solar modules under *Chinese* AD/CVD Orders, Consolidated Plaintiffs believe that revocation of such an unprecedented scope and of the <u>Solar II</u> Orders provides the only appropriate remedy. Pl. Br. at 14-15. Had Commerce employed its substantial transformation test, as such test was applied in origin determinations upheld by this Court, none of the solar modules which Commerce seeks to cover with these orders would be found to be "subject merchandise" of the "country" named in the order, <u>i.e.</u> China. Contrary to Defendant's position, as an Article III Court, this Court has full powers in law and equity to provide appropriate relief in this matter. As the <u>Solar II</u> investigations were conducted under an unlawful scope, revocation of the resulting orders is the correct remedy.

29

V.      **CONCLUSION**

For the reasons set forth above, the Court should GRANT Consolidated

Plaintiffs' motion for judgment on the administrative record and order Commerce to

revoke the <u>Solar II Orders</u>.

Respectfully submitted,


**/s/ John M. Gurley**              **/s/ Craig A. Lewis**

John M. Gurley                    Craig A. Lewis
Diana Dimitriuc Quaia             Samantha  Clark Sewall
ARENT FOX LLP                     Wesley Verne Carrington
1717 K Street, NW                 HOGAN LOVELLS US LLP
Washington, DC 20006              Columbia Square Building
(202) 857-6301                    555 Thirteenth Street, NW.
                                  Washington, DC 20004
                                  (202) 637-8613


March 29, 2016

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(b)(1) and the Court's Scheduling Order in this matter dated July 1, 2015, the undersigned certifies that **Consolidated Plaintiffs' Joint Reply Brief in Support of Their Rule 56.2 Motion For Judgment On The Agency Record** complies with the word limitation requirement of 14,000 words (computed based on 7,000 for each for each of the two groups of Plaintiffs filing this joint reply). The word count for **Consolidated Plaintiffs' Joint Reply Brief in Support of Their Rule 56.2 Motion For Judgment On The Agency Record**, as computed by Arent Fox LLP's word processing system is 10,814.

        **/s/ Diana Dimitriuc Quaia**
        Diana Dimitriuc Quaia